

1  Frank Frisenda
   FRISENDA, QUINTON & NICHOLSON
2  11601 Wilshire Boulevard, Suite 500
   Los Angeles, California  90025
3  Tel.: (702) 792-3910
   Fax: (702) 436-4176
4  E-Mail:  frankfrisenda@aol.com

5  Attorney for Plaintiff  WYATT TECHNOLOGY CORP.

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11 WYATT TECHNOLOGY                )  Case No.:  CV07-8298 DDP (MANx)
   CORPORATION, a California       )
12 corporation,                    )  SECOND AMENDED COMPLAINT
                                   )  FOR:
13                                 )
                    Plaintiff,     )
14                                 )
        vs.                        )  1) COPYRIGHT INFRINGEMENT;
15                                 )  2) VIOLATION OF THE LANHAM
16 MALVERN INSTRUMENTS             )     ACT  § 43(a);
   INCORPORATED, a Massachusetts   )  3) MISAPPROPRIATION OF
17 corporation; DAVID DOLAK, an    )     TRADE SECRETS;
18 individual; and DOES 1 through 50, )  4) TORTIOUS INTERFERENCE
   inclusive,                      )     WITH PROSPECTIVE
19                                 )     BUSINESS ADVANTAGE;
20                                 )  5) UNFAIR COMPETITION; and
                    Defendants.    )  6) ACCOUNTING
21 _____ )

22

23                               JURY TRIAL DEMANDED

24

25

26

27        Plaintiff, Wyatt Technology Corporation (hereinafter "Wyatt" or

28 "Plaintiff") for its Second Amended Complaint, herein alleges as follows:

                                   1

## PARTIES, JURISDICTION AND VENUE

PARTIES:

1.     Plaintiff Wyatt Technology Corporation ("Plaintiff") is a corporation incorporated under the laws of the State of California, with its principal office and place of business at 6300 Hollister Avenue, Santa Barbara, California 93117.

2.     Defendant Malvern Instruments Inc. ("Defendant" or "Defendant Malvern") is a corporation incorporated under the laws of the state of Massachusetts , with its principal place of business at 10 Southville Road, Southborough, MA 01772.

3.     On information and belief, Defendant David Dolak ("Defendant" or "Defendant Dolak") is an individual residing at 1422 Sachen Place, Charlottesville, Virginia 22901.

4.     On information and belief, since at least 2006, Defendant Dolak created, sponsors and/or owns an interactive internet website "Marketing by Dave Dolak". Upon information and belief, Defendant Dolak with knowledge of the infringing activity induced, caused and/or materially contributed to the infringing conduct of Defendants including  Defendant Malvern.

5.     The true names and capacities, whether individual, corporate or otherwise, of the defendants named herein as DOES 1 through 50 are presently unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will seek to amend this Complaint to allege the true names and capacities of said defendants when they have ascertained such information.  Plaintiff is informed and believes that each of the defendants named herein as DOES 1 through 50 has participated in some or all of the acts or conduct alleged in this Complaint and is liable to Plaintiff by reasons thereof.

6.     Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a Doe, is responsible, either negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and

2

1  caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged,

2  either through said defendant's own conduct, or through the conduct of its agents,

3  servants, and/or employees, or due to the ownership, use, lease or sale of other

4  instrumentalities causing Plaintiff's injuries, or in some other actionable manner.

5      7.    Plaintiff is informed and believes, and thereon alleges, that at all times

6  mentioned herein, Defendants and each of them, were the agents and/or employees of

7  each other, and in doing the things hereinafter alleged, were acting within the course

8  and scope of such agency and/or employment; and, further that each of the acts

9  alleged herein was done with the full knowledge, consent, advice and permission in

10  each of the other defendants.

11      8.    Plaintiff is informed and believes and thereon alleges that, as set forth

12  above and without limitation to other said further proof at the time of trial,

13  Defendants and each of them, knowingly and willfully conspired and agreed among

14  themselves to damage Plaintiff by, among other things and without limitation to

15  proof, knowingly and willfully disseminating false information, willfully infringing

16  Plaintiff's copyright registrations (identified in paragraphs 12 through 20),

17  misappropriating Plaintiff's trade secrets, and interfering with economic relations

18  between Plaintiff and its existing and new customers, expressly aimed at, and

19  causing harm to, Plaintiff, and other citizens, in this Judicial District.

20

21              JURISDICTION AND VENUE

22      9.    This Court has original subject matter jurisdiction over Plaintiff's federal

23  claims pursuant to U.S. Copyright Act, 17 U.S.C. § 101, et seq., the Lanham Act, 15

24  USC 1125 and 28 USC § 1332,  based on diversity of citizenship and the amount of

25  controversy.  The amount of controversy exclusive of interests and costs, exceeds the

26  sum of $75,000.00.

27      10.    Jurisdiction over each Defendant is proper, including specific

28  jurisdiction under the "effects" test, in that each Defendant has illegally engaged in

3

1  intentional conduct  expressly aimed at, and known by Defendants to be causing
2  harm to, Plaintiff and other citizens in the forum state.
3      11.    Venue is proper in the United States District Court for the Central
4  District of California pursuant to 28 USC §§ 1391(b) and 1391(c).
5      12.    On October 11, 2007, U.S. Copyright Registration No. TXu 1-569-097,
6  entitled "DYNAMICS v. 6.2.05" (hereinafter "the '097 Registration") a copy of
7  which is attached hereto as Exhibit "1", was duly and legally issued by the U.S.
8  Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff,
9  Wyatt Technology Corporation, which is the owner of the original and/or derivative
10 work and of the copyright, with the right to sue for copyright infringement thereon
11 and recover for infringement thereof.
12     13.    On October 11, 2007, U.S. Copyright Registration No. TXu 1-569-098,
13 entitled "DYNAMICS v. 6.3.40" (hereinafter "the '098 Registration") a copy of
14 which is attached hereto as Exhibit "2", was duly and legally issued by the U.S.
15 Copyright  Office.  Exclusive rights in said copyright have been assigned to Plaintiff,
16 Wyatt Technology Corporation, which is the owner of the original and/or derivative
17 work and of the copyright, with the right to sue for copyright infringement thereon
18 and recover for infringement thereof.
19     14.    On October 11, 2007, U.S. Copyright Registration No.  TXu 1-569-
20 099, entitled "DYNAMICS SOFTWARE v. 5.26.56" (hereinafter "the '099"
21 Registration) a copy of which is attached hereto as Exhibit "3", was duly and legally
22 issued by the U.S. Copyright  Office.  Exclusive rights in said copyright have been
23 assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the
24 original and/or derivative work and of the copyright, with the right to sue for
25 copyright infringement thereon and recover for infringement thereof.
26     15.    On October 11, 2007, U.S. Copyright Registration No. TX 6-812-045,
27 entitled "DYNAMICS INSTALLATION CD v. 6.3.40" (hereinafter "the '045
28 Registration") a copy of which is attached hereto as Exhibit "4", was duly and legally

1    issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been

2    assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the

3    original and/or derivative work and of the copyright, with the right to sue for

4    copyright infringement thereon and recover for infringement thereof.

5         16.    On October 11, 2007, U.S. Copyright Registration No. TX 6-812-047,

6    entitled "DYNAMICS INSTALLATION CD v. 5.26.56" (hereinafter "the '047

7    Registration ") a copy of which is attached hereto as Exhibit "5", was duly and

8    legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have

9    been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the

10   original and/or derivative work and of the copyright, with the right to sue for

11   copyright infringement thereon and recover for infringement thereof.

12        17.    On October 12, 2007, U.S. Copyright Registration No. TX 6-812-053,

13   entitled "PSI BOOKS: DYNAMIC LIGHT SCATTERING" (hereinafter "the '053

14   Registration") a copy of which is attached hereto as Exhibit "6", was duly and legally

15   issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been

16   assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the

17   original and/or derivative work and of the copyright, with the right to sue for

18   copyright infringement thereon and recover for infringement thereof.

19        18.    On October 12, 2007, U.S. Copyright Registration No. TX 6-813-868,

20   entitled "PROTEIN SOLUTIONS WEB SITE" (hereinafter "the '868 Registration")

21   a copy of which is attached hereto as Exhibit "7", was duly and legally issued by the

22   U.S. Copyright Office.  Exclusive rights in said copyright have been assigned to

23   Plaintiff, Wyatt Technology Corporation, which is the owner of the original and/or

24   derivative work and of the copyright, with the right to sue for copyright infringement

25   thereon and recover for infringement thereof.

26        19.    On December 17, 2007, U.S. Copyright Registration No. TX 6-816-

27   833, entitled "PSI BOOKS" (hereinafter "the '833 Registration") a copy of which is

28   attached hereto as Exhibit "8", was duly and legally issued by the U.S. Copyright

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

1   Office.  Exclusive rights in said copyright have been assigned to Plaintiff, Wyatt

2   Technology Corporation, which is the owner of the original and/or derivative work

3   and of the copyright, with the right to sue for copyright infringement thereon and

4   recover for infringement thereof.

5       20.    On December 17, 2007, U.S. Copyright Registration No. TX 6-816-

6   834, entitled "PSI FREQUENTLY ASKED QUESTIONS" (hereinafter "the '834

7   Registration") a copy of which is attached hereto as Exhibit "9", was duly and legally

8   issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been

9   assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the

10  original and/or derivative work and of the copyright, with the right to sue for

11  copyright infringement thereon and recover for infringement thereof.

12      21.    During Defendant Dolak's tenure of employment with Protein Solutions

13  and then Proterion, Defendant Dolak  held responsibilities as his employer's "web

14  master" and in such capacity applied, or caused to be applied, a formal notice under

15  the Copyright laws that the works and materials published on Proterion's website ,

16  and elsewhere published , including the works (Exhibits "1" through "9") were

17  protected by copyrights and under applicable law.  On information and belief, at least

18  since November 2004, Defendant Malvern knew, or should have known that such

19  works and materials were protected by copyrights and under applicable law, as

20  Defendant Malvern was an unsuccessful bidder at public auction for the assets of

21  Proterion ( described, infra) and had retained Defendant Dolak as its "Sales,

22  marketing and branding expert" to drive sales and promote Defendant's Zetasizer

23  Nano products and services .

24

25              FACTUAL  BACKGROUND

26      22.    Founded in 1982, Plaintiff Wyatt Technology Corporation is a family-

27  owned business involved in the research, development, and commercialization of

28

6

macromolecular characterization techniques and related instrumentation and services.

23.     Plaintiff promotes its products and services worldwide to scientists, high-technology industries and other consumers, through its website, by attendance at trade shows, through seminars, and by printed advertisements in scientific and trade journals, among other media.

24.     On November 17, 2004, at a Court administered public auction, Plaintiff acquired the subject physical and intangible assets of Proterion Corporation.

25.     Proterion Corporation was a publicly traded company on the American Stock Exchange.  Proterion's wholly owned subsidiaries included Protein Solutions, Inc., ("Protein Solutions").  Protein Solutions served the research community for more than a decade providing innovative products and ground-breaking technology. Protein Solutions offered a unique range of biophysical characterization instruments to the biomolecular research community, with specialized emphasis in the characterization of proteins and the biophysical characterization of biomolecules in solution.

26.     Major products of Protein Solutions included the DynaPro Dynamic Light Scattering Instrument ("DYNAPRO") (Exhibit "10" hereto).  Since its introduction to the market during the 1990's, the DYNAPRO became an "industry standard" for understanding the solution behavior of proteins prior to crystal growth, an important step in the 'rational drug design' development.

27.     Protein Solutions$^{TM}$ DynaPro$^{TM}$ dynamic light scattering instruments began appearing in protein crystallization and characterization labs throughout the world – the first DLS (Dynamic Light Scattering) technology which met the scientific community's need to measure small volumes of proteins under a variety of solution conditions.  The DynaPro quickly earned acceptance on a global basis, and has since become an indispensable tool for biomolecular sizing and characterization. The success of the DynaPro DLS technology is attributed to a few factors, among

7

which are its on-going evolution in performance and capabilities designed to meet customer requirements. Its software power has also propelled it, the product's ultimate validation lies in the enormous number of peer-reviewed publications citing the DynaPro.

28.    Recognizing the valuable contributions of the DynaPro to the research community, Plaintiff acquired the DynaPro product line in November 2004, and acquired the related exclusive proprietary rights and knowhow owned by Protein Solutions and Proterion . In 2005 , Plaintiff utilized this most valuable accumulated knowledge, and improved upon the DynaPro platform, launching the new DynaPro Titan as well as the DynaPro Plate Reader, which provides high throughput capabilities.

29.    Plaintiff's DynaPro Titan and related products and services fill commercial needs which include the DYNAMICS software interface; proprietary options for higher sensitivity; refinements to the temperature control systems for improved response time; and the ability to couple the DynaPro to Wyatt's on-line multi-angle light scattering systems for enhanced resolution.

30.    Among the Proterion assets acquired by Wyatt were its invaluable customer database and website materials developed by Proterion during its ten plus years of specialized marketing and sales operations. During this time, the primary brand , DYNAPRO, went from fewer than $150, 000 in annual sales, to a brand valued in excess of $8 ,000,000.

31.    On information and belief, presently, there are more than 1,000 DYNAPRO systems in use worldwide.

32.    On November 17, 2004, Plaintiff successfully out bid all other competitors, to acquire Proterion physical and intangible assets pursuant to an Asset Purchase Agreement ("Purchase Agreement"). (Exhibit "11" hereto.)

33.    The Purchase Agreement provided, in pertinent part, as follows:
         Section 1.  Purchase and Sale of Assets.

**8**

"1.1  Acquired Assets:  At the Closing, subject to Section 1.2, Seller
shall sell and assign to Buyer, free and clear of all security interests,
encumbrances restrictions on transfer, or adverse claims, and Buyer
shall buy from Seller, all of Seller's right, title and interest in the
following assets except any assets that constitute Excluded Assets (the
"Acquired Assets"):

      (a)  The physical assets of Proterion effectively conveyed to
Seller which are in the possession, custody or control of the
Seller, exclusive of office equipment, furniture and related
assets located at Proterion's office in Somerset, New Jersey.

      (b)  The website domain:  Proterion.com.

      (c)  Exclusive rights to all software source and compiled code
developed for Proterion, to the extent available to the Assignee.

      (d)  Exclusive rights to all customer databases, servers,
prospective customer databases and servers, etc.

      (e)  Exclusive rights to all manufacturing software programs
and databases relating the manufacturing, resource and planning
for manufacturing any equipment by Proterion.

      (f)  Exclusive rights to all documentation relating to the
fabrication of such instruments."

(hereinafter "the Acquired Assets").

34.    On January 18, 2005, a First Amendment to Asset Purchase Agreement
(this "First Amendment") was made.  (Exhibit "12" hereto.)

The First Amendment, provides in pertinent part as follows:

       *            *          *

      "Plaintiff's Acquired Assets included the entire and exclusive
right, title and interest in and to all trademarks, service marks,

9

trade names, business names, logos, and brands relating to the
business of Proterion, including without limitation the marks
PROTERION, DYNAPRO, and PROTEIN SOLUTIONS
(collectively, the "Trademarks"), any registrations or
applications to register the Trademarks subsisting in any
country of the world, and the goodwill and undertaking of
Proterion in relation to the business heretofore carried on by
Proterion in connection with the Trademarks, together with the
exclusive right for Buyer to represent itself as carrying on such
business succession to Proterion, and any other industrial or
intellectual property right subsisting in any country of the world
(in each case for the full period thereof and all extensions and
renewals thereof) which are either owned by Proterion or
owned by person(s) other than Proterion and licensed to
Proterion on an exclusive or non-exclusive basis for use in
connection with its business. ..."

35.    Defendant Dolak was employed by Protein Solutions, Inc. as its
Marketing and Sales Manager from at least 1997 to January 2003.

36.    Defendant Dolak directed Sales and Marketing for Protein Solutions and
was an early member of the company who helped grow Proterion's business each
year, from its startup phase.  Defendant Dolak readily admits on his website that this
growth was attributable to proprietary "… creative, integrated marketing
communications and sales initiatives that included: brand marketing, direct mail,
trade show exhibiting public relations, customer relationship management, Website
marketing and direct selling…".  Defendant further extols his value: "...He was the
top salesperson for the company which served protein characterization, biochemical,
biophysical, proteomic and other life science markets…".

37.    As a former founder and employee of Proterion, Defendant Dolak was entrusted with access to and protection of the foregoing Trade Secrets. In connection with his employment, said Defendant had and has fiduciary duty to protect such Trade Secrets.

38.    On information and belief, Defendant Dolak while employed by Protein Solutions:

> (i)  had access to and now possesses trade secrets and other confidential information proprietary to Protein Solutions [now owned by Plaintiff], including the Acquired Assets set forth in the Purchase Agreement at para. 1.1 (c)(d)(e)(f)(g) and (h) ("Trade Secrets"); and

> (ii)  entered into obligations of confidentiality under which Defendant Dolak agreed to refrain from using, for his own respective purposes, or those of any other person, or company, such Trade Secrets.

39.    On information and belief, Defendant Dolak, was aware of, and agreed to be bound by Protein Solution's established policy which provided, in pertinent part, as follows:

"Non-Disclosure of Confidential Information

> The employee shall not during their period of employment (other than in the proper performance of his/her duties), or after its termination, make use of for their own purposes or those of any other person or company, any trade secrets, inventions or confidential information relating to the business, accounts, transactions or finances of Protein Solutions or its associated and subsidiary companies or of their customers or suppliers.

The obligations set out in this policy statement shall continue without limitation in time, but shall cease to apply to any information or knowledge which may subsequently come into the public domain other than by way of unauthorized disclosure.

On termination of employment for any reason, the Employee shall immediately surrender to any Director all original copy documentation relating to any of the above.

The employee shall be expected to take all reasonable care to prevent the publication or disclosure of any of the above, unless so required by the Company. All necessary and proper security measures shall be used to prevent even accidental disclosure. Confidential information of a tangible nature should not be removed from Company premises without the approval of any Director...."

40.    At least since 2006, Defendant Dolak, in breach of his obligations, set forth in paras. 37 through 39 and in conscious disregard of Plaintiff's ownership rights in the Acquired Assets, disclosed and/or used such Trade Secrets without Plaintiff's consent.

41.    On information and belief, the above-identified Trade Secrets have been disclosed by Defendant Dolak to Defendant Malvern and other third parties and/or used such Trade Secrets.

42.    Plaintiff is informed and believes and therefore alleges that Defendants have utilized some or all of said Trade Secrets in the course of competing with Plaintiff and have communicated with Plaintiff's customers with the assistance of said Trade Secrets to the financial harm and detriment of Plaintiff.

43.    In addition to the retention of Defendant Dolak, Defendant Malvern employs other former Proterion key employees to utilize and exploit Plaintiff's Trade Secrets and Plaintiff's copyrighted works . On information and belief, Defendant Malvern hired  Ulf Nobbmann in 2003.  Dr. Nobbman started his career with Protein Solutions and was involved in development, sales and support of the DynaPro instrument family.  He is currently employed by Defendant Malvern in California as its Specialist for Biophysical Characterization, involved in world-wide training and development of application knowledge and expertise.

44.    On or about June 19, 2006, Plaintiff first discovered Defendant Dolak had disseminated Plaintiff's trade secret customer list to other third parties .

45.    On information and belief, Defendant Dolak disseminated such materials through his website "Marketing by Dave Dolak".  (See Exhibit "13 " hereto.)

46.    The wrongful disclosure of some or all of said Trade Secrets  by Defendant Dolak to Defendant Malvern and other  third parties  has given substantial competitive advantage to Defendants to which they are not entitled.  The acts of Defendants as alleged herein constitute misappropriation of trade secrets, as defined in the California Civil Code § 3426.1(b).

47.    Upon information and belief, at least since 2006 Defendant Malvern is a company that claims to develop "proprietary technology systems".  See www.malvernusa.com. , www.malvern.com, www.malvern.co.uk and www.dynamiclightscattering.com ("Defendants' websites")  Upon information and belief, Defendants publish and re-publish written materials and provide downloadable software to promote their products including the Zetasizer Nano system to determine molecular sizing, and characterization .

48.    Since at least 2006, Defendants have marketed and sold the  Zetasizer Nano  products including software, and firmware ( Exhibit "14") without authorization, consent, or license to reproduce, make derivative works of, or

1  otherwise utilize Plaintiff's copyrighted works described in paragraphs 12 through
2  20 above.

3      49.    Defendants' infringing software includes protein utilities which enables
4  a number of scenarios to be tried by the enduser  without having to edit the result.
5  These utilities provide for the investigation of the sensitivity of changes in the input
6  parameters to the result, or removing or adding points to the Debye plot.   Such
7  software   also enables estimations of the shape to be done from input of the
8  molecular weight and hydrodynamic diameter.  Defendants' infringing Zetasizer
9  Nano products are promoted, marketed and offered for sale on Defendants' websites
10  which infringe Plaintiff's copyrighted works as further set forth herein.

11      50.    Defendant Malvern, as part of its common plan  and scheme to injure
12  and  otherwise unfairly complete with  Plaintiff , has infringed Plaintiff's copyrights
13  set forth above and has used false advertising and misappropriation of Plaintiff's
14  trade secrets as a means to capture market share in the "Protein Characterization
15  Market" dominated by the DynaPro Molecular Sizing (Dynamic Light Scattering – or
16  DLS) instruments.

17      51.    The Malvern web site materials offer the most compelling case for false
18  advertising of Defendant's ZetaSizer Nano product and product related technical
19  support, which compete directly against Plaintiff.

20      a)    The web site media are material because they provide the greatest
21          exposure to the scientific community (vis-à-vis "Global Access"), in the
22          greatest level of detail with the greatest number of communications
23          pieces (application notes, literature reference, frequently asked
24          questions, on-demand presentations, etc.)… and the advertising is
25          CONSTANT, available 24/7, in contrast to other advertising vehicles
26          which are temporary or "throw aways" (e.g., direct mailing, journal
27          advertisements, seminars, etc.) that are less frequent and less likely to be
28          viewed, heard, or attended by the target market.

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

b)  Several of the web-based marketing materials are material because they
    present information that is literally untrue and misleading with respect
    to the product performance of the Malvern ZetaSizer Nano as well as the
    development and communication of technical support materials.

c)  The product performance presented by Malvern is misleading in that the
    information presented are data from the Wyatt DynaPro DLS
    instrument. This approach by Malvern is misleading because it presents
    materials developed by and for the Protein Solutions DynaPro. But
    because Malvern aspires to this same market, it is easier for them to
    copy Plaintiff's materials than create their own.

52.  Malvern's web-based statements are material to the decision of
customers who
buy or \use such products due to the typical behavior and decision making process
of the scientific instrumentation market. Customers who have not used previously
the technique of "dynamic light scattering" generally want "proof of capability" of
the technique and the specific instrument as applied to protein characterization, as
part of their purchasing process, which usually includes:

a)  data illustrating the instrument can accomplish their intended use, or
    application. The data are provided by the manufacturer of the
    instrument, which include product brochures, product specifications,
    and exemplary data typically communicated in application notes or
    literature citations;

b)  precedents of the use by the scientific community, particularly
    recognized peers, of the technique and instrument. Previously published
    scientific articles in independent, peer-reviewed journals citing data or
    the use of the manufacturer's instrument for the intended use are
    generally accepted precedents.

15

    c)     feasibility studies on actual customer samples. Feasibility studies include demonstration of the instrument in the customer's lab' measuring 'samples' submitted by the customer in the manufacturer's lab; visiting or utilizing a laboratory currently using the manufacturer's instrument for measuring 'samples' submitted by the custom in the manufacturer's instrument for measuring samples (i.e., customer references).

    d)     Customers who HAVE used the technique before, not necessarily the manufacturer's specific product offering, typically want to understand how the instrument under consideration "compares to" the instrument they have used before.

53.    Furthermore, due to the on-going convergence of DLS technology, the technical support provided by and pedigree of a DLS manufacturer has become significant factors in the decision-making process to purchase DLS instrumentation.

54.    In the case of the protein characterization market, the DynaPro dominated its market prior to Malvern's hiring of former Protein Solutions employees. The DynaPro virtually created the market due to its unique product capabilities and technical support capabilities for protein characterization and methods development to optimize the results obtained. To capture share in the protein market, Malvern must demonstrate or communicate that their instrument can perform the same as or better than the DynaPro, as well as having the ability to provide expertise to support customers involved in protein characterization. It must also find these customers.

55.    Malvern has made statements of material fact with respect to the Malvern ZetaSizer Nano that are literally untrue or misleading with respect to the first two of the

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

three areas of the "proof of capability" desired by customers purchasing dynamic light scattering instruments. Chief among the untrue statements are Malvern presentations which explicitly claim "all data presented were taken with the Malvern ZetaNano Sizer" when, in fact, the presentations include copyrighted data taken without permission from the Wyatt (Protein Solutions) DynaPro instrument and other Wyatt instruments, without any reference to that fact.

56.    Chief among the misleading statements are Malvern presentations, application notes, and technical support materials that include data taken from the DynaPro presented in the format and structure of marketing and support materials clearly and unequivocally promoting the Malvern instrument.

57.    In all cases, DynaPro data are used by Malvern to prove or reinforce the ill-conceived perception that the Malvern ZetaSize Nano can accomplish the same application that has been used by the scientific community, particularly recognized peers, of the technique and instrument.

58.    Exhibit "15" hereto are examples of Defendant Malvern claiming that SEC and DLS can be combined to determine absolute molecular weight, which is not true. These techniques, whether used by themselves or in a combined fashion, can only estimate molecular weight (neither measures this parameter). This is done intentionally in order to confuse the market place about the need for Wyatt's other instruments (multi-angle static light scattering)   as the correct tool for determining molecular weight.

59.    Malvern's false statements on the website, Dolak's presentation, and the new "Truth" marketing campaign all suggest that SEC-DLS can take the place of (produce same results as) SEC-MALS, or that SEC-MALS is not necessary to obtain molecular weight, which is not true, undermining the careful scientific efforts of Wyatt for the past 25 years.

60.    Exhibit "16" hereto are examples of Malvern portraying that their new ZetaSizer Nano system can perform certain experiments by providing actual

experimental data.  However, in many instances the data presented by Malvern were obtained with the DynaPro instrument, not the Malvern instrument.

61.    In scientific literature it is customary to identify the instrumentation, equipment, materials, and methods used to generate the data presented.  The purpose of this approach is so that another scientist can attempt to repeat the experiment and independently validate the results of the previous scientists—one of the basic premises of scientific investigation.

62.  Exhibit "17" coming from Malvern, implies that the Malvern Zetanano is the instrument used, as there is no indication to the contrary.  Therefore, scientists who want to repeat these types of experiments will be led to believe that they should use a Malvern system to achieve the results, rather than the original instrumentation—the DynaPro.

63.    Upon information and belief, at least since February 2007   Defendants Malvern and Dolak also created, sponsor, and/or support a marketing campaign called "THE TRUTH".  This marketing campaign uses the Internet, and Malvern employees wearing black Tee shirts emblazoned with the words "THE TRUTH" to emphasize the false and misleading materials referred to  above and  Defendants websites. Upon information and belief, this Web site prompts visitors for login and password information prior to allowing visitors access to additional Web pages of broadcast seminars ("webinares" and Power Point presentations via "Brainshark").

64.    Upon information and belief, Wyatt and Malvern are competitors.  Both manufacture, market, and/or sell, inter alia, laser light scattering goods and services relating to measuring molecular weights and characterization of molecules and particles..

65.    Upon information and belief, Defendants' Website contains multiple statements by Malvern made in commercial advertising or promotion; and/or statements which relate to the approval, sponsorship and endorsement of Malvern's goods, services, or commercial activities, and/or that relate to the nature,

characteristics, or qualities of Malvern's goods or services.  For example, Dfendants'
websites contain statements shown by Exhibits 15-17.

66.    Upon information and belief, these statements contain false and/or
misleading descriptions of facts, or false and/or misleading representations of fact.

67.    Upon information and belief, the Web page advertising at
www.malvernusa.com  is also linked with  and/or re-directs the user to other of
Defendants ' websites..

68.    Upon information and belief, the statements  on the above-mentioned
Web pages contain false and/or misleading descriptions of fact, and/or false and/or
misleading representations of fact.

69.    Upon information and belief, the statements on Defendants' websites
have been viewed by individuals and/or entities located in jurisdictions outside the
state of California.

70.    Upon information and belief, researchers, scientists, other individuals
and companies within this judicial district and elsewhere, have entered into
commercial transactions with Defendants relating to the goods and/or services
promoted on the Defendants'  websites.  Upon information and belief,  scientists,
researchers and other customers located outside of the state of California have
entered into commercial transactions with Defendants  relating to the promotions,
goods and/or services found on Defendants' websites. .

71.    Upon information and belief, as a result of the false or misleading
descriptions of fact, or false or misleading representations of fact on Defendants'
websites , customers have been confused and/or are likely to be confused.  As a
result, Wyatt has lost, and is likely to lose sales on its own relevant goods and/or
services.  In addition, the goodwill associated with Wyatt's goods and/or services
have lessened, and is likely to be lessened.

72.    As a direct and proximate result of the violations alleged herein,
Plaintiff has been, and will continue to be immediately and irreparably injured in its

business and property by Defendants' continuing violations.  Plaintiff has no
adequate remedy at law to compensate for such injury, and unless Defendant is
restrained by an appropriate order of this Court, Plaintiff will continue to suffer an
inability to compete fully and fairly in the market, loss of its revenues, loss of profits
it would other have made, loss of substantial goodwill and reputation normally
attached to a profitable enterprise, and a reduction in the value of its business as a
going concern.

73.    As a direct and proximate result of the violations alleged herein and as
intended by Defendants, Plaintiff has sustained injury to its business and property, as
follows:

(a)    It has incurred attorneys' fees in the defense of Defendant's baseless,
claims described above;

(b)    Plaintiff has lost or will lose profits in an amount as yet undetermined
with certainty at present;

(c)    Plaintiff has suffered, or will suffer a loss in the value of its business as
a going concern;

(d)    Plaintiff has suffered, or will suffer a substantial loss of goodwill
normally attached to a profitable enterprise; and

(e)    Plaintiff has suffered a lost potential for growth.

74.    Plaintiff, cannot now measure these damages with specificity but
estimates such amount to be in excess of Twenty-Five Million Dollars
($25,000,000.00) .

///

## FIRST CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. No. TXu 1-569-097 – Against All Defendants)

75.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74 of this complaint as if set forth herein in their entirety.

76.     On October 11, 2007, U.S. Copyright Registration No. TXu 1-569-097, entitled "DYNAMICS  v. 6.2.05", (Exhibit "1" hereto), was duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

77.     Upon information and belief, there are substantial similarities between the work covered by Plaintiff's '097 Registration and Defendants' ZetaSizer Nano Software.

78.     Plaintiff's copyrighted work DYNAMICS v 6.2.05 is software which includes support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules.  This software includes a molecular weight calculation dialog that produces a numerical answer from user input.

79.    Defendants' infringing Zeta Sizer Nano products includes software
"Dispersion Technology Software" (DTS) that contains "Protein Utilities" including
a "Molecular Weight Calculations" dialog.  Defendants' software incorporates
substantially similar elements to Plaintiff's copyrighted work and produces
substantially similar numerical answers.  Illustrative examples comparing Plaintiff's
copyrighted work with Defendants' ZetaSizer Nano DTS software are set forth in
Exhibit "18 " hereto.

80.    Upon information and belief, Defendants, with actual knowledge that
the work covered by the '097 Registration was protected by copyright, are willfully
and deliberately infringing the '097 Registration, or contributing to or inducing said
infringement in the United States and within this District without the authority of
Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless
enjoined by this Court.

81.    Plaintiff Wyatt has suffered damage by reason of Defendants'
infringement of the '097 Registration, and will suffer additional irreparable damage
and impairment of the value of its copyright, including, but not limited to, damages
relating to Defendants' infringement of these protected works including Plaintiff's
lost profits in the sale of products which embody these protected works unless
Defendants are enjoined by this Court from continuing its infringement of the '097
Registration.

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

82.   Upon information and belief, the acts of infringement by Defendants have been and are being committed with full knowledge of Plaintiff's rights under the '097 Registration and willful and wanton disregard thereof.

## SECOND CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No. TXu 1-569-098 – Against All Defendants)

83.   Plaintiff  incorporates by reference the allegations set forth in paragraphs 1 through 74 and 76 through 82 of this complaint as if set forth herein in their entirety.

84.   On October 11, 2007, U.S. Copyright Registration No. TXu 1-569-098, entitled "DYNAMICS v. 6.3.40", (Exhibit "2" hereto), was duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

85.   Upon information and belief, there are substantial similarities between the work covered by Plaintiff's '098 Registration and Defendants' ZetaSizer Nano Software.

86.    Plaintiff's copyrighted work DYANMICS v. 6.3.40 is software which includes support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules.  This software includes tree design interfaces and SOP interfaces from user input

87.    Defendants' ZetaSizer Nano includes software "Dispersion Technology Software" (DTS)  "Protein Utilities" includes "Tree Design" interfaces and SOP interfaces.  Illustrative examples comparing Plaintiff's copyrighted work with Defendants' ZetaSizer Nano DTS software are set forth in Exhibit "19 " hereto.

88.    Upon information and belief, Defendants, with actual knowledge that the work covered by the '098 Registration was protected by copyright, are willfully and deliberately infringing the '098 Registration, or contributing to or inducing said infringement in the United States and within this District without the authority of Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless enjoined by this Court.

89.    Plaintiff Wyatt has suffered damage by reason of Defendants' infringement of the '098 Registration, and will suffer additional irreparable damage and impairment of the value of its copyright, including, but not limited to, damages relating to Defendants' infringement of these protected works including Plaintiff's lost profits in the sale of products which embody these protected works unless

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

1  Defendants are enjoined by this Court from continuing its infringement of the '098

2
3  Registration.

4       90.    Upon information and belief, the acts of infringement by Defendants

5  have been and are being committed with full knowledge of Plaintiff's rights under the
6
7  '098 Registration and willful and wanton disregard thereof.

8                        THIRD CLAIM FOR RELIEF
9
10       (Copyright Infringement Under 17 U.S.C. Section 101, et seq.
         of U.S. Registration No. TXu 1-569-099 – Against All Defendants)
11

12       91.    Plaintiff incorporates by reference the allegations set forth in paragraphs
13
14  1 through 74, 76 through 86 and 84 through 90  of this complaint as if set forth

15  herein in their entirety.
16
17       92.    On October 11, 2007, U.S. Copyright Registration No.  TXu 1-569-099,

18  entitled "DYNAMICS SOFTWARE v. 5.26.56", (Exhibit "3" hereto), was duly and
19
20  legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have

21  been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the
22
23  copyright, with the right to sue for copyright infringement thereon and recover for
24  infringement thereof.

25       93.    Upon information and belief, there are substantial similarities between
26
27  the work covered by Plaintiff's '099 Registration and Defendants' ZetaSizer Nano

28  Software.

94.    Plaintiff's copyrighted work DYNAMICS SOFTWARE v. 5.26.56 is software which includes support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules. This software includes "Axial Ratio (Elliptical Shape) Calculator". This calculation, referred to as the Perrin Shape Factor, is a highly specialized calculation.

95.    Defendants' ZetaSizer Nano includes software "Dispersion Technology Software" (DTS) that contains Protein Utilities including "Calculations" containing a "Shape Estimate" section. This infringing software implements a substantially identical function in virtually the same manner. Illustrative Examples comparing Plaintiff's copyrighted work with Defendants' Zetasizer Nano software are set forth in Exhibit "20" hereto.

96.    Upon information and belief, Defendants, with actual knowledge that the work covered by the '099 Registration was protect by copyright, are willfully and deliberately infringing the '099 Registration, or contributing to or inducing said infringement in the United States and within this District without the authority of Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless enjoined by this Court.

97.    Plaintiff Wyatt has suffered damage by reason of Defendants' infringement of the '099 Registration, and will suffer additional irreparable damage and impairment of the value of its copyright, including, but not limited to, damages

26

relating to Defendants' infringement of these protected works including Plaintiff's

lost profits in the sale of products which embody these protected works unless

Defendants are enjoined by this Court from continuing its infringement of the '099

Registration.

98.    Upon information and belief, the acts of infringement by Defendants

have been and are being committed with full knowledge of Plaintiff's rights under the

'099 Registration and willful and wanton disregard thereof.


## FOURTH CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No. TX 6-812-045 – Against All Defendants)


99.    Plaintiff  incorporates by reference the allegations set forth in

paragraphs 1 through 74, 76 through 82, 84 through 90, and 92 through 98 of this

complaint as if set forth herein in their entirety.

100.   On October 11, 2007, U.S. Copyright Registration No. TX 6-812-045,

entitled "DYNAMICS INSTALLATION CD  v. 6.3.40", (Exhibit "4" hereto), was

duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said

copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is

the owner of the copyright, with the right to sue for copyright infringement thereon

and recover for infringement thereof.

101.   Upon information and belief, there are substantial similarities between the work covered by Plaintiff's '045 Registration and  Defendants' Zetasizeer Nano software.

102.   Plaintiff's copyrighted work Dynamics Installation CD v. 6.3.40 is software which includes support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules. This software includes "Static MW Calculator" module.

103.   Defendants' ZetaSizer Nano includes software "Dispersion Technology Software" (DTS) that contains "Protein Utilities" including a "Protein Utilities Debye Plot" dialog.  Defendants' software incorporates substantially similar elements to Plaintiff's copyrighted work and produces substantially similar numerical answers.  Illustrative examples comparing Plaintiff's copyrighted work with Defendants' ZetaSizer Nano    software are set forth in Exhibit "21 hereto.

104.  Upon information and belief, Defendants, with actual knowledge that the work covered by the '045 Registration was protected by copyright, are willfully and deliberately infringing the '045 Registration, or contributing to or inducing said infringement in the United States and within this District without the authority of Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless enjoined by this Court.

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

105.   Plaintiff Wyatt has suffered damage by reason of Defendants' infringement of the '045 Registration, and will suffer additional irreparable damage and impairment of the value of its copyright, including, but not limited to, damages relating to Defendants' infringement of these protected works including Plaintiff's lost profits in the sale of products which embody these protected works unless Defendants are enjoined by this Court from continuing its infringement of the '045 Registration.

106.   Upon information and belief, the acts of infringement by Defendants have been and are being committed with full knowledge of Plaintiff's rights under the '045 Registration and willful and wanton disregard thereof.

## FIFTH CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No.  TX 6-812-047 – Against All Defendants)

107.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98 and 100 through 106 of this complaint as if set forth herein in their entirety.

108.   On October 11, 2007, U.S. Copyright Registration No. TX 6-812-047, entitled "DYNAMICS INSTALLATION CD v. 5.26.56", (Exhibit "5" hereto), was duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said

copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

109.    Upon information and belief, there are substantial similarities between the work covered by the '047 Registration and Defendants' ZetaSizer Nano Software.

110.    Plaintiff's copyrighted work Dynamics Installation CD v. 5.26.56 is software which includes dialog support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules.  This software includes a utility support automated temperatue control or ramping experiments.

111.    Defendants' ZetaSizer Nano includes software "Dispersion Technology Software" (DTS) that contains "Protein Utilities" including software containing capability with a similar design.  Defendants' software incorporates substantially similar elements to Plaintiff's copyrighted work and produces substantially similar numerical answers.  Illustrative examples comparing Plaintiff's copyrighted work with Defendants' ZetaSizer Nana DTS software are set forth in Exhibit "22"hereto.

112.    Upon information and belief, Defendants, with actual knowledge that the work covered by the '047 Registration was protected by copyright, are willfully and deliberately infringing the '047 Registration, or contributing to or inducing said

infringement in the United States and within this District without the authority of

Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless

enjoined by this Court.

113.   Plaintiff Wyatt has suffered damage by reason of Defendants'

infringement of the '047 Registration, and will suffer additional irreparable damage

and impairment of the value of its copyright, including, but not limited to, damages

relating to Defendants' infringement of these protected works including Plaintiff's

lost profits in the sale of products which embody these protected works unless

Defendants are enjoined by this Court from continuing its infringement of the '047

Registration.

114.   Upon information and belief, the acts of infringement by Defendants

have been and are being committed with full knowledge of Plaintiff's rights under the

'047 Registration and willful and wanton disregard thereof.

<u>SIXTH CLAIM FOR RELIEF</u>

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No. TX 6-812-053 – Against All Defendants)

115.   Plaintiff  incorporates by reference the allegations set forth in

paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through

106 and 108 through 114 of this complaint as if set forth herein in their entirety.

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

116.   On October 12, 2007, U.S. Copyright Registration No. TX 6-812-053, entitled "PSI BOOKS, DYNAMIC LIGHT SCATTERING", (Exhibit "6" hereto), was duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

117.   Upon information and belief, there are substantial similarities between the work covered by the '053 Registration and Defendants' Website pages.

118.   Plaintiff's copyrighted work PSI Books, Dynamic Light Scattering is enduser learning tools for  a dynamic light scattering measurement system used for characterization of protein's and related biomolecules.  This material includes a library, known as "PSI Books", which was published both on the Protein Solutions website and as a help file incorporated within the Dynamics software installation CDs.

119.   Defendants' website pages  includes software "Dispersion Technology Software" (DTS) that contains "Protein Utilities" including Malvern's infringement of the website PSI Books "Is it better to use longer acquisition times?"  Defendants' website pages contain substantially similar content to Plaintiff's copyrighted work . Illustrative examples comparing Plaintiff's copyrighted work with Defendants' website pages  are set forth in Exhibit "23" hereto.

121. Upon information and belief, Defendants, with actual knowledge that the work covered by the '053 Registration was protected by copyright, are willfully and deliberately infringing the '053 Registration, or contributing to or inducing said infringement in the United States and within this District without the authority of Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless enjoined by this Court.

122. Plaintiff Wyatt has suffered damage by reason of Defendants' infringement of the '053 Registration, and will suffer additional irreparable damage and impairment of the value of its copyright, including, but not limited to, damages relating to Defendants' infringement of these protected works including Plaintiff's lost profits in the sale of products which embody these protected works unless Defendants are enjoined by this Court from continuing its infringement of the '053 Registration.

123. Upon information and belief, the acts of infringement by Defendants have been and are being committed with full knowledge of Plaintiff's rights under the '053 Registration and willful and wanton disregard thereof.

///

///

///

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

## SEVENTH CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No. TX 6-813-868 – Against All Defendants)

124.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, 76 through 82, 86 through 90, 92 through 98, 100 through 106, 108 through 114, and 116 through 123 of this complaint as if set forth herein in their entirety.

125.   On October 12, 2007, U.S. Copyright Registration No. TX 6-813-868, entitled "PROTEIN SOLUTIONS WEBSITE", (Exhibit "7" hereto), was duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

126.   Upon information and belief, there are substantial similarities between the work covered by the '868 Registration and Defendants' website promoting its ZetaSizer Nano Products Software.

127.   Plaintiff's copyrighted work Protein Solutions Website includes support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules.  This website includes "concentration calculators.

128.   Defendants' Website pages contain "Protein Utilities" including a "Concentration Calculator" dialog.  .  Illustrative examples comparing Plaintiff's copyrighted work with Defendants'  substantially similar website page content is set forth in Exhibit "24" hereto.

129.   Upon information and belief, Defendants, with actual knowledge that the work covered by the '868 Registration was protected by copyright, are willfully and deliberately infringing the '868 Registration, or contributing to or inducing said infringement in the United States and within this District without the authority of Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless enjoined by this Court.

130.   Plaintiff Wyatt has suffered damage by reason of Defendants' infringement of the '868 Registration, and will suffer additional irreparable damage and impairment of the value of its copyright, including, but not limited to, damages relating to Defendants' infringement of these protected works including Plaintiff's lost profits in the sale of products which embody these protected works unless Defendants are enjoined by this Court from continuing its infringement of the '868 Registration.

131.   Upon information and belief, the acts of infringement by Defendants have been and are being committed with full knowledge of Plaintiff's rights under the '868 Registration and willful and wanton disregard thereof.

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

## EIGHTH CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No. TX 6-816-833 – Against All Defendants)

132.  Plaintiff  incorporates by reference the allegations set forth in
paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through
106, 108 through 114, 116 through 123 and 125 through 131 of this complaint as if
set forth herein in their entirety.

133.  On December 17, 2007, U.S. Copyright Registration No. TX 6-816-833,
entitled "PSI BOOKS", (Exhibit "8" hereto), was duly and legally issued by the U.S.
Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff,
Wyatt Technology Corporation, which is the owner of the copyright, with the right to
sue for copyright infringement thereon and recover for infringement thereof.

134.  Upon information and belief, there are substantial similarities between
the work covered by the '833 Registration and Defendants' ZetaSizer Nano DTS
Ssoftware.

135.  Plaintiff's copyrighted work PSI Books is software which includes
dialog support for the implementation of a dynamic light scattering measurement
system used for characterization of protein's and related biomolecules.     Hardware
senses or collects data or information about the physical or chemical parameters of
the material under study.  Software often controls the hardware, and generally stores,

analyzes, and presents the data collected with the hardware.  Furthermore, the software generally contains integrated help and support information to assist the user with the operation of the software and hardware.  As such, the hardware and software of modern scientific instruments are highly interdependent components comprising the "product" sold by instrument manufacturers.

136.   Defendants' website  including the Malvern ZetaSizer Nano software "Dispersion Technology Software" (DTS) contains integrated help files, including an additional help file referred to as "FAQ" or alternatively as "Malvern Instruments Technical Support Library".  The first covers the material referred to as the "Rayleigh ratio", followed by the "Literature References" contained in PSI Books. Defendants' software incorporates substantially similar elements to Plaintiff's copyrighted work and produces substantially similar numerical answers.  Illustrative examples comparing Plaintiff's copyrighted work with Defendants' ZetaSizer Nana DTS software are set forth in Exhibit "25 hereto.

137.   Upon information and belief, Defendants, with actual knowledge that the work covered by the '833 Registration was protected by copyright, are willfully and deliberately infringing the '833 Registration, or contributing to or inducing said infringement in the United States and within this District without the authority of Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless enjoined by this Court.

138.   The Malvern ZetaSizer Nano and Protein Solutions DynaPro are two

instruments that consist of highly interdependent software and hardware components

as described above.

139.   Plaintiff Wyatt has suffered damage by reason of Defendants'

infringement of the '833 Registration, and will suffer additional irreparable damage

and impairment of the value of its copyright, including, but not limited to, damages

relating to Defendants' infringement of these protected works including Plaintiff's

lost profits in the sale of products which embody these protected works unless

Defendants are enjoined by this Court from continuing its infringement of the '833

Registration.

140.   Upon information and belief, the acts of infringement by Defendants

have been and are being committed with full knowledge of Plaintiff's rights under the

'833 Registration and willful and wanton disregard thereof.


## NINTH CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. Section 101, et seq.
of U.S. Registration No. TX 6-816-834 – Against All Defendants)

141.   Plaintiff incorporates by reference the allegations set forth in

paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through

106, 108 through 114, 116 through 123, 125 through 131 and 133 through 140 of this complaint as if set forth herein in their entirety.

142.   On December 17, 2007, U.S. Copyright Registration No. TX 6-816-834, entitled "PSI FREQUENTLY ASKED QUESTIONS", (Exhibit "9" hereto), was duly and legally issued by the U.S. Copyright Office.  Exclusive rights in said copyright have been assigned to Plaintiff, Wyatt Technology Corporation, which is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

143.   Upon information and belief, there are substantial similarities between the work covered by the '834 Registration and Defendants'  website www.dynamiclightscattering.com.

144.   Plaintiff's copyrighted work PSI Frequently Asked Questions is software which includes dialog support for the implementation of a dynamic light scattering measurement system used for characterization of protein's and related biomolecules.  This software includes a molecular weight calculation dialog that produces a numerical answer from user input

145.   Defendants' ZetaSizer Nano includes verbatim copy (text) from "FAQ's".  Defendants' software incorporates substantially similar elements to Plaintiff's copyrighted work and produces substantially similar numerical answers.

Illustrative examples comparing Plaintiff's copyrighted work with Defendants'

ZetaSizer Nana DTS software are set forth in Exhibit "26 hereto.

146.   Upon information and belief, Defendants, with actual knowledge that

the work covered by the '834 Registration was protected by copyright, are willfully

and deliberately infringing the '834 Registration, or contributing to or inducing said

infringement in the United States and within this District without the authority of

Plaintiff and in violation of 17 U.S.C. §101 et seq., and will continue to do so unless

enjoined by this Court.

147.   Plaintiff Wyatt has suffered damage by reason of Defendants'

infringement of the '834 Registration, and will suffer additional irreparable damage

and impairment of the value of its copyright, including, but not limited to, damages

relating to Defendants' infringement of these protected works including Plaintiff's

lost profits in the sale of products which embody these protected works unless

Defendants are enjoined by this Court from continuing its infringement of the '834

Registration.

148.   Upon information and belief, the acts of infringement by Defendants

have been and are being committed with full knowledge of Plaintiff's rights under the

'834 Registration and willful and wanton disregard thereof.

///

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

# TENTH CLAIM FOR RELIEF

## (Violation of The Lanham Act (§43 – Against All Defendants)

149.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through 106, 108 through 114, 116 through 123, 125 through 131, 133 through 140, and 142 through 148 of this complaint as if set forth herein in their entirety.

150.   Malvern has made false or misleading descriptions of fact, or false or misleading representations of fact, in connection with Malvern's goods or services.

151.   Malvern's false or misleading descriptions of fact, or false or misleading representations of acts, have actually caused and/or are likely to cause a substantial segment of its audience to be confused, mistaken, or deceived as to the sponsorship or approval of Malvern's goods, services, or commercial activities.

152.   Malvern's false or misleading descriptions of fact, or false or misleading representations of acts, have actually caused and/or are likely to cause a substantial segment of its audience to be confused, mistaken, or deceived as to the nature, characteristics, or qualities of Malvern's goods, services, or commercial activities.

153.   Malvern's false or misleading descriptions of fact, or false or misleading representations of act have entered into interstate commerce.

41

154.   As a result, Plaintiff has been injured by loss of sales and/or lessening of goodwill associated with its name, goods and/or services.

155.   Malvern has violated 15 U.S.C. §1125(a) – (§43(a) of the Lanham Act).

## ELEVENTH CLAIM FOR RELIEF

### (Misappropriation of Trade Secrets – Against All Defendants)

156.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through 106, 108 through 114, 116 through 123, 125 through 131, 133 through 140, 142 through 148 and 150 through 155 of this complaint as if set forth herein in their entirety.

157.   At least since September 2006, Defendants Malvern and Dolak were, and now engage in the business of marketing and sales, and of manufacturing, distribution and service of the ZetaSizer Nano System and related products.

158.   `Plaintiff's proprietary information relating to the research, design, production, marketing, sales and distribution of DLS measurement systems as set forth herein, constitute trade secrets under California Civil Code Section 3246.

159.   Defendants willfully and wantonly misappropriated Plaintiff's trade secrets by, among other acts, using and disclosing such trade secrets when said

Defendants had a duty to maintain the secrecy thereof and to limit the use of

Plaintiff's trade secrets.

160.   Plaintiff's proprietary information relating to the research, design,

production and distribution of DLS and related products constitute trade secrets

under California Civil Code Section 3246.

161.   Defendants willfully and wantonly misappropriated Plaintiff's trade

secrets by, among other acts, using and disclosing such trade secrets when they had a

duty to maintain the secrecy and limit the use of the trade secrets.

162.   Plaintiff is being irreparably harmed by Defendants' acts of publishing

Plaintiff's trade secrets in the public domain and using those trade secrets to compete

with Plaintiff.   Plaintiff is entitled to injunctive relief as stated in California Civil

Code Section 3246.

163.   Plaintiff is also entitled to damages, both actual and exemplary, and

attorneys' fees, as stated in California Civil Code Section 3246.

164.   In the course of its business, Proterion had developed and maintained a

database of its customers  ("Customer Data Base") that is now the property of

Plaintiff.  This data base contains the identity of its customers, the names of contacts

within each customer's firm, each customer's preferences and desires as to Proterion's

products, and special pricing and financial accommodations granted to each

customer.  The Customer Data Base developed over a substantial period of time,

43

requiring substantial money and efforts to compile, is unavailable to the public and to others in the relevant industry, and would be of great value to Proterion's competitors. The Customer Data Base (including the individualized detailed information contained herein) has been the subject of reasonable efforts to maintain its confidentiality, including restricting access to those employees of Proterion who must use the Customer Data Base in performing their job duties.

165.    In addition to the Customer Data Base , Proterion had developed numerous trade secrets and confidential and propriety information ("Trade Secrets") that are the properties of Plaintiff.  These Trade Secrets include without limitation, the following:

a)    The customer data base;

b)    Confidential information relating to the finances of Proterion;

c)    Confidential information relating to research development, manufacturing, suppliers, and distributors of Proterion;

d)    Confidential information relating to the technical processes of Proterion;

e)    Confidential information relating to the marketing and distribution agreements of  Proterion's products;

f)    Confidential information relating to types and volumes of products sold to Proterion's customers;

g)    Confidential information relating to Proterion's strategies and plans as to

the pricing of goods sold to Proterion's customers;

h)    Confidential information relating to Proterion's entire marketing and

production plans, including its short term and long term strategy;

i)    Confidential information relating to knowledge of customer preferences

of changes in Proterion's products;

j)    Confidential information relating to Proterion's plans for new products

and changes to existing products; and

k)    Confidential information relating to Acquired Assets set forth in

Purchase Agreement at para. 1.1 (c)(d)(e)(f)(g) and (h).

166.    Defendant Dolak was a former employee of Proterion and was entrusted with access to nd protection of Proterion's Trade Secrets.  In connection with his employment, said Defendant had fiduciary duty to protect said Trade Secrets.

167.    Plaintiff is informed and believes and therefore alleges that Defendant Dolak has utilized some or all of the Trade Secrets in the course of competing with Plaintiff and has communicated with Plaintiff's customers with the assistance of said Trade Secrets to the financial harm and detriment of Plaintiff.

168.    The wrongful disclosure of some or all of the Trade Secrets by Defendants has given Defendants substantial competitive advantage to which they are not entitled.  The acts of Defendants as alleged in this cause of action constitutes

45

misappropriation of trade secrets, as defined in the California Civil Code § 3426.1(b).

169.    Defendants knew that the Trade Secrets of Plaintiff were obtained under circumstances giving rise to a duty to maintain their secrecy.  Defendants and each of them knew or had reason to know that the Trade Secrets of Plaintiff gained by them had independent economic value and was not generally known to the public or to others who could have obtained economic value from the disclosure or use of the information, and that Proterion and Plaintiff made or took reasonable efforts to ensure the secrecy of this information.

170.    As a proximate result of Defendants' acts of misappropriation and use of business secrets and confidential information of Plaintiff, Defendants and each of them have been, and will continue to be, unjustly enriched.

171.    As an additional proximate result of Defendants' wrongful acts, Plaintiff has sustained, and unless this Court intervenes to restrain Defendants' conduct, Plaintiff will continue to sustain, great and irreparable injury in that Plaintiff will lose customers and accounts, causing injury to Plaintiff's shareholders, employees, suppliers and contractors, and potentially putting Plaintiff out of business. Plaintiff has no adequate remedy at law for these injuries and unless Defendants are restrained from using the Trade Secrets of Plaintiff in the future, Plaintiff will be compelled to continue to bring suits to protect its interest.

172.  As a proximate result of the wrongful acts of Defendants, Plaintiff has lost profits in an amount according to proof at the time of trial, and will continue to lose profits until Defendants are enjoined from using the Trade Secrets of Plaintiff.

173.  Plaintiff is informed and believes and, on that basis, alleges that Defendants have committed their acts of misappropriation and other wrongful conduct willfully and maliciously with the intent of causing grievous financial harm to Plaintiff.  Defendants' conduct justifies an award to Plaintiff of exemplary damages under California Civil Code § 3426.3(c) and of attorneys fees under California Civil code § 3426.4, as well as other applicable authority.

## TWELFTH CLAIM FOR RELIEF

(Tortious Interference With Prospective Business Advantage)

174.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through 106, 108 through 114, 116 through 123, 125 through 131, 133 through 140, 142 through 148. 150 through 155 and 157 through 173 of this complaint as if set forth herein in their entirety

175.  Plaintiff has prospective business relations with its customers in this Judicial District and through the world.  Defendants knew of these prospective business relations because Plaintiff and Defendants are often engaged in head-to-

47

head competition and attend many of the same scientific seminars and tradeshows.

Defendant Malvern further knew that Plaintiff was the winning bidder and had

acquired the Proterion assets through lawful sale with full notice to all participants.

Indeed, Defendant Malvern participated unsuccessfully in that very sale.

176.    Upon information and belief, Defendants, through words or conduct or

both, intentionally interfered with these prospective business relations by soliciting

these customers and making the false and misleading statements referred to herein.

177.    Upon information and belief, Defendants' interference has caused some

customers to make purchases from Defendant Malvern and to not purchase Plaintiff's

products and services.

178.    Defendants' interference was intentional and improper.

179.    Defendants' interference has caused Plaintiff damages and losses.


## THIRTEENTH CLAIM FOR RELIEF

### (Unfair Competition)

180.    This is a claim for unfair competition arising under the laws of the

State of California, separately made and joined with the substantial and related

claims under the copyright and trademark laws of the United States.  Jurisdiction is

founded upon 28 U.S.C. § 1338(b) and venue is based upon 28 U.S.C. § 1391.

181.    Plaintiff incorporates by reference the allegations set forth in

48

paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through 106, 108 through 114, 116 through 123, 125 through 131, 133 through 140, 142 through 148,150 through 155, 157 through 173 and 175 through 179 of this complaint as if set forth herein in their entirety

182.    The conduct and acts of defendants alleged above have violated general principles of law and equity, constitute unfair competition under the laws of the State of California, and have diminished the value of Plaintiff's copyrighted works, trade secrets and other intellectual property rights.  Such conduct and acts have caused irreparable injury to Plaintiff and will continue to cause such injury unless enjoined by this Court.

183.    As a result of the wrongful conduct and acts of the defendant alleged above, defendant has been unjustly enriched.

184.    Wyatt has no adequate remedy at law.

## FOURTEENTH CLAIM FOR RELIEF
### (Accounting)

185.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 74, 76 through 82, 84 through 90, 92 through 98, 100 through 106, 108 through 114, 116 through 123, 125 through 131, 133 through 140, 142

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

through 148,150 through 155, 157 through 173, 175 through 179 and 182 through

184 of this complaint as if set forth herein in their entirety

186.   Plaintiff, upon information and belief, alleges that Defendants and each

of them have profited and continue to reap profits as a proximate result of the

wrongful acts and omissions described herein.  Defendants and each of them are in

the possession of assets, books, records, and accounts that quantify the extent of

Defendants' profits that are the property of Plaintiff and may disclose the extent and

degree of misappropriation of Plaintiff's Trade Secrets.

187.   Plaintiff asks the Court for an accounting of all of the assets, monies,

papers, accounts and records of Defendants and each of them from November 17,

2004 to the present date.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment

on all claims for relief as follows:

1.   Preliminary and then permanently enjoining and restraining Defendants,

their officers, agents, servants, employees, attorneys, successors or assigns, and all

persons or entities acting in concert or participating with them or any of them, from

the manufacture, distribution, offering for sale, sale, advertising and/or promotion in

the United States of:

    (a)    Defendant Malvern's Zetasizer Nano system that infringes

Plaintiff's copyrights;

    (b)    any other work that infringes Plaintiff's copyright in the work

registered with the U.S. Copyright Office as set forth in Exhibits 1-9 ;

2.    Awarding Plaintiff statutory damages based upon Defendants' acts of

infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. Sections 101, et seq.

3.    Awarding Plaintiff, as an alternative to statutory damages, its actual

damages, plus any profits earned by any of the Defendants as a consequence of their

infringing activities, with interest.

4.    Awarding Plaintiff its reasonable attorneys' fees, taxable costs and

disbursements of this action pursuant to 17 U.S. C. Section 505.

5.    Awarding such other and further relief as the Court deems just and

proper.

6.    For a preliminary and permanent injunction enjoining Defendants from:

    (a)    further disclosure and use of Plaintiff's technology, trade secrets

and proprietary information;

    (b)    soliciting Plaintiff's customers and business partners for the

production of DSL products; and

    (c)    competing with Plaintiff in any unfair way regarding the research,

design, development, production, sale and marketing of DLS products.

SECOND AMENDED COMPLAINT FOR: COPYRIGHT INFRINGEMENT, ETC.

7.    Grant an order requiring Defendants, within thirty (30) days after service of notice of the entry of judgment, or any injunction pursuant thereto, file with the Court and serve on Plaintiff's counsel a written report under oath setting forth in detail the manner in which Defendants have complied with the Court's order;

8.    For all damages in an amount to be determined at trial, including actual damages, treble damages, exemplary, compensatory and incidental damages, lost profits, attorneys' fees and costs, pre and post-judgment interest and such other relief as the Court deems just and proper.

FRISENDA, QUINTON & NICHOLSON

Dated:  April 14, 2008          By:_____
                                FRANK FRISENDA, JR.
                                Attorneys for Plaintiff
                                WYATT TECHNOLOGY CORPORATION

///
///
///