1  Rollin A. Ransom (SBN 196126)
   rransom@sidley.com
2  Jennifer A. Ratner (SBN 205155)
   jratner@sidley.com
3  Frank J. Broccolo (SBN 210711)
   fbroccolo@sidley.com
4  Johari N. Townes (SBN 252369)
   jtownes@sidley.com
5  SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
6  Los Angeles, California 90013-1010
   Telephone: (213) 896-6000
7  Facsimile: (213) 896-6600

8  Attorneys for Defendants
   Malvern Instruments Incorporated
9  and David Dolak

10             **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

13 WYATT TECHNOLOGY                )  Case No. CV07-8298 DDP (MANx)
   CORPORATION, a California        )
14 Corporation,                     )  Assigned to: Hon. Dean D. Pregerson
                                     )
15          Plaintiff,              )  **DEFENDANTS' NOTICE OF**
                                     )  **MOTION AND MOTION FOR**
16    vs.                           )  **PARTIAL SUMMARY JUDGMENT**
                                     )  **REGARDING PLAINTIFF'S**
17                                   )  **COPYRIGHT CLAIMS;**
   MALVERN INSTRUMENTS              )  **MEMORANDUM OF POINTS AND**
18 INCORPORATED, a Massachusetts     )  **AUTHORITIES IN SUPPORT**
   corporation; DAVID DOLAK, an      )  **THEREOF**
19 individual; and DOES 1 through 50, )
   inclusive,                       )  [Filed concurrently with [Proposed]
20                                   )  Statement of Uncontroverted Facts and
            Defendants.             )  Conclusions of Law; Appendix of
21                                   )  Confidential Exhibits to the Declaration
                                     )  of Rollin A. Ransom; [Proposed]Order]
22                                   )
                                     )  Date:      July 20, 2009
23                                   )  Time:      10:00 a.m.
                                     )  Place:     Courtroom 3
24                                   )
                                     )
25                                   )
                                     )
26                                   )
                                     )
27                                   )
                                     )
28

REDACTED
PUBLIC VERSION

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE THAT on July 20, 2009 at 10:00 a.m. before

3    the Honorable Dean D. Pregerson, in Courtroom 3 on the second floor of the United

4    States District Court for the Central District of California, located at 312 N. Spring

5    Street, Los Angeles, California, Defendants Malvern Instruments Incorporated and

6    David Dolak (collectively "Defendants") will and hereby does move pursuant to

7    Federal Rule of Civil Procedure 56(c) for an order granting partial summary judgment

8    on the Second Amended Complaint. This Motion is made on the grounds that there is

9    no relevant triable issue of material fact respecting Plaintiff's copyright claims against

10   Defendants, and that Plaintiff's copyright claims are in whole or in part without merit.

11   Specifically:

12
13
14
15

- Claims 1-3 for copyright infringement as to the screen displays of the Dynamics software fail because Malvern's software screen displays are not substantially similar to any protectable element of Plaintiff's work;

16
17
18
19

- Claims 4 and 5 for copyright infringement as to the Dynamics installation CDs fail because Malvern's software screen displays are not substantially similar to any protectable element of Plaintiff's work;

20
21
22

- Claim 7 for copyright infringement of the Protein Solutions' website fails because Malvern's website is not substantially similar to any protectable element of Plaintiff's work;

23
24

- Claims 6 and 8 for copyright infringement as to Plaintiff's PSI Books fail because any copyright interest in PSI Books has been abandoned;

25
26
27
28

- Plaintiff's claim for actual damages and lost profits relating to its ninth claim for copyright infringement as to PSI Frequently Asked Questions fails because there is no evidence of actual damages or lost profits caused as a result of the purported infringement; and

1 • Plaintiff's claims for statutory damages and attorneys' fees relating to
2 Claims 1 through 9 for copyright infringement fail because the
3 copyrights' effective dates are more than three months after the first
4 publication of the work underlying such copyright registration and
5 any purported infringement by Defendants of the copyrights
6 commenced prior to Plaintiff's registration of the copyrights.

7 In addition, Claims 1 through 8 fail as to Mr. Dolak because there is no
8 basis for establishing individual liability against him.

9 This motion is made following the conference of counsel pursuant to
10 L.R. 7-3 which took place by letter on June 9, 2009.

11 This Motion is based upon this Notice of Motion and Motion, the
12 attached Memorandum of Points and Authorities, the [Proposed] Statement of
13 Uncontroverted Facts and Conclusions of Law, the Declarations of Rollin A. Ransom,
14 David Dolak and Dr. Kevin Mattison, filed concurrently, all documents on file in this
15 action, and such further or additional evidence or argument as may be presented
16 before or at the time of the hearing on this Motion.

17 Dated: June 29, 2009                   SIDLEY AUSTIN LLP
18                                         Rollin A. Ransom
                                          Jennifer A. Ratner
19                                        Frank J. Broccolo
                                          Johari N. Townes
20
21                                         By:  Rollin Ranson (JR)
                                                Rollin A. Ransom
22                                              Attorneys for Defendants Malvern
                                                Instruments Incorporated and David
23                                              Dolak
24
25
26
27
28

2

1

# TABLE OF CONTENTS

2

<u>Page</u>

3    MEMORANDUM OF POINTS AND AUTHORITIES................................................. 1

4    I.    FACTUAL BACKGROUND .............................................................................. 1

5    II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF'S CLAIMS 1-3 AS TO SCREEN DISPLAYS, AND
6     CLAIMS 4, 5 AND 7 IN THEIR ENTIRETY, BECAUSE THERE IS
7     NO SUBSTANTIAL SIMILARITY.................................................................... 2

8          A.    Claim 1 fails as to screen displays because Malvern's software is
                 not substantially similar to any protected elements of Plaintiff's
9                work........................................................................................................... 4

10

11               1.    Plaintiff's hydrodynamic radius calculator ..................................... 5

12               2.    Plaintiff's statistics table.................................................................. 8

13         B.    Claim 2 fails as to screen displays because Malvern's software is
                 not substantially similar to any protected elements of Plaintiff's
14               work........................................................................................................... 9

15               1.    Malvern's "SOP" feature.................................................................. 9
16
17               2.    Malvern's "SOP player".................................................................. 10

18         C.    Claim 3 fails as to screen displays because Malvern's software is
                 not substantially similar to any protected elements of Plaintiff's
19               work......................................................................................................... 12

20               1.    Plaintiff's axial ratio calculator ..................................................... 12
21
22               2.    Plaintiff's molecule's weight calculator......................................... 13

23         D.    Claim 4 fails because Malvern's software is not substantially
                 similar to any protected elements of Plaintiff's work.............................. 15
24
25         E.    Claim 5 fails because Malvern's software is not substantially
                 similar to any protected elements of Plaintiff's work.............................. 17
26
27         F.    Claim 7 fails because Malvern's website is not substantially
                 similar to any protected elements of Plaintiff's work.............................. 18
28

III.   THE COPYRIGHTS IN THE WORKS UNDERLYING CLAIMS 6
       AND 8 HAVE BEEN ABANDONED ............................................................... 19

IV.    DEFENDANT DOLAK IS NOT INDIVIDUALLY LIABLE WITH
       RESPECT TO CLAIMS 1 THROUGH 8 ......................................................... 22

V.     PLAINTIFF HAS NO EVIDENCE OF DAMAGES ASSOCIATED
       WITH CLAIM 9 ............................................................................................... 23

VI.    PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES OR
       ATTORNEYS' FEES FOR ITS COPYRIGHT INFRINGEMENT
       CLAIMS ........................................................................................................... 24

VII.   CONCLUSION ................................................................................................. 25

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

CASES

4

*A&M , Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001).............................................................21

5

*Aliotti v. R. Dakin & Co.,*
6
831 F.2d 898 (9th Cir. 1987)..........................................................13, 14

7

*Apple Computer, Inc. v. Microsoft Corp.,*
35 F.3d 1435 (9th Cir. 1994)........................................................passim

8

*Ashton-Tate Corp. v. Ross,*
9
728 F. Supp. 597 (N.D. Cal. 1989)..........................................6, 13, 14

10

*Automotriz Del Golfo de California S.A. de C.V. v. Resnick,*
306 P.2d 1 (1957)...............................................................................22

11

*Bibbero Systems, Inc. v. Colwell Systems, Inc.,*
12
893 F.2d 1104 (9th Cir. 1990)..........................................................7, 8

13

*Brown Bag Software v. Symantec Co.,*
960 F.2d 1465 (9th Cir. 1992)..........................................6, 9, 10, 11

14

15

*Calyx Tech., Inc. v. Ellie Mae, Inc.,*
No. C 04-1640 SI, 2005 WL 2036918 (N.D. Cal. Aug. 22, 2005)............passim

16

*Capcom U.S.A., Inc. v. Data East Corp.,*
No. C 93-3259 WHO, 1994 WL 1751482 (N.D. Cal. Mar. 16, 1994)....5, 13, 14

17

*Cognotec Servs. Ltd. v. Morgan Guaranty Trust Co.,*
18
862 F. Supp. 45 (1994)......................................................................25

19

*Computer Access Tech. Corp. v. Catalyst Enters., Inc.,*
No. C-00-4852-DLJ, 2001 WL 34118030 (N.D. Cal. Jun. 13, 2001).........passim

20

*Data East USA, Inc. v. Epyx, Inc.,*
21
862 F.2d 204 (9th Cir. 1988)..........................................................3, 13

22

*Design Strategy, Inc. v. Davis,*
469 F.3d 284 (2nd Cir. 2006).............................................................24

23

*Evenflow Plumbing Company, Inc. v. Pacific Bell Directory,*
24
No. C-3:04CV00795 EDL, 2005 WL 1353822 (N.D. Cal. June 7, 2005).........23

25

*Frybarger v. Int'l Bus. Machines Corp.,*
812 F.2d 525 (9th Cir. 1987)........................................................3, 5, 13, 14

26

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
27
462 F.3d 1072 (9th Cir. 2006)............................................................3

28

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
  739 F. Supp. 1392 (C.D. Cal. 1990)................................................21

*Hoffman v. Constr. Protective Servs.*,
  541 F.3d 1175 (9th Cir. 2008)................................................24

*Integral Systems, Inc. v. Peoplesoft, Inc.*,
  No. C-90-2598-DLJ, 1991 WL 498874 (N.D. Cal. 1991) ................................4

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2008)................................................2, 3

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998)................................................21

*Sega Enters. Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1993)................................................3, 4, 5, 13

*Sony Computer Entm't, Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000)................................................3, 4, 5

*Telemarketing Resources v. Symantec Corp.*,
  No. C88-20352 RPA, 1989 WL 200350 (N.D. Cal. Sept. 6, 1989).....6, 9, 10, 11

**STATUTES**

17 U.S.C. § 102(b) (2009) ................................................passim

17 U.S.C. § 412................................................24

**OTHER AUTHORITIES**

37 C.F.R. § 202.1(c) ................................................7

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[C][1]
  (Rel. 78 2009)................................................24

Fed. R. Civ. P. 12, 26................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

This litigation is part of a comprehensive strategy by Plaintiff Wyatt Technology Corp. ("Plaintiff") to eliminate competition in the particle characterization industry. In 2005, Plaintiff filed a similar lawsuit (identical in many respects to this lawsuit) against another competitor, Viscotek Corporation. The following year, Judge Tevrizian granted summary judgment to Viscotek on all claims. Unsuccessful against Viscotek, Plaintiff then targeted Malvern Instruments Incorporated ("Malvern") and one of its employees, David Dolak.

As set forth below, Plaintiff's copyright infringement claims fail in whole or in part because: (1) to the extent the screen displays of the software programs at issue include protectable elements (*i.e.*, excluding fundamental scientific principles and calculations that are widely known and used in the industry), there is no substantial similarity between Plaintiff's displays and those generated by Malvern's software; (2) the company from which Wyatt purportedly acquired rights to certain written material had previously abandoned the copyright in such material; (3) there is no basis for imposing individual liability on Mr. Dolak as to eight of Plaintiff's copyright claims, and as to the ninth, no evidence of actual damages or lost profits to support Plaintiff's claim for such relief; (4) as to all of Plaintiff's claims, there is no basis for statutory damages or attorneys' fees, because the alleged infringement occurred prior to Plaintiff's registration of the copyrights and the effective dates of such copyrights is more than three months after the first publication of the work.

## I.    FACTUAL BACKGROUND

Plaintiff and Malvern are competitors in the particle analysis field. Second Amended Complaint ("SAC") ¶ 64. Both companies sell products that measure aspects of proteins and other nanoparticles through a widely-known technology called dynamic light scattering ("DLS"). *See* SAC, ¶ 64. Plaintiff's DLS instrument is called the DynaPro. SAC, ¶ 28. Plaintiff acquired the right to manufacture the DynaPro in 2004, along with software that operates the DynaPro

(called "Dynamics") and selected other materials relating to DLS, when it paid $410,000 for certain assets of a defunct competitor, Protein Solutions, at a judicial auction. SAC, ¶ 28; SAC, Exh. 11. Defendant Malvern sells a competing DLS instrument called the Zetasizer Nano. *See* SAC, ¶ 64.

Nearly three years after it acquired the Protein Solutions assets, Plaintiff registered certain copyrights relating to those assets: (1) Copyright No. TXu 1-569-097, a software program entitled "DYNAMICS v.6.2.05," registered on October 11, 2007; (2) Copyright No. TXu 1-569-098, a software program entitled "DYNAMICS v.6.3.40," registered on October 11, 2007; (3) Copyright No. TXu 1-569-099, a software program entitled "DYNAMICS v.5.26.56," registered on October 11, 2007; (4) Copyright No. TX 6-812-045, an installation CD entitled "DYNAMICS INSTALLATION CD v.6.3.40," registered on October 11, 2007; (5) Copyright No. TX 6-812-047, an installation CD entitled "DYNAMICS INSTALLATION CD v.5.26.56," registered on October 11, 2007; (6) Copyright No. TX 6-812-053, entitled "PSI Books, Dynamic Light Scattering," registered on October 12, 2007; (7) Copyright No. TX 6-813-868, the "Protein Solutions Website," registered on October 12, 2007; (8) Copyright No. TX 6-816-833, entitled "PSI Books," registered on December 17, 2007; and (9) Copyright No. TX 6-816-834, entitled "PSI Frequently Asked Questions," registered on December 17, 2007. Separate Statement of Uncontroverted Facts ("SS") ¶ 1. In this action, Plaintiff asserts these copyrights against Defendants.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS 1-3 AS TO SCREEN DISPLAYS, AND CLAIMS 4, 5 AND 7 IN THEIR ENTIRETY, BECAUSE THERE IS NO SUBSTANTIAL SIMILARITY

To establish copyright infringement, the plaintiff must prove "that the defendant copied protected elements of the work." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008). Absent direct evidence of copying, plaintiff must establish this element by establishing that the defendant "had access to the

2

1    copyrighted work and that the *protected portions* of the works are *substantially*
2    *similar.*" *Id.* at 636-37 (emphasis added). These issues may be decided as a matter of
3    law. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th
4    Cir. 2006) (summary judgment appropriate where no substantial similarity); *accord*
5    *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 528 (9th Cir. 1987).

6         In evaluating substantial similarity on summary judgment, the court
7    employs an "extrinsic test" pursuant to which it "objectively considers whether there
8    are substantial similarities in both ideas and expression." *Jada*, 519 F.3d at 637
9    (emphasis omitted); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th
10    Cir. 1994). However, "the party claiming infringement may place *no* reliance upon
11    any similarity in expression resulting from unprotectable elements." *Apple*, 35 F.3d at
12    1446 (citations omitted). Because some individual elements of a work are not
13    protected by copyright (and therefore cannot be infringed), the court uses "analytic
14    dissection" to determine what portions of the work are subject to copyright protection
15    before evaluating substantial similarity. *Id.* at 1143.

16         A plaintiff bears a particularly heavy burden in proving infringement of
17    software because most elements are not protectable. Unlike traditional subjects of
18    copyright, such as literary works, "[c]opyrighted software ordinarily contains both
19    copyrighted and unprotected or functional elements." *Sony Computer Entm't, Inc. v.*
20    *Connectix Corp.*, 203 F.3d 596, 599 (9th Cir. 2000). Software programs necessarily
21    "contain many logical, structural, and visual display elements that are dictated by the
22    function to be performed, by considerations of efficiency, or by external factors such
23    as compatibility requirements and industry demands." *Sega Enters. Ltd. v. Accolade,*
24    *Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1993). In keeping with the basic principles of
25    copyright law, these ideas and "functional elements" may be freely copied. *Sony*, 203
26    F.3d at 600; *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207-08 (9th Cir. 1988).
27    Indeed, because software contains functional and other unprotected elements, courts
28    afford it a *lower* degree of protection than traditional subjects of copyright. *Sony*, 203

1  F.3d at 603; *Apple*, 35 F.3d at 1439, 1446; *Sega*, 977 F.2d at 1526.

2     What remains after removing the functional elements of a software-

3  generated display is the "unique selection and arrangement" of its features. *Apple*, 35

4  F.3d at 1446. Such displays, however, receive only "thin" protection. *Apple*, 35 F.3d

5  at 1442; *accord Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, No. C-00-

6  4852-DLJ, 2001 WL 34118030, *15-16 (N.D. Cal. Jun. 13, 2001) (common methods

7  for depicting data, such as in horizontal bars displayed on the screen, are not

8  protected); *Integral Systems, Inc. v. Peoplesoft, Inc.*, No. C-90-2598-DLJ, 1991 WL

9  498874, *10 (N.D. Cal. 1991) (noting that "[i]t is plainly impossible for viable

10 commercial systems to be completely dissimilar"). A software program's screen

11 displays and organization are protected only against "virtually identical copying."

12 *Apple*, 35 F.3d at 1442, 1448. Thus a defendant cannot be liable for creating software

13 that performs similar functions to the plaintiff's software, so long as the defendant's

14 user interface is not virtually identical.[1]

15    As set forth below, Plaintiff claims that Malvern has infringed its

16 copyrights in certain screen displays, calculators and user-facing functionality of its

17 Dynamics software and the Protein Solutions website, but its claims fail to meet this

18 threshold respecting substantial similarity.

19   **A.**  **Claim 1 fails as to screen displays because Malvern's software is not**
     **substantially similar to any protected elements of Plaintiff's work.**

20

21    In Claim 1, Plaintiff alleges that Malvern's Zetasizer Nano software

22 infringes U.S. Copyright No. TXu 1-569-097, a software program entitled

23 ────────────────
[1] The valid registration of source code provides copyright protection for two

24 components: the underlying source code and the user-facing interface or "screen
display." *Sony*, 203 F.3d at 600. Although the registrations underlying Claims 1-3

25 purport to cover source code, this motion addresses only the lack of substantial
similarity of the resulting screen displays. The parties have stipulated to a procedure

26 regarding the analysis and potential production of the source code, but the process is
not yet complete. Defendants reserve their right to move for summary judgment as to

27 the source code, if needed, following the completion of the stipulated procedure. With
respect to Claims 4-5 and 7, however, the registration does not extend to the source

28 code, such that only the screen displays are at issue in those claims.

1  "DYNAMICS v.6.2.05." SAC, ¶¶ 75-82. Specifically, Plaintiff claims that Malvern

2  has infringed the following features of Plaintiff's software: (1) a hydrodynamic radius

3  calculator; and (2) a "statistics table" that allows the user to compare data across

4  experiments. SAC, ¶¶ 78, 79; SAC, Exh. 18 at 106-113.

5          *1.    Plaintiff's hydrodynamic radius calculator*

6          Plaintiff's hydrodynamic radius calculator estimates the hydrodynamic

7  radius of a molecule based on the molecule's weight and molecular family. SS ¶ 2.

8  The calculator contains a blank form that allows the user to enter the required

9  information. *Id.* The calculator then returns a hydrodynamic radius estimate based

10  upon mathematical relationships between the data values that are derived from

11  empirical data. SS ¶¶ 2, 4. An analytic dissection analysis reveals that most elements

12  of Plaintiff's calculator are not protected by copyright.

13          The idea is not protectable. As an initial matter, Plaintiff cannot protect

14  its idea for a hydrodynamic radius calculator. *Sony*, 203 F.3d at 600; *Apple*, 35 F.3d

15  at 1443-44. Thus, while Malvern's Zetasizer Nano does permit calculation of a

16  molecule's estimated hydrodynamic diameter based on its molecular weight, that

17  alone does not constitute infringement because ideas and functions can be freely

18  copied. SS ¶ 5. *Frybarger*, 812 F.2d at 529-530 (upholding summary judgment

19  because "each of the similar features [including color and appearance of many aspects

20  of the screen display] constitutes a basic idea of the videogames and, to the extent

21  each feature is expressive, … [it] is 'as a practical matter indispensable, or at least

22  standard, in the treatment of a given [idea].'"); 17 U.S.C. § 102(b) (2009) (copyright

23  protection does not extend to ideas).

24          The necessary functionality is not protectable. Plaintiff also cannot

25  protect functions or elements that are indispensable to the idea of a hydrodynamic

26  radius calculator. Rather, all expressive elements of a copyrighted work "that 'must

27  necessarily be used as incident to' expression of the underlying ideas, functional

28  concepts, or facts" may also be copied. *Sega*, 977 F.2d at 1524; *accord Capcom*

1  *U.S.A., Inc. v. Data East Corp.*, No. C 93-3259 WHO, 1994 WL 1751482, *6, 12

2  (N.D. Cal. Mar. 16, 1994) (copyright protection does not extend to expressions that

3  "necessarily follow from an idea" or are "indispensable" or "standard" in the

4  treatment of the idea); *Apple*, 35 F.3d at 1443-44 (features that are "as a practical

5  matter indispensable, or at least standard, in the treatment of a given idea, … are

6  treated like ideas and are therefore not protected by copyright."); *Ashton-Tate Corp. v.*

7  *Ross*, 728 F. Supp. 597, 602 (N.D. Cal. 1989) (rejecting copyright protection for user

8  commands and list of software features).

9        To implement the idea of a calculator that estimates hydrodynamic radius

10  based on molecular weight, molecular weight is an indispensable input value and

11  estimated hydrodynamic radius is an indispensable output value. SS ¶ 3. In

12  *Telemarketing Resources v. Symantec Corp.*, a computer programmer created and sold

13  to the plaintiff a computer outlining program. No. C88-20352 RPA, 1989 WL

14  200350, *1 (N.D. Cal. Sept. 6, 1989) (affirmed in relevant part by *Brown Bag*

15  *Software v. Symantec Co.*, 960 F.2d 1465 (9th Cir. 1992)). The programmer was later

16  hired by one of the defendant's competitors, who already had a competing product on

17  the market. *Id.* at *1. During the course of his employment, the programmer helped

18  create additional outlining programs for the defendant that contained features in

19  common with the plaintiff's program. *Id.* at *1. The plaintiff alleged that both the

20  functionality and appearance of the defendant's software infringed its copyright. *Id.* at

21  *1-2. The court agreed that the ideas behind the two programs were "undisputedly

22  identical," and that "virtually every function performed by [the plaintiff's program] is

23  also performed by [the defendant's program]," including: (1) identical keyboard

24  shortcuts; (2) the use of pull-down menus, keyboard shortcuts, and other methods of

25  navigation; (3) identical options on the opening menus; (4) identical or similar names

26  of menus. *Id.* at *3-4. However, the Court held that the similar features were not

27  protected by copyright because the functionality was necessary to the idea and,

28  accordingly, the court granted summary judgment for the defendant. *Id.* at *6.

6

1          As in *Telemarketing*, although Malvern's calculator allows the user to

2    input molecular weight and returns a hydrodynamic diameter estimate, these

3    indispensable components of such a calculator are not protected by copyright and do

4    not constitute infringement.  Here, Plaintiff infers infringement because the calculators

5    produce "substantially similar numerical answers."  SAC, ¶ 79; SAC, Exh. 18 at 108-

6    09.  However, a molecule's hydrodynamic size can be estimated from its molecular

7    weight using well-established mathematical relationships based on empirical data.  SS

8    ¶ 4.  Plaintiff has no proprietary interest in this mathematical aspect of its software, as

9    copyright protection does not extend to "any procedure, process, . . . [or] method of

10   operation."  17 U.S.C. § 102(b); *see also Calyx Tech., Inc. v. Ellie Mae, Inc.*, No. C

11   04-1640 SI, 2005 WL 2036918, *3 (N.D. Cal. Aug. 22, 2005) (rejecting copyright

12   protection for calculators in software under 17 U.S.C. § 102(b)).

13         <u>The selection/arrangement of the screen is not virtually identical</u>.  In light

14   of the foregoing analytical dissection, in order to establish infringement, Plaintiff must

15   show that Malvern has copied the "unique selection and arrangement" of Plaintiff's

16   screen display.  *Apple*, 35 F.3d at 1446.

17         Here, Plaintiff's screen display is a form containing a blank space that

18   allows a user to input information that is in turn used by the software to produce a

19   result.  SS ¶ 2.  However, under the "blank forms rule," that form cannot be protected

20   by copyright.  37 C.F.R. § 202.1(c); *Bibbero Systems, Inc. v. Colwell Systems, Inc.*,

21   893 F.2d 1104, 1107-08 (9th Cir. 1990); *Calyx*, 2005 WL 2036918, *4.  That is,

22   copyright protection does not extend to "forms consisting entirely of spaces for the

23   recording of information, whether labeled or unlabeled, that are not accompanied by

24   text conveying information, such as instructions regarding the use of forms."  *Calyx*,

25   2005 WL 2036918 at *4 (loan origination software screen display consisting of series

26   of blank forms to capture and calculate information not protectable); *accord* 37 C.F.R.

27   § 202.1(c); *Bibbero*, 893 F.2d at 1107-08 (no copyright protection for medical

28   insurance claim form that consisted of blank spaces used to record information about

1 | medical patients despite instructions and labels on form).

2 |       Further, the arrangement of features in the two calculators is entirely
3 | different.  Plaintiff's calculator provides two different results:  (1) estimated
4 | hydrodynamic radius; and (2) data about the requirements to run an experiment on
5 | that particular particle.  SS ¶ 5.  Before reaching these results, Plaintiff's calculator
6 | requires the user to enter four values:  (1) DynaPro model; (2) Molecular Family; (3)
7 | Molecular Weight; and (4) Minimize.  *Id.*  In contrast, Malvern's software includes
8 | only a single input (molecular weight), and returns four hydrodynamic diameter
9 | estimates as a result—one for each of the four "molecular families" to which the
10 | molecule might belong.  *Id.*  Thus the two screen displays simply are not "virtually
11 | identical." *Apple*, 35 F.3d at 1442, 1449.

12 |       *2.    Plaintiff's statistics table*

13 |       Plaintiff also alleges infringement of its "statistics table."  SAC, Exh. 18
14 | at 110.  This table allows the user to compare data across experiments; after running
15 | two or more experiments, the user can compare the results of each.  SS ¶¶ 6-7.  For
16 | example, a user could view a list of molecular weights as measured in a series of
17 | experiments, as well as the average (or mean) molecular weight among the
18 | experiments.  *Id.*  The interface allows the user to modify which data is visible and
19 | what units of measure are displayed.  SS ¶ 6.

20 |       However, Plaintiff cannot protect the idea for a table that allows the user
21 | to compare values generated by experiments.  *See* Section IIA1, *supra.*  Further, the
22 | types of calculations reflected in Plaintiff's table – such as means, standard deviations,
23 | and percentages – are derived from common mathematical formulas that are not
24 | protected by copyright.  *Id.*; *see* Section IIA1, *supra.*

25 |       Plaintiff also cannot protect common methods for organizing and
26 | depicting data, such as a "table view" and an option to hide columns.  *See, e.g., Calyx*,
27 | 2005 WL 2036918 at *1, 2, 3; *Computer Access*, 2001 WL 34118030 at *15-16;
28 | *Telemarketing*, 1989 WL 200350 at *1, 3-4, 6.  These are common ways to display

1  information and are used in many software programs and, in any event, are "methods

2  of operation" that are not protected by copyright.  17 U.S.C. § 102(b); *see also Apple*,

3  35 F.3d at 1444; *Brown Bag*, 960 F.2d at 1475-76; *Computer Access*, 2001 WL

4  34118030 at *15-16; *Telemarketing Resources*, 1989 WL 200350 at *1, 3-4, 6.

5  Further, there is no similarity in appearance between the two works other than their

6  use of these common display conventions.

7          Accordingly, the undisputed evidence demonstrates that there is no

8  substantial similarity between Malvern's screen displays and protected elements of the

9  Dynamics screen displays.  As a result, Claim 1 fails as a matter of law as to the

10  screen displays at issue.

11      **B.    Claim 2 fails as to screen displays because Malvern's software is not
            substantially similar to any protected elements of Plaintiff's work.**

12          In Claim 2, Plaintiff alleges that Malvern's Zetasizer Nano software

13  infringes U.S. Copyright No. TXu 1-569-098, a software program entitled

14  "DYNAMICS v.6.3.40."  SAC, ¶¶ 83-90.  Specifically, Plaintiff claims that the

15  "standard operating procedure" or "SOP" feature in Malvern's software infringes

16  Plaintiff's copyright.  SAC, ¶¶ 86-87; SAC, Exh. 19 at 114-15.  Plaintiff points to two

17  features of Malvern's SOP:  (1) its use of a "tree design" structure to display

18  information; and (2) its use of an interface that allows the user to add and remove

19  features from a list that determines which commands will be displayed on the screen.

20  SAC, Exh. 19 at 114-15.  Plaintiff's claim fails as to the screen displays, however,

21  because these alleged "design elements" are merely common ways of organizing

22  information in a screen display and are not protected by copyright.

23          *1.    Malvern's "SOP" feature*

24          Dynamics v.6.3.40 allows a user to specify the parameters for a given

25  experiment.  SS ¶ 8.  For example, a user could direct the DynaPro to take 15

26  measurements, ten seconds apart, at 25 °C.  *Id.*  The screen display is organized using

27  a "tree design" structure, which consists of a column on the left hand side of the

1  screen listing categories of information the user may want to view. *Id.* Next to each

2  category is a "+/-" button that allows the user to expand portions of the menu to view

3  additional layers of detail. *Id.* Once a user selects the information he or she wishes to

4  view, that information appears on the right side of the screen. *Id.*

5         Malvern's software also uses a "tree design" interface but its

6  functionality is different. SS ¶ 9. Unlike Plaintiff's software, which requires a user to

7  specify parameters for each experiment, Malvern's "SOP" feature (the allegedly

8  infringing portion of Malvern's software) allows a user to create and save preferences.

9  SS ¶ 10. After the user specifies a set of parameters, that experiment configuration is

10  saved and can be used later in subsequent experiments. *Id.* For example, the user

11  could select a particular SOP every time it wants to take 15 measurements, ten

12  seconds apart, at 25 °C. *Id.*

13         Plaintiff alleges that Malvern's display infringes Plaintiff's copyright

14  because it organizes information using a "tree design" interface. SAC, ¶¶ 85-87;

15  SAC, Exh. 19 at 114. However, copyright does not protect the "tree design" display,

16  which is a "method of operation," is common to many software programs, and flows

17  naturally from the limitations of a computer screen display. 17 U.S.C. § 102(b); *see*

18  *also Apple*, 35 F.3d at 1444; *Brown Bag*, 960 F.2d at 1475-76; *Computer Access*, 2001

19  WL 34118030 at *15-16; *Telemarketing Resources*, 1989 WL 200350 at *1, 3-4, 6.

20         Beyond this convention of organization, the two displays are not similar.

21  The functionality behind the two programs is different, as is the content displayed on

22  the screen. SS ¶¶ 9-10. Although both programs contain a list of actions to be

23  included in an experiment and a tree design display of experiment data (SS ¶¶ 8-9),

24  the similarity stops there and, accordingly, they are not "virtually identical." *E.g.*

25  *Apple*, 35 F.3d at 1442, 1449.

26         2.    *Malvern's "SOP player"*

27         Dynamics also includes a feature that allows a user to repeat the same

28  action multiple times within an experiment. SS ¶ 11. For example, a user could direct

10

1   the DynaPro to take a measurement at 25 °C, wait one minute, and then take another.

2   *Id.* The user can customize which actions will be performed during the experiment by

3   selecting options from a list and clicking an "Add" or "Delete" button. *Id.*

4        Malvern's "SOP player" also allows a user to repeat an action multiple

5   times within an experiment. SS ¶ 12. Like Dynamics, it allows a user to customize

6   the experiment by selecting options from a list, although its menu also contains

7   buttons and functions that Dynamics does not. SS ¶¶ 12-13.

8        There is no copyright protection for the idea of a menu that allows a user

9   to control the actions performed in an experiment. *See* Section IIA1, *supra*. Plaintiff

10  also cannot protect common methods for organizing information and commands, such

11  as "Add" and "Delete" buttons, that are "methods of operation" and are, in any event,

12  commonly used to display information in many software programs. 17 U.S.C. 102(b);

13  *see also Apple*, 35 F.3d at 1444; *Brown Bag*, 960 F.2d at 1475-76; *Calyx*, 2005 WL

14  2036918 at *1-3; *Computer Access*, 2001 WL 34118030 at *15-16; *Telemarketing*

15  *Resources*, 1989 WL 200350 at *1, 3-4, 6; *see also* Section IIA1, *supra*.

16       Further, Plaintiff cannot show that Malvern has copied the allegedly

17  "unique selection and arrangement" of its screen display. *Apple*, 35 F.3d at 1446.

18  Malvern's selection menu includes icons, while Plaintiff's is text-only. SS ¶ 13.

19  While many options are available in both programs, they are labeled differently in

20  each program. *Id.* Plaintiff's menu includes options that Malvern's does not, and vice

21  versa. *Id.* Plaintiff's menu includes just two buttons ("add and delete"), while

22  Malvern's includes six ("add," "remove," "load," "save," "start," and "cancel"). *Id.*

23  Although Plaintiff alleges that its software also has "load" and "save" buttons, it

24  acknowledges that they are "in different menu locations." *Id.* A side-by-side

25  comparison of the differences reflects that the two menus are not "virtually identical."

26  As a result, Claim 2 fails as a matter of law as to the screen displays at issue.

27

28

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.    Claim 3 fails as to screen displays because Malvern's software is not substantially similar to any protected elements of Plaintiff's work.**

In Claim 3, Plaintiff alleges that Malvern's Zetasizer Nano software infringes U.S. Copyright No. TXu 1-569-099, a software program entitled "DYNAMICS v.5.26.56." SAC, ¶¶ 91-98. Specifically, Plaintiff claims that Malvern has infringed the following features of Plaintiff's software: (1) an axial ratio calculator that estimates the shape of a molecule based on its molecular weight, specific volume, and hydrodynamic radius; and (2) a calculator that estimates a molecule's weight based on its hydrodynamic radius. SAC, ¶¶ 94-95; SAC, Exh. 20 at 116-18.

*1.    Plaintiff's axial ratio calculator*

Plaintiff's "axial ratio (elliptical shape) calculator" allows the user to estimate the shape of a protein. SS ¶ 14. Plaintiff's calculator contains a blank form that allows the user to enter various data about a molecule. *Id.* Using a series of mathematical equations referred to in the scientific community as the "Perrin shape factor," the calculator estimates the shape of a protein based on three values for the protein: (1) molecular weight; (2) radius; and (3) volume. SS ¶ 15. Using the Perrin shape factor and these three values (which are input by the user), the calculator determines the molecule's shape (referred to in the software as its "axial ratio"). *Id.* Analytic dissection reveals that most elements of Plaintiff's calculator are not protected by copyright.

The idea of an axial ratio calculator is not protectable. *See* Section IIA1, *supra*. Plaintiff also cannot protect elements that are indispensable to the idea of an axial ratio calculator. *Id.* As Plaintiff has acknowledged, to determine a molecule's axial ratio one must use the Perrin shape factor and the three input factors of weight, radius, and volume. SS ¶ 15. The Perrin shape factor is a series of equations developed by scientist F. Perrin, and Plaintiff claims no proprietary interest in the equations themselves. SS ¶ 15. Plaintiff also admitted that "if one is to have an … axial ratio calculator, you will need inputs for …the three [input] factors." *Id.*

12

1   Plaintiff cannot copyright these indispensable elements of an axial ratio calculator.[2]

2   *See* Section IIA1, *supra*. Thus, while Malvern's software includes a calculator that

3   estimates a protein's shape using the Perrin factor shape (SS ¶ 15), that does not

4   constitute infringement.

5              Thus, the only protectable component of Plaintiff's calculator (if any) is

6   the "unique selection and arrangement" of Plaintiff's screen display. Plaintiff's screen

7   display contains a blank space that allows a user to input information that is in turn

8   used by the software to produce a result. SS ¶ 14. However, blank forms are not

9   protectable and Malvern does not infringe Plaintiff's copyright merely by creating a

10  similar blank form. Further, the screen displays of both calculators are driven by

11  utility: they each contain blanks spaces where the user can input molecular weight,

12  volume, and radius or diameter. SS ¶ 17. Each calculator returns three values related

13  to the axial ratio, and each display lists these three values in a column. *Id*. The labels

14  for the input values and results differ across the two programs; the only label that is

15  the same is "molecular weight." *Id*.

16             Where, as here, the layout of a screen display is driven by functionality

17  and contains no artistic elements, it cannot receive copyright protection. *See, e.g.*,

18  *Apple*, 35 F.3d at 1444; *Sega Enters.*, 977 F.2d at 1524; *Data East USA*, 862 F.2d at

19  208; *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987). As a result, Claim

20  3 fails as a matter of law as to the screen displays at issue.

21             *2.    Plaintiff's molecule's weight calculator*

22             Plaintiff's "molecular weight calculator" estimates a molecule's

23

_____

24  [2] Proven mathematical relationships underlie the Perrin shape factor and the
    relationships between axial ratio, molecular weight, volume, and radius or diameter.
25  SS ¶ 21. Plaintiff has no proprietary interest in those relationships. *See* 17 U.S.C. §
    102(b); *Apple*, 35 F.3d at 1443-44; *Frybarger*, 812 F.2d at 529; *Capcom*, 1994 WL
26  1751482, *6; *Ashton-Tate Corp.*, 728 F. Supp. at 602. Further, Plaintiff has no
    proprietary interest in this mathematical aspect of its software, as copyright protection
27  does not extend to "any procedure, process, . . . [or] method of operation." 17 U.S.C.
    § 102(b); *see also Calyx*, 2005 WL 2036918, *3.

28

13

1  molecular weight based on its hydrodynamic radius. SS ¶ 18. The calculator contains
2  a blank form that allows the user to enter the required information. *Id.* Analytic
3  dissection reveals that most elements of Plaintiff's calculator are not protected by
4  copyright.

5          The idea for a molecular weight calculator is not protectable. *See* Section
6  IIA1, *supra.* Thus, while Malvern's software contains a molecular weight calculator
7  (SS ¶ 19), that alone does not constitute infringement. Similarly, Plaintiff cannot
8  protect functions or elements that are indispensable to the idea of a molecular weight
9  calculator. *See* Section IIA1, *supra.* To implement the idea of a calculator that
10 estimates molecular weight based on hydrodynamic radius, hydrodynamic radius is an
11 indispensable input value and estimated molecular weight is an indispensable output
12 value. SS ¶ 19. These elements of Plaintiff's calculator are not protected.

13         Plaintiff infers infringement because the calculators "produce[] the same
14 results." SAC, Exh. 20 at 118. Dynamics returns two estimates: one derived from a
15 "standard curve" and one based on a volume model. SS ¶¶ 18, 20. In contrast,
16 Malvern's calculator returns only a "standard curve" estimate. SS ¶ 19. Plaintiff has
17 no proprietary interest in this mathematical aspect of its software, as copyright
18 protection does not extend to "any procedure, process, . . . [or] method of operation."
19 17 U.S.C. § 102(b); *see also Calyx Tech., Inc. v. Ellie Mae, Inc.*, No. C 04-1640 SI,
20 2005 WL 2036918, *3 (N.D. Cal. Aug. 22, 2005). Further, "standard curve" estimates
21 are based on equations derived from empirical data that relate a molecule's weight,
22 hydrodynamic diameter, and molecular family. SS ¶ 19. Plaintiff has no proprietary
23 interest in the underlying equations or relationships. *See* 17 U.S.C. § 102(b); *Apple*,
24 35 F.3d at 1443-44; *Frybarger*, 812 F.2d at 529; *Capcom*, 1994 WL 1751482, *6;
25 *Ashton-Tate Corp.*, 728 F. Supp. at 602.

26         Thus, the only protectable component of Plaintiff's calculator (if any) is
27 the "unique selection and arrangement" of its screen display. Plaintiff's screen
28 display contains a blank space that allows a user to input information that is in turn

14

1   used by the software to produce a result. SS ¶ 18. Blank forms are not protectable

2   and Malvern does not infringe Plaintiff's copyright merely by creating a similar blank

3   form. Further, the screen displays of both calculators differ. Dynamics returns two

4   estimated molecular weight values (derived from "standard curve" and molecular

5   volume models). SS ¶¶ 18, 20. Malvern's calculator returns four "standard curve"

6   estimates, one for each molecular family. SS ¶¶ 19-20. None of the labels on the

7   calculators is the same. SS ¶ 20. Thus the two screen displays are not "virtually

8   identical." *Apple*, 35 F.3d at 1442, 1449. As a result, Claim 3 fails as a matter of law

9   as to the screen displays at issue.

10   **D.   Claim 4 fails because Malvern's software is not substantially similar to any protected elements of Plaintiff's work.**

11

12       In Claim 4, Plaintiff alleges that Malvern's Zetasizer Nano software

13   infringes U.S. Copyright No. TX 6-812-045, a software installation CD entitled

14   "DYNAMICS INSTALLATION CD v.6.3.40." SAC, ¶¶ 99-106. Plaintiff's software

15   includes a tool called a "Zimm Plot," a graph depicting scattered light intensity at

16   different concentrations. SS ¶ 21. The data represented in the graph, including

17   relationships between scattered light intensity, molecular weight, and other particle

18   characteristics, are based on proven mathematical relationships. *Id.* Plaintiff alleges

19   that Malvern's "Debye Plot" utility, which permits input of scattered light intensity at

20   different concentrations, infringes a feature in Plaintiff's software. SAC, ¶¶ 102-03;

21   SAC, Exh. 21 at 120-23. Plaintiff's claim fails as a matter of law.

22       First, copyright does not protect the idea of a graph depicting scattered

23   light intensity. *See* Section IIA1, *supra*.

24       Second, the fact that Malvern's software permits the user to generate a

25   Debye Plot – a graph representing similar scattered light intensity data as the Zimm

26   Plot – does not establish infringement. SS ¶ 22. Plaintiff alleges that Malvern's

27   Debye Plot is infringing because it allows the user to input many of the same

28   parameters, and offers users the same choice of units of measure. SAC, ¶¶ 102-03;

15

1    SAC, Exh. 21 at 121, 123.  However, Plaintiff admits that most of the parameters in

2    its Zimm Plot tool are also necessary for the measurements depicted in the Debye

3    Plot.  SS ¶ 22.  Plaintiff also admits that, while it is not strictly necessary to allow the

4    user to modify all of these parameters, this flexibility provides "greater functionality"

5    to the user.  *Id.*  Because these parameters are necessary to (or at least desirable for) a

6    Debye Plot, they are not protected by Plaintiff's copyright.  *See* Section IIA1, *supra*.[3]

7           Thus, to establish infringement Plaintiff must show that Malvern has

8    infringed the allegedly "unique selection and arrangement" of its screen display.

9    *Apple*, 35 F.3d at 1446.  Plaintiff's software includes a blank form in which the user

10   can input 13 different parameters, each of which affects the resulting Zimm graph.  SS

11   ¶ 21.  It also allows the user to choose from two possible units of measure.  *Id.*

12   However, the parts of Plaintiff's screen display that allow the user to enter parameter

13   values are not protectable under the blank form doctrine.  *See* Section IIA1, *supra*.

14          Further, the screen displays are not substantially similar.  As Plaintiff

15   itself explains, "[t]he layout is different.  The 'calculated parameters' are presented on

16   the left hand side in the Protein Solutions calculator vs. the right hand side in the

17   Malvern calculator.  The Malvern [calculator] presents the 'User Defined Parameters'

18   across the top in a horizontal fashion rather than a vertical fashion ... [and] the

19   Proteins Solutions calculator presents both the data table and the graph on the same

20   page whereas Malvern has separated these into two different 'tabs.'"  SS ¶ 23.

21   Although both programs contain blank spaces where the user can enter equivalent

22   information, the labels for many of these are different.  *Id.*  In addition, Malvern's tool

23   allows the user to input nine types of information; only four of these have parallels in

24   Plaintiff's software.  *Id.*  Finally, while Plaintiff alleges that Malvern's "table" view

25   ─────────────────────────

26   [3] Plaintiff also infers infringement because Malvern's tool "produces substantially
     similar numerical answers" as Dynamics.  SAC, ¶ 103.  However, the relationships
     depicted in the Debye Plot and Zimm Plot are based on proven mathematical

27   relationships.  SS ¶ 21.  Plaintiff has no proprietary interest in those relationships.  *See*
     Section IIA1, *supra*.

28

1 (which allows the user to see the results in table form, rather than a graph) is "virtually

2 identical" to Plaintiff's, Plaintiff's table view appears adjacent to the graphical view,

3 while a Malvern user must select either the table or graphical view. *Id.* Because the

4 two displays are not "virtually identical," Claim 4 fails as a matter of law.

  E.    **Claim 5 fails because Malvern's software is not substantially similar to any protected elements of Plaintiff's work.**

6    In Claim 5, Plaintiff alleges that Malvern's Zetasizer Nano software

7 infringes U.S. Copyright No. TX 6-812-047, a software installation CD entitled

8 "DYNAMICS INSTALLATION CD v.5.26.56." SAC, ¶¶ 107-114. Specifically,

9 Plaintiff alleges that a feature in Malvern's software entitled "Trend – Temperature

10 Ranges" infringes Plaintiff's "Write DSS File" feature. SAC, Exh. 22 at 124.

11    Plaintiff's "Write DSS File" screen allows a user to specify the initial and

12 final temperatures for an experiment and direct the DynaPro to take measurements at

13 user-specified intervals. SS ¶ 24. For example, the user could indicate that the

14 experiment should begin at 20 °C and end at 30 °C, and that the DynaPro should take

15 measurements each time the temperature rises by one degree. *Id.* Plaintiff's screen

16 display includes seven blank spaces in which the user can input information,

17 including: (1) "Temperature Settings – Initial"; (2) "Temperature Settings – Final";

18 (3) "Increment"; (4) "Wait Time (min)"; and (5) "# Measurements." *Id.*

19    Malvern's software also allows the user to specify the starting and ending

20 temperatures for an experiment, as well as the temperature increment at which

21 measurements should be taken. SS ¶ 25. Malvern's screen display includes four

22 spaces where a user can input information, each of which can also be modified using

23 the mouse. *Id.* These inputs are: (1) "Start Temperature"; (2) "End Temperature";

24 (3) "Temperature Interval"; and (4) "Number of Steps." *Id.*

25    Plaintiff cannot protect the idea of a feature that allows a user to specify

26 temperature values and increments for an experiment. *See* Section IIA1, *supra.*

27 Plaintiff also cannot protect elements that are indispensable to this idea—such as the

28

17

start temperature, end temperature, and increment value. SS ¶¶ 25-26; *see* Section IIA1, *supra*.

As with Plaintiff's other claims, Plaintiff also cannot prevail on a claim that Defendants copied the allegedly "unique selection and arrangement" of Plaintiff's screen display. Rather, Plaintiff's screen display is a blank form, which cannot be protected by copyright. *See* Section IIA1, *supra*.

Further, the Dynamics and Zetasizer Nano screen displays are different. None of the input values that is common to the two programs has the same label. SS ¶ 26. The inputs are arranged in different orders and can be modified in different ways. *Id.* Each program has input values that the other program does not. *Id.* In fact, only three input values—initial temperature, final temperature, and increment—are in both programs. *Id.* Given these differences, the displays plainly are not "virtually identical" and Claim 5 fails as a matter of law.

**F.    Claim 7 fails because Malvern's website is not substantially similar to any protected elements of Plaintiff's work.**

In Claim 7, Plaintiff alleges that Malvern's website infringes U.S. Copyright No. TX 6-813-868, the "Protein Solutions Website." SAC, ¶¶ 124-131. Specifically, Plaintiff claims that Malvern's "Zetasizer Nano Minimum Concentration Calculator" infringes Plaintiff's "DynaPro Minimum Concentration Calculator." SAC, ¶¶ 127-28; SAC, Ex. 24 at 130-32.

Given the limitations in sensitivity of DLS instruments, there is a minimum concentration of a particle that is necessary to perform measurements of the particle. SS ¶ 27. For any given DLS instrument, the minimum concentration may be determined using well-known empirical relationships if the protein's molecular weight and molecular family are known. *Id.* The particular relationships depend on the sensitivity of the instrument being used. *Id.* Plaintiff's website includes a calculator that allows a user to calculate the minimum concentration needed to measure a particular protein. *Id.*

1   Plaintiff cannot protect the idea of a minimum concentration calculator
2   by copyright. *See* Section IIA1, *supra*. It also cannot protect elements that are
3   indispensable to, or flow naturally from, such a calculator. *Apple*, 35 F.3d at 1439.
4   Rather, to establish infringement Plaintiff must point to specific elements of its
5   calculator that are protected and demonstrate that Malvern copied those elements.
6   *Apple*, 35 F.3d at 1443, 1446. While Malvern does produce a calculator that
7   calculates minimum concentration, that alone does not constitute an infringement of
8   Plaintiff's copyright. *See* Section IIA1, *supra*.

9   In Plaintiff's calculator, the only input that the user must enter is the
10  protein's molecular weight. SS ¶ 28. The calculator returns three numbers, each
11  representing the minimum concentration required for a different product model. *Id.*
12  The calculator includes buttons labeled "Calculate" and "Clear." *Id.* Malvern's
13  calculator also includes molecular weight as the sole input, a results screen that gives
14  the minimum concentration by product model, and "Calculate" and "Clear" buttons.
15  *Id.* However, each of these features is indispensable to, or flows naturally from, a
16  minimum concentration calculator, and is therefore not protectable.

17  All that remains of Plaintiff's calculator that could be infringed is the
18  "unique selection and arrangement" of its screen display. However, Plaintiff's screen
19  display is a blank form, which cannot be protected by copyright. *See* Section IIA1,
20  *supra*. Further, Malvern's calculator cannot be "virtually identical" to Plaintiff's, as it
21  includes several features that Plaintiff's does not—such as a display of the estimated
22  radius and diameter of the protein and data regarding requirements to measure zeta
23  potential (another particle measurement). SS ¶ 28. Where, as here, there is no
24  substantial similarity between protected elements of Plaintiff's work, there is no
25  infringement as a matter of law.

26  **III.    THE COPYRIGHTS IN THE WORKS UNDERLYING CLAIMS 6 AND 8 HAVE BEEN ABANDONED**
27  In Claims 6 and 8, Plaintiff alleges that it owns the copyright in written
28

19

1  works entitled "PSI Books: Dynamic Light Scattering" and "PSI Books," respectively.

2  Plaintiff describes the subject of Claim 6, "PSI Books: Dynamic Light Scattering," as

3  follows:

4         PSI Books, Dynamic Light Scattering is [an] enduser
       learning tool[] for a dynamic light scattering measurement
5       system used for characterization of protein's [sic] and
       related biomolecules. This material includes a library,
6       known as "PSI Books", which was published both on the
       Protein Solutions website and as a help file incorporated
7       within the Dynamics software installation CD.

8  SAC, ¶¶ 118. All of the written work reflected in "PSI Books: Dynamic Light

9  Scattering" is also included in the larger volume that is the subject of Claim 8, "PSI

10  Books." SS ¶ 29.

11         The front page of PSI Books – both as distributed by Protein Solutions

12  and in the deposit materials that Wyatt provided to the Copyright Office – includes the

13  following statement:

14         Currently, there are no restrictions on this material. You
       may install it on as many PC systems as you like, and you
15       may distribute it freely to your colleagues.

16  SS ¶ 30. Indeed, Wyatt's 30(b)(6) witness regarding Wyatt's copyright claims, Robert

17  Collins, who had also been an executive at Protein Solutions, affirmed that Protein

18  Solutions made these materials freely available to the public, and _wanted_ people to

19  copy and disseminate them. SS ¶ 31


**REDACTED** ————————————
   — — —— — — ——

**FILED UNDER SEAL**
   ——— ——— ——— ———                    ————————
                                              ————— ———

27         In light of these facts, any copyright interest in the "PSI Books" and "PSI

28  Books: Dynamic Light Scattering" materials has been waived or abandoned. _See_

1    *A&M , Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (recognizing

2    defense of "waiver or abandonment of copyright").  Under well-established Ninth

3    Circuit law, such waiver or abandonment is established where "there is an intent by

4    the copyright proprietor to surrender rights in his work," *id.* (internal quotations

5    omitted), and where such intent is "manifested by some overt act indicating an

6    intention to abandon that right," *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114

7    (9th Cir. 1998); *see also Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp.

8    1392, 1398 (C.D. Cal. 1990) (same).

9             For example, in *Hadady*, the plaintiff distributed a weekly newsletter to

10   subscribers; the newsletter stated on its face that it was protected by copyright for only

11   two days after publication.  *Hadady*, 739 F. Supp. at 1395, 1401.  The plaintiff's

12   principal asserted that plaintiff did not subjectively intend to abandon its copyright

13   interest.  *Id.*  Notwithstanding this assertion, the court held that the plaintiff's claim

14   "[flew] in the face of the only possible meaning the two-day copyright notice

15   conveyed, and [did] not raise a triable issue of material fact."  *Id.* at 1399.

16   Accordingly, the court concluded that the plaintiff had abandoned its copyright "with

17   respect to the whole world" in the newsletters that were distributed with the notice,

18   and granted summary judgment to the defendant.  *Id.*[4]

19             Summary judgment is likewise appropriate here.  The undisputed

20   evidence establishes that Protein Solutions told "the whole world," in no uncertain

21   terms, that there were "no restrictions on [the PSI Books] material."  This unequivocal

22   statement is precisely the sort of "overt act" that establishes abandonment of

23   copyright.  Moreover, far from disputing that Protein Solutions had any intention of

24   abandoning the protections of the Copyright Act, Wyatt's own 30(b)(6) witness

25   _____

26   [4] The court also found that the abandonment "ended . . . on September 22, 1987,"
     when the plaintiff changed the form of the copyright notice that it used on its weekly
27   newsletters to eliminate the "two-day" provision. However, the revised notice did not
     and could not serve to avoid abandonment as to those newsletters that were distributed
     prior to that date. *See Hadady*, 739 F. Supp. at 1399, 1401.

28

1  *affirmed* that Protein Solutions intended such abandonment.

REDACTED          FILED UNDER SEAL

These facts demonstrate abandonment of copyright as a matter of law.

6  Wyatt acquired a copyright interest in both PSI Books works – if at all –

7  only to the extent Protein Solutions had a viable copyright interest to sell.  Because

8  Protein Solutions had abandoned its copyright in these works, Wyatt acquired no valid

9  or enforceable copyright interest in them.  Defendants are therefore entitled to

10  summary judgment on Claims 6 and 8.

11  **IV.    DEFENDANT DOLAK IS NOT INDIVIDUALLY LIABLE WITH
    RESPECT TO CLAIMS 1 THROUGH 8**

12  To prevail on its claims for copyright infringement against Mr. Dolak,

13  Plaintiff must establish either that Mr. Dolak directly infringed Plaintiff's copyrights

14  or that Malvern's corporate status should be disregarded and Mr. Dolak held

15  individually liable for Malvern's alleged infringement.  *E.g. Automotriz Del Golfo de*

16  *California S.A. de C.V. v. Resnick*, 306 P.2d 1, 6-9 (1957).

17  Claims 1 through 5 and Claim 7 relate to alleged infringement of the

18  Dynamics software and of a calculator on the Protein Solutions website.  However,

19  Mr. Dolak had no role in the creation of Malvern's software and therefore has not

20  personally infringed Wyatt's copyrights.  SS ¶ 32.  Likewise, Mr. Dolak had no role in

21  the development of the accused calculator on Malvern's website.  *Id.*  Claims 6 and 8

22  relate to alleged infringement of two versions of PSI Books by certain help files in

23  Malvern's software and on its website.  SAC, ¶¶ 115-123, 132-140.  However, Mr.

24  Dolak did not personally create the challenged sections of Malvern's website or the

25  help files.  SS ¶ 32.  Moreover, there is no evidence that Malvern's corporate structure

26  should be disregarded or that Mr. Dolak is otherwise is liable under an alter ego

27  theory.  Accordingly, there is no basis for liability against Mr. Dolak as an individual.

28

1   Mr. Dolak is therefore entitled to summary judgment on Claims 1 through 8.

2   **V.     PLAINTIFF HAS NO EVIDENCE OF DAMAGES ASSOCIATED WITH CLAIM 9**

3            In claim 9, Plaintiff alleges that www.dynamiclightscattering.com, a

4   website that contains a few paragraphs of background regarding dynamic light

5   scattering, infringes its copyright in PSI Frequently Asked Questions ("PSI FAQs").

6   SAC, ¶¶ 141-148.  Specifically, Plaintiff has identified one clause, three sentences and

7   a handful of words regarding generic scientific principles that it contends are similar

8   to portions of PSI FAQs.  SAC, Exh. 26 at 185-87.  It also identifies the description of

9   an equation called the "Stokes-Einstein Equation" as infringing its description of the

10  same equation.  SAC, Exh. 26 at 187.  Even if the website does infringe Plaintiff's

11  copyright in PSI FAQs (which Defendants expressly dispute), Plaintiff has no

12  evidence of damages or profits attributable to such purported infringement.

13           Plaintiff does not identify any actual damages it has suffered or profits

14  earned by Defendants relating to the infringement of PSI FAQs, either in its Rule 26

15  disclosure of damages or its purported expert report.  SS ¶ 33.  Similarly, in response

16  to interrogatories propounded by Defendants seeking information regarding Plaintiff's

17  damages theory respecting to its ninth claim for copyright infringement, Plaintiff

18  merely incorporated its Rule 26 supplemental disclosure of damages and stated:

19
20           Wyatt has suffered damage by reason of Malvern's
             infringement of these Registrations, and will suffer
21           additional irreparable damage and impairment of the value
             of its copyrights, including, but not limited to, damages
22           relating to Defendants' infringement of these protected
             works including Plaintiff's lost profits in the sale of products
23           which embody these protected works unless Defendants are
             enjoined from continuing its infringement.

24  *Id.*  However, Plaintiff did not identify any specific damages or profits associated with

25  Claim 9.

26           The copyright holder bears the burden of establishing damages and

27  causation.  *Evenflow Plumbing Company, Inc. v. Pacific Bell Directory*, No. C-

28  3:04CV00795 EDL, 2005 WL 1353822 (N.D. Cal. June 7, 2005).  Rule 26 required

                                        23

1    Plaintiff to identify its damages theory and provide Defendants a computation of such

2    damages at the inception of this litigation. FRCP 26(a). When a Plaintiff fails to

3    disclose its damages analysis, it is prohibited from presenting evidence on such

4    damages. *E.g. Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1177 (9th Cir.

5    2008) ("precluding the admission of evidence regarding damages," because the

6    plaintiff had failed to timely produce a damages calculation, even though it effectively

7    resulted in the dismissal of its claims); *Design Strategy, Inc. v. Davis*, 469 F.3d 284,

8    295-96 (2nd Cir. 2006) (upholding district court's exclusion of damages theories that

9    plaintiff failed to timely disclose). Here, there is no evidence of any actual damages

10   or profits relating to the purported infringement of PSI FAQ. Accordingly,

11   Defendants are entitled to summary judgment as to damages on Claim 9.

12   **VI.    PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES OR
          ATTORNEYS' FEES FOR ITS COPYRIGHT INFRINGEMENT CLAIMS**

13

14              Section 412 of the Copyright Act limits the circumstances under which a

     prevailing plaintiff can obtain an award of statutory damages or attorneys' fees.
15
     Specifically, section 412 provides, in relevant part:
16

17              [N]o award of statutory damages or of attorneys' fees, as
                provided by sections 504 and 505, shall be made for:
18
                    (1) any infringement of copyright in an unpublished
19              work commenced before the effective date of its
20              registration; or

21                  (2) any infringement of copyright commenced after
                first publication of the work and before the effective date of
22              its registration, unless such registration is made within three
23              months after the first publication of the work.

24   17 U.S.C. § 412. In other words, except for cases in which registration is obtained

25   within three months after first publication, "for a copyright owner to be entitled to

26   recover statutory damages and attorney's fees, the work must have been registered

27   prior to commencement of the infringement for which such remedies are sought." 2

28

1  Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[C][1] (Rel. 78
2  2009) (footnotes omitted).

3              In the present case, Plaintiff concedes that, for each copyright identified
4  in the SAC, the copyright's effective date is more than three months after the first
5  publication of the work underlying such copyright registration. SS ¶ 34.  Moreover,
6  Plaintiff further concedes that Defendants' purported infringement of each copyright
7  commenced prior to Plaintiff's registration of such copyright. SS ¶ 35.  Accordingly,
8  Defendants are entitled to summary judgment on Plaintiff's claims for statutory
9  damages and attorneys' fees as to Claims 1 through 9. *Cf. Cognotec Servs. Ltd. v.*
10  *Morgan Guaranty Trust Co.,* 862 F. Supp. 45, 52 (1994) (striking improper prayer for
11  attorneys fees under Rule 12(f)).

12  **VII.   CONCLUSION**

13              For the foregoing reasons, Defendants respectfully request that the Court
14  grant their motion in its entirety and enter judgment in favor of Defendants on
15  Plaintiff's Claims 1 through 3 (as to the screen displays with respect to Malvern and in
16  their entirety as to Mr. Dolak), Claims 4 through 8 (in their entirety as to both
17  Defendants), Claim 9 with respect to monetary damages, and Claims 1 through 9 with
18  respect to statutory damages and attorneys' fees.

19  Dated:  June 29, 2009                     SIDLEY AUSTIN LLP
20                                             Rollin A. Ransom
                                               Frank J. Broccolo
21                                             Jennifer A. Ratner
                                               Johari N. Townes
22

23
                                    By:  *Rollin Ransom (JR)*
24                                             Rollin A. Ransom
25                                             Attorneys for Defendants
                                               Malvern Instruments Incorporated and
26                                             David Dolak
27

28