Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Jennifer A. Ratner (SBN 205155)
jratner@sidley.com
Frank J. Broccolo (SBN 210711)
fbroccolo@sidley.com
Johari N. Townes (SBN 252369)
jtownes@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendants
Malvern Instruments Incorporated
and David Dolak

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WYATT TECHNOLOGY CORPORATION, a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MALVERN INSTRUMENTS INCORPORATED, a Massachusetts corporation; DAVID DOLAK, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. CV07-8298 DDP (MANx) <br><br> Assigned to: Hon. Dean D. Pregerson <br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S COPYRIGHT CLAIMS** <br><br> [Filed concurrently with Defendants' Reply to Wyatt's Separate Statement of Genuine Issues; Defendants' Evidentiary Objections to and Motion to Strike the Declarations Submitted in Plaintiff's Opposition to Defendants' Motions for Summary Judgment; and Defendants' Opposition to Plaintiff's Request for Judicial Notice] <br><br> Date: July 27, 2009 <br> Time: 10:00 a.m. <br> Place: Courtroom 3 |

# TABLE OF CONTENTS

**Page**

I. THERE IS NO ACTIONABLE SIMILARITY BETWEEN PROTECTABLE ELEMENTS OF THE SCREEN DISPLAYS IN CLAIMS 1-5 AND 7 AND MALVERN'S SCREEN DISPLAYS .................... 1

    A. To The Extent Plaintiff Disputes The Applicable Legal Standard, The Cases That Plaintiff Relies Upon Have Been Expressly Overruled Or Rejected, Or Are Otherwise Inapplicable ........................... 1

    B. Most Of The Screen Displays At Issue Are Unprotectable Calculators and Blank Forms ........................................................ 5

    C. The Remaining Displays Are Likewise Not Entitled To Copyright Protection. ....................................................................... 10

    D. Even If Protectable, None Of The Comparable Screen Displays At Issue Are "Virtually Identical" ............................................... 11

II. THE COPYRIGHTS IN THE WORKS UNDERLYING CLAIMS 6 AND 8 HAVE BEEN ABANDONED ................................................ 12

III. DOLAK IS NOT LIABLE AS TO CLAIMS 1 THROUGH 8 .......................... 13

IV. PLAINTIFF HAS NO EVIDENCE OF DAMAGES AS TO CLAIM 9 .......... 14

V. PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES OR ATTORNEYS' FEES ........................................................................... 16

VI. CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ...................................................................2, 10, 11

*Bibbero Systems, Inc. v. Colwell Systems, Inc.*,
    893 F.2d 1104 (9th Cir. 1990) ......................................................2, 3, 5, 6, 7, 10

*Calyx Tech., Inc. v. Ellie Mae, Inc.*,
    No. C 04-1640 SI, 2005 WL 2036918 (N.D. Cal. Aug. 22, 2005) ..........2, 5, 6, 7

*Computer Access Tech. Corp. v. Catalyst Enters., Inc.*,
    No. C-00-4852-DLJ, 2001 WL 34118030 (N.D. Cal. Jun. 13, 2001)............2, 12

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
    158 F.3d 1002 (9th Cir. 1998) ....................................................................... 13

*Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East*,
    542 F.2d 1053 (9th Cir. 1976) ....................................................................... 10

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997) ................................................................................4

*Fox Controls, Inc. v. Honeywell, Inc.*,
    Case No. 02 C 346, 2005 WL 1705832 (N.D. Ill. Jul. 14, 2005)................15, 16

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
    739 F. Supp. 1392 (C.D. Cal. 1990) ............................................................12, 13

*Harcourt Brace & World, Inc. v. Graphic Controls Corp.*,
    329 F. Supp. 517 (S.D.N.Y. 1971) ....................................................................3

*Lotus Devel. Corp. v. Borland Int'l, Inc.*,
    49 F.3d 807 (1st Cir. 1995)....................................................................3, 10, 11

*Lotus Devel. Corp. v. Borland Int'l, Inc.*,
    831 F. Supp. 202 (D. Mass. 1993)......................................................................3

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) .............................................................................4

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ...................................................................16

*Sega Enters. Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ..................................................................2

*Sony Computer Entm't, Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) ....................................................................2

*Taylor v. List*,
   880 F.2d 1040 (9th Cir. 1989) ................................................................14

*Triad Sys. Corp. v. Southeastern Express Co.*,
   64 F.3d 1330 (9th Cir. 1995) ....................................................................4

**STATUTES**

17 U.S.C. § 102(b) ..........................................................................2, 5, 6, 7

17 U.S.C. § 410(c) .....................................................................................2

iii

Defendants Malvern Instruments Incorporated ("Malvern") and David Dolak respectfully submit this reply memorandum in support of their Motion For Partial Summary Judgment Regarding Plaintiff's Copyright Claims (the "Motion"). Defendants request that their Motion be granted in its entirety.[1]

## I. THERE IS NO ACTIONABLE SIMILARITY BETWEEN PROTECTABLE ELEMENTS OF THE SCREEN DISPLAYS IN CLAIMS 1-5 AND 7 AND MALVERN'S SCREEN DISPLAYS

In the Motion, defendants set forth the law governing the limited protection available for non-artistic screen displays and demonstrated that, in light of those governing legal principles, no similarity exists between the protectable elements of plaintiff's screen displays (if any) and Malvern's accused screen displays. *See* Copyright MSJ at 2:22-19:25. Plaintiff's opposition fails to meaningfully respond to the Motion on either the law or the facts. As to the law, plaintiff relies on cases that have been overruled, disavowed in the Ninth Circuit, or that are simply irrelevant, but otherwise fails to contest the applicable legal standards. And as to the facts, plaintiff provides *no* analysis of the relevant screen displays, instead conclusorily asserting that "substantial similarit[ies]" exist. Such a cursory and unsupported response is patently inadequate to preclude the entry of summary judgment.

### A. To The Extent Plaintiff Disputes The Applicable Legal Standard, The Cases That Plaintiff Relies Upon Have Been Expressly Overruled Or Rejected, Or Are Otherwise Inapplicable.

Plaintiff spends much of its brief stating abstract legal principles with varying degrees of relevance to the issues presented by the Motion. As an initial matter, plaintiff does not meaningfully dispute the core legal standards articulated in

---

[1] Defendants observe that plaintiff's opposition to the Motion was untimely. Pursuant to Local Rule 7-12, the Court may decline to consider these untimely papers, and may deem the failure to timely oppose the motion as plaintiff's consent to the granting of the motion, *see* Local Rule 7-12, and defendants request that it do so. Defendants also observe that – notwithstanding that plaintiff apparently could not even begin to file its opposition papers until late in the day on July 14 – plaintiff's counsel signed a proof of service, under penalty of perjury, stating that he had mailed these same materials on July 13. Defendants question the veracity of this sworn statement and respectfully request that the Court inquire of plaintiff's counsel as to its accuracy.

1

the Motion. For example, plaintiff does not *directly* dispute any of the following well-established legal principles:

      •      courts typically afford a *lower* degree of protection to software than traditional subjects of copyright, *see* Motion at 3:27-4:1 (*citing Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1446 (9th Cir. 1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992));

      •      non-artistic screen displays and graphic user interfaces, in particular, receive only "thin" protection against only "virtually identical copying," *see* Motion at 4:4-4:12 (*citing Apple*, 35 F.3d at 1442, 1448; *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, No. C-00-4852-DLJ, 2001 WL 34118030, *15-16 (N.D. Cal. Jun. 13, 2001));

      •      under the "blank forms" rule, a document or screen display that consists of spaces for the entry of information, whether labeled or unlabeled, does not receive any copyright protection at all, *see* Motion at 7:19-8:1 (*citing Bibbero Systems, Inc. v. Colwell Systems, Inc.*, 893 F.2d 1104, 1107-08 (9th Cir. 1990); *Calyx Tech., Inc. v. Ellie Mae, Inc.*, No. C 04-1640 SI, 2005 WL 2036918, at *4 (N.D. Cal. Aug. 22, 2005)); and

      •      copyright protection likewise does not extend to any procedure, process, or method of operation, *see* Motion at 7:8-7:12 (*citing* 17 U.S.C. § 102(b); *Calyx*, 2005 WL 2036918, at *3).[2]

---

[2] Plaintiff asserts that its copyright registrations "constitute prima facie evidence of validity." Opp. at 5:5-5:6 (citing 17 U.S.C. § 410(c)). However, section 410(c) of the Copyright Act affords such "prima facie" status *only* if the registration is obtained "before or within five years after first publication of the work." *See* 17 U.S.C. § 410(c). Most of the registrations at issue here were not obtained until five or more years after the work was first published, such that plaintiff has *no* evidence of the validity of the corresponding copyrights. *See* Second Am. Compl. ("SAC") Exhs. 1, 3, 5, 6, 8, 9. In any event, even as to those works that were registered within five years of their first publication, defendants have established as a matter of law that the allegedly infringed aspects of such works are not protectable under the Copyright Act. Accordingly, plaintiff's repeated invocation of section 410(c) provides it no shelter.

Plaintiff does, however, *indirectly* challenge at least certain of these legal principles. In each case, however, the cited authority has been reversed, disavowed by the Ninth Circuit, or is simply irrelevant to the issues presented here.

For example, plaintiff relies on a case that suggests that certain methods of operation – "menu commands" and "menu structures" – may receive *some* protection (at least against verbatim copying). Specifically, on page 21 of its brief, plaintiff cites and discusses *Lotus Devel. Corp. v. Borland Int'l, Inc.*, 831 F. Supp. 202, 209 (D. Mass. 1993), for the proposition that a computer program's "command menum [sic] hierarchy" can be protected against "copying verbatim." *See* Opp. at 17:21-17:23. What plaintiff fails to disclose, however, is that the district court in *Lotus* was <u>*reversed*</u> on this very issue by the First Circuit. Specifically, the First Circuit concluded that the menu command hierarchy in Lotus 1-2-3 (including its "specific choice and arrangement of command terms") was a method of operation, and therefore not protectable at all – even against *verbatim* copying. *See Lotus Devel. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 816 (1st Cir. 1995).

Similarly, plaintiff cites *Harcourt Brace & World, Inc. v. Graphic Controls Corp.*, 329 F. Supp. 517 (S.D.N.Y. 1971), apparently for the proposition that a blank form – there, a test answer sheet – is afforded some (albeit "narrow") protection. *See* Opp. at 18:3-18:5. However, in another conspicuous omission, plaintiff neglects to disclose that the Ninth Circuit has *expressly declined* to follow *Harcourt Brace*. *See Bibbero*, 893 F.2d at 1107 (rejecting *Harcourt Brace* and adopting "bright line" approach rejecting copyright protection for blank forms).

Finally, plaintiff asserts that the copyright in software may be infringed through the "installation of software onto a computer" (Opp. at 14:19-14:21) or the loading of software into a computer's random access memory (Opp. at 15:12-15:15). Whatever the accuracy of these legal contentions, they have no relevance here. Plaintiff has never alleged that defendants infringed any copyright through the "installation" or "loading into RAM" of plaintiff's software. Nor has plaintiff offered

*any* evidence that defendants actually did install or load this software, much less that they did so in violation of any license associated with validly-obtained copies of the software. *Cf. Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1333 (9th Cir. 1995) (infringement through copying of program in violation of license); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993) (same); *Fonar Corp. v. Domenick*, 105 F.3d 99, 101 (2d Cir. 1997) (same).[3]  On the contrary, plaintiff has always (and only) alleged that defendants infringed its software copyrights through the incorporation of certain allegedly similar functionality in defendant's own software and website.  *See* SAC ¶¶ 78-79, 86-87, 94-95, 102-103, 110-111, 127-128.  Plaintiff's recitation of caselaw respecting the installation and loading of software into RAM is simply irrelevant.[4]

In sum, the relevant legal principles are not subject to meaningful dispute:  blank forms (with or without text labels) and methods of operation (such as

_____

[3] Indeed, it appears that plaintiff's counsel has simply "cut and paste" inapposite legal authority from another brief into the current opposition, without regard to its relevance.  For example, the opposition states:

> Appellants erroneously argue in their belief that the holding [of] MAI Systems has no bearing on the instant case because it only addressed the issue of whether a computer program in RAM is 'fixed' under the ACT, independent of the issue of whether the RAM reproduction constitutes a 'copy'.

Opp. at 18:21-24.  Defendants are, of course, not "appellants;" more to the point, defendants never cited or discussed *MAI Systems* in their Motion.  *See also* Opp. at 18:27-19:1 (asserting that "Appellant does not argue" certain distinctions between workstations and office networks that are not at issue here).

[4] Plaintiff also devotes much of its opposition to a discussion of facts that bear no relation to the issues raised in the Motion.  For example, plaintiff asserts that it may preclude the "improper uploading and transmission of Wyatt's source code via e-mail" (Opp. at 2:13-2:15), even though defendants' Motion is not directed at source code (see Motion at 4 n.1), and even though Wyatt has never claimed that defendants "upload[ed]" or "transmi[tted]" Wyatt source code via e-mail.  Plaintiff also alleges that certain Malvern employees were subject to employment agreements when they were employed by Protein Solutions (Opp. at 3:5-3:8), that Mr. Dolak allegedly disclosed Protein Solutions' trade secrets to Malvern and "other third parties" (Opp. at 3:21-3:23), and that Malvern has ostensibly engaged in false advertising (Opp. at 4:1-4:3).  None of these issues is remotely relevant to the present Motion.

calculators) receive *no* copyright protection; to the extent the remaining screen displays at issue receive protection, it is only against "virtually identical" copying. As discussed further below, the proper application of those legal principles to the undisputed facts requires summary judgment in favor of defendants.

**B.    Most Of The Screen Displays At Issue Are Unprotectable Calculators and Blank Forms**

Most of the screen displays identified by plaintiff are calculators consisting of blank forms in which the user must input values. As stated above, the Ninth Circuit has adopted a "bright line" rule that such "blank forms" are not entitled to *any* copyright protection. *See Bibbero*, 893 F.2d at 1107-08; *see also Calyx,* 2005 WL 2036918, at *3 (*Bibbero* "established a strict interpretation of the 'blank forms' doctrine for the Ninth Circuit"). Likewise, the calculators underlying such blank forms are simply methods of operation that are statutorily excluded from the ambit of copyright protection. *See* 17 U.S.C. § 102(b); *Calyx*, 2005 WL 2036918, at *3.

In *Calyx*, the court considered facts that are very similar to those here. The plaintiff (Calyx) sold loan origination software, called "Point," that "provide[d] the user with a variety of forms necessary to processing a loan." *Calyx*, 2005 WL 2036918, at *1. The software also performed calculations and returned values based upon the values input by the user into the various forms. *Id.* The defendant (Ellie Mae) likewise offered loan origination software that "perform[ed] many of the same functions as Point and contain[ed] portions of screen images that look[ed] similar to comparable Point images." *Id.* Calyx sued Ellie Mae, alleging that Ellie Mae's software infringed Calyx's copyright in the Point software.

Ellie Mae sought summary judgment, contending that none of the relevant features were entitled to copyright protection. The court first conducted the "analytic dissection" required under Ninth Circuit law, and concluded that the *functions* performed by the software (*e.g.*, the "calculators, password protectors, lock

boxes, [and] autopopulation" features) were simply methods of operation, and thus not protectable under copyright law. *Id.* at \*3 (citing 17 U.S.C. § 102(b)).

The court then turned to the "'compilations of terms and text' found on the 'screen displays' of the Point software." *Id.* at \*3. Although the court concluded that the "[Ellie Mae] screen displays selected by plaintiff closely resemble comparable Point screen displays," *id.*, it found that Calyx's copyright claim failed as a matter of law. It noted that the screen displays at issue consisted of blank forms with labels:

> [E]ach display contains numerous empty boxes designed
>
> specifically for the use to input data. The forms do not
>
> contain any text aside from labels to each of the empty
>
> boxes.

*Id.* at \*4. Applying the Ninth Circuit's "bright line" rule in *Bibbero*, the Court concluded that such "blank form" screen displays are not entitled to *any* copyright protection. Accordingly, it granted summary judgment to Ellie Mae. *Id.* at \*4-\*5.[5]

The identical analysis applies to the bulk of the accused screen displays at issue here. Conspicuously absent from plaintiff's opposition or the supporting materials is *any* discussion of the "blank forms" rule, or any effort to overcome the binding precedent of *Bibbero*. Likewise absent is any discussion of §102(b) and its exclusion of "methods of operation" (such as calculators) from copyright protection.[6]

---

[5] The *Calyx* court also noted that the *source code* underlying software may be protected by copyright, but that Calyx did not allege copying of its source code. *Id.* at \*2. Here, plaintiff has alleged infringement of source code in Claims 1-3. However, as noted in the Motion, this claim is not yet ripe for resolution. *See* Motion at 4 n.1. Accordingly, the Motion seeks partial summary judgment as to Claims 1-3 (*i.e.*, as to the screen displays). Because source code is not implicated by Claims 4, 5, and 7, however, defendants seek summary judgment as to those claims in their entirety.

[6] Plaintiff relies on the declaration of Brent Fulgham, one of its engineers, in support of its contention that various aspects of the Dynamics software are "original to the program." As an initial matter, Mr. Fulgham lacks foundation for this assertion – he was not employed by Protein Solutions, and thus was not involved in the development of the software that is the subject of plaintiff's copyright claims. In any event, it matters not whether the elements he identifies are "original to the program," because these elements are not protectable under the Copyright Act in the first instance.

1      Set forth below are the various blank forms and calculators that are the

2   subject of plaintiff's claims.  Under *Bibbero*, *Calyx*, and §102(b), these forms and

3   calculators receive no copyright protection.

4

5   DynaPro Hydrodynamic Radius Calculator (Claim 1 – SAC Exh. 18 at 108)



16  DynaPro User Interface (Claim 2 – SAC Exh. 19 at 115)



DynaPro Axial Ratio (Elliptical Shape) Calculator (Claim 3 – SAC Exh. 20 at 116)



DynaPro Molecular Weight Calculator (Claim 3 – SAC Exh. 20 at 117)



DynaPro Static MW Calculator (Claim 4 – SAC Exh. 21 at 119)



8

DynaPro Write DSS File (Claim 5 – SAC Exh. 22 at 124)



DynaPro Concentration Calculator (Claim 7 – SAC 24 at 131)

**DynaPro Minimum Concentration Calculator**

Enter the molecular weight of your biomolecule below and click the "calculate" button to see the sensitivity levels of our DynaPro models. This will help you understand the minimum sample concentration you'll need for analysis on our DynaPro systems.

Molecular Weight : [      ] kD

MS/X : [      ] mg/ml (Size range 1nm - 1um)

MS800 : [      ] mg/ml (Size range 1 - 50nm)

LSR : [      ] mg/ml (Size range 2nm - 1um)

Calculate    Clear

In each case, it is undisputed that the relevant screens consist of blank forms containing labeled boxes in which the user inputs data; in most cases, the software then performs a calculation and provides output values, graphs, or charts. *See* Reply to Wyatt's Separate Statement of Genuine Issues in Opposition to Defendants' Motion for Summary Judgment Regarding Plaintiff's Copyright Claims ("Copyright Reply

Stmt.") ¶¶ 2, 8, 11, 14, 18, 21, 24, 28.[7] These screens and functions are simply not protectable. In light of these undisputed facts and under well-established Ninth Circuit law, defendants are entitled to summary judgment as to these displays.

**C.     The Remaining Displays Are Likewise Not Entitled To Copyright Protection.**

The two remaining displays that are the subject of plaintiff's copyright claims are likewise not protected by copyright.

In Claim 1, in addition to the Hydrodynamic Radius Calculator addressed above, plaintiff alleges infringement of its "statistics table." SAC, Exh. 18 at 112-113. In its opposition, the *only* aspect of this "statistics table" that plaintiff identifies as infringed is the "units" menu, namely, a drop-down menu that permits the user to change the unit of measurement associated with any particular displayed value. *See* Opp. at 7:9-7:14; *see also* Declaration of Robert Collins in Opposition to Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Copyright Claims ("Collins Copyright Decl.") ¶¶ 11-12; SAC Exh. 18 at 112-113. However, the use of a menu permitting the user to select and change units is – by definition – a method of operation. *See, e.g., Apple*, 35 F.3d at 1444 (holding that "[n]o copyright protection inheres" in "use of menus to store information or computer functions") *Lotus*, 49 F.3d at 815 (1st Cir. 1995) ("menu commands" are unprotectable methods of operation). Accordingly, it is afforded no copyright protection.

In Claim 2, in addition to the DynaPro User Interface addressed above, plaintiff alleges infringement through the use of a "tree design" interface. SAC ¶¶ 86-87; *see also* SAC Exh. 19 at 114. However, like the "use of windows to display

---

[7] Although the DynaPro concentration calculator (Claim 7) includes brief introductory text directing the user to input data, "click the 'calculate' button," and stating that the calculator provides minimum sample concentration, "[t]hese instructions are far too simple to be copyrightable as text in and of themselves." *Bibbero*, 893 F. 2d at 1108 (distinguishing *Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1060-61 (9th Cir. 1976) (account books with "several pages of instructions" and "advice on the successful management of a service station" could be copyrightable)).

multiple images on the computer screen and to facilitate user interaction with the information contained in the windows" in *Apple*, and the "menu command hierarchy" in *Lotus*, this structure is simply a method of operation that is unprotectable under the Copyright Act. *See Apple*, 35 F.3d at 1443-44; *Lotus*, 49 F.3d at 815.[8]

In sum, *none* of the screen displays that plaintiff alleges are infringed is entitled to copyright protection. Defendants are therefore entitled to summary judgment on plaintiff's claims.

### D. Even If Protectable, None Of The Comparable Screen Displays At Issue Are "Virtually Identical"

Finally, even if *some* aspect of plaintiff's screen displays were protectable, summary judgment should still be granted. In the Motion, defendants reviewed each of the alleged infringements in detail, establishing that the parties' respective displays lacked the requisite "virtual identity" to support a claim of infringement.[9]

Plaintiff's opposition fails to establish any genuine issue of material dispute as to this analysis. As an initial matter, plaintiff consistently employs the wrong standard, repeatedly (and conclusorily) asserting that the dueling displays are "substantially similar." *See, e.g.*, Opp. at 11:5-11:7. As noted above and discussed in the Motion, the appropriate test for the sort of screen displays and graphic user

---

[8] Plaintiff devotes much of its brief to disputing whether the function of Malvern's "SOP Player" and the DynaPro User Interface is the same. Because no aspect of the DynaPro User Interface display is protectable, however, this dispute is irrelevant for purposes of the Motion.

[9] In its brief (but not in its Separate Statement of Genuine Issues in Opposition to Defendant's Motion for Summary Judgment Regarding Plaintiff's Copyright Claims), plaintiff also asserts that certain displays in Dr. Mattison's "LS Shareware" are ostensibly similar to plaintiff's displays. Because plaintiff's displays are not protectable, as discussed above, these contentions respecting "LS Shareware" are simply irrelevant. In any event, as with the screen displays associated with Malvern's Zetasizer Nano software, a cursory review of the "LS Shareware" screen displays identified by plaintiff (which generally parallel corresponding Zetasizer Nano screens displays) demonstrates that they are not substantially similar, much less virtually identical, to plaintiff's screen displays.

interfaces at issue here is *not* substantial similarity; instead, such displays and interfaces are protected only against "virtually identical" copying. *See, e.g.*, *Computer Access*, 2001 WL 34118030 at *17. For this reason alone, plaintiff's opposition fails to present any genuine issue.

In any event, the screen displays speak for themselves. Plaintiff cannot defeat summary judgment by simply asserting that similarity exists – it must present facts demonstrating virtual identity of protectable features. It has not done so, and cannot do so. Defendants are entitled to summary judgment as to the screen displays in Claims 1 through 3, and as to Claims 4, 5, and 7 in their entirety.

## II. THE COPYRIGHTS IN THE WORKS UNDERLYING CLAIMS 6 AND 8 HAVE BEEN ABANDONED

Plaintiff's only response to defendants' motion for summary judgment respecting Claims 6 and 8 – the PSI Books materials – is that there was "no intent" to abandon the copyright in these works. Opp. at 18:22-18:23. The only "support" for this assertion is a similarly cursory statement by Robert Collins, plaintiff's regional manager, that "Protein Solutions . . . never intended to 'abandon' PSI Books." Collins Copyright Decl. ¶ 51.

This case is therefore identical in all material respects to *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398 (C.D. Cal. 1990), which was discussed at length in the Motion and is not even mentioned by plaintiff in its opposition. There – as here – the material at issue included, *on its face*, an express disclaimer of any restrictions on its use. *See id.* at 1401 (newsletter stated on its face that it was protected by copyright for only two days after publication). There – as here – an employee of the plaintiff nonetheless claimed that plaintiff did not intend to abandon its copyright. *Id.* And there – as here – this assertion of subjective non-intent could not overcome the "overt act" of including a statement foregoing any restrictions on use and the resulting abandonment of copyright. As the *Hadady* court noted, plaintiff's claim that it did not "intend" to abandon its copyright "[flew] in the

face of the only possible meaning the two-day copyright notice conveyed, and [did] not raise a triable issue of material fact." *Id.* at 1399.

Indeed, the case for abandonment is even stronger here. Notwithstanding his current declaration, in his deposition, Mr. Collins effectively *affirmed* that Protein Solutions intended to abandon the protections of the Copyright Act. Specifically, Mr. Collins affirmed that Protein Solutions intended to allow "free access" to, and "free shar[ing]" of, PSI Books, that people were actually encouraged to use, copy and disseminate the work, and that Protein Solutions never placed <u>any</u> restrictions on what others could do with the work. *See* Separate Statement of Uncontroverted Facts ("SS") ¶ 31 ("Q: So if someone downloaded it from the website and then made a thousand copies and handed it out on the street corner, Protein Solutions would have been fine with that? A. Yes."). Mr. Collins may not contradict his deposition testimony in an effort to overcome summary judgment – it is axiomatic that "[a] party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition testimony with a later declaration." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998).

Plaintiff concedes that abandonment of copyright occurs if there is an "overt act" manifesting such abandonment. *See* Opp. at 19:9-19:11. The inclusion of a statement on the front page of PSI Books – that "there are no restrictions on this material" and that "you may install it on as many PC systems as you like, and you may distribute it freely to your colleagues" (SS ¶ 30) – is just such an "overt act." Defendants are entitled to summary judgment on Claims 6 and 8.

## III. DOLAK IS NOT LIABLE AS TO CLAIMS 1 THROUGH 8

In the Motion, Mr. Dolak established that he had no role in the creation of the works that are accused in Claims 1 through 8 of the SAC. *See* SS ¶ 32. Plaintiff's only response, set forth in the "Introduction" of its opposition, is to summarily assert that "Defendant Dolak as the web master of Protein Solutions had knowledge or reason to have knowledge of Malvern's direct infringement, and

provided material assistance to Malvern in the infringing activity." Opp. at 4:15-4:18.

Defendant then asserts that Mr. Dolak receives performance bonuses tied to the sale of

Malvern's product (which is irrelevant to the question of whether Mr. Dolak

"provided material assistance . . . in the infringing activity"), and owned an allegedly

infringing website, www.dynamiclightscattering.com (which is the subject of Claim 9,

not Claims 1-8). Opp. at 4:18-4:21.

Similarly, plaintiff purports to dispute paragraph 32 of defendants'

Separate Statement of Uncontroverted Facts, which sets forth Mr. Dolak's lack of

responsibility for any of the alleged infringements in Claims 1-8. However, the only

"facts" offered in support of this dispute relate to Mr. Dolak's registration of the

allegedly infringing www.dynamiclightscattering.com website – again, the subject of

Claim 9, rather than Claims 1 through 8. *See* Copyright Reply Stmt. ¶ 32.

"A summary judgment motion cannot be defeated by relying solely on

conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040,

1045 (9th Cir. 1989). Plaintiff has offered no evidence that Mr. Dolak has played any

role, directly or indirectly, in connection with the works that are accused of

infringement in Claims 1 through 8, or that there is otherwise a basis for imposing

liability against him individually. Mr. Dolak is therefore entitled to summary

judgment as to these claims.

## IV. PLAINTIFF HAS NO EVIDENCE OF DAMAGES AS TO CLAIM 9

In the Motion, defendants established that plaintiff has no evidence of

damages associated with the alleged infringement of a work entitled "PSI Frequently

Asked Questions" ("PSI FAQs") in a website created by Mr. Dolak,

www.dynamiclightscattering.com. SS ¶ 33. Plaintiff's only response is that "[t]he

Declaration of Geof Wyatt established Plaintiff has suffered actual damages as a result

of Defendants' infringement and is entitled to an accounting." Opp. at 18:13-18:14;

*see also* Plaintiff Wyatt's Separate Statement of Genuine Issues in Opposition to

Defendant's Motion for Summary Judgment Regarding Plaintiff's Copyright Claims ¶ 33 (citing Declaration of Geoff Wyatt ("Geof Wyatt Copyright Decl.") ¶¶ 27-37).

The Declaration of Geoff Wyatt, however, makes *no* mention of either PSI FAQs or www.dynamiclightscattering.com. *See* Geof Wyatt Copyright Decl. ¶¶ 27-37. Indeed, the only mention of copyright-related damages at all appears in paragraph 37 of the declaration. In that paragraph, Mr. Wyatt generally asserts that "the value of [plaintiff's] copyrighted works have been decreased due to Malvern's infringement" and that "[b]ut for Defendants' infringement of [plaintiff's] copyrighted works, Plaintiff would have an exclusive niche in the [protein characterization] market." *Id.* ¶ 37. These generic and unsupported assertions cannot conceivably support *any* award of damages, much less damages associated with the minimal copying of equations and text alleged in Claim 9.

For example, in *Fox Controls, Inc. v. Honeywell, Inc.*, Case No. 02 C 346, 2005 WL 1705832 (N.D. Ill. Jul. 14, 2005), the plaintiff, Fox, accused the defendant, Honeywell, of utilizing Fox's copyrighted materials in Honeywell's training materials and manuals. *Id.* at *2-*4. Honeywell moved for summary judgment on the ground that Fox had no evidence of actual damages or profits attributable to the alleged infringement. *Id.* at *8. In opposition, Fox asserted "that '[g]ross revenues from [the relevant Honeywell division] provide a reasonable approximation of the amount of damages attributable to the infringing materials." *Id.* Alternatively, Fox pointed to a $4 million annual decrease in its own revenues, and argued that it therefore "ha[d] 'direct evidence of its sales falling dramatically after Honeywell began copying and distributing its proprietary work and excluding Fox from participation in sales seminars," and that "'[t]he finder of fact could directly link Fox's lost sales (and profits) to Honeywell's infringing activities.'" *Id.* at *9.

The court rejected Fox's arguments and granted summary judgment to Honeywell. As to the former argument, the court held:

> Plaintiff fails to present any basis upon which to conclude that Honeywell derived any profit from the use of plaintiff's works, much less any particular amounts. Plaintiff also fails even to argue that any particular percentage of defendant's revenues is attributable to the [allegedly infringing works]. . . . A plaintiff cannot simply presume that the sales of a defendant's products are due to copyright infringement.

*Id*. at *8. As to plaintiff's claims for Honeywell's profits, the court was similarly dismissive: "Because plaintiff does not elaborate on this statement [that the jury could link Fox's lost sales to the alleged infringement] or offer any evidence at all that could form a basis for this 'direct link,' the argument is rejected." *Id*. at *9.

The same analysis applies with equal force here. Neither the Declaration of Geof Wyatt submitted with plaintiff's opposition, nor plaintiff's "expert" report and Rule 26(a) disclosure that defendants submitted with their Motion (*see* SS ¶ 33), provide *any* evidence supporting a link between the harm that plaintiff claims to have suffered and defendants' alleged misconduct. More fundamentally for purposes of this Motion, none of those documents even *mentions* either PSI FAQs or the allegedly infringing website that is the subject of Claim 9, much less attempts to establish any link between those particular materials and plaintiff's claimed damages. "Summary judgment is appropriate where [plaintiffs] have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988). Defendants are entitled to summary judgment as to damages on Claim 9.

## V. PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES OR ATTORNEYS' FEES

Plaintiff has not opposed defendants' motion for summary judgment on plaintiff's claims for statutory damages and attorneys' fees. On the contrary, plaintiff concedes that it does not meet the statutory prerequisite for such an award. *See*

Copyright Reply Stmt. ¶¶ 34-35.  Defendants are entitled to summary judgment on plaintiff's claims for statutory damages and attorneys' fees as to Claims 1 through 9.

**VI.    CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their Motion in its entirety and enter judgment in favor of defendants on plaintiff's Claims 1 through 3 (as to the screen displays with respect to Malvern and in their entirety as to Mr. Dolak), Claims 4 through 8 (in their entirety as to both defendants), Claim 9 with respect to monetary damages, and Claims 1 through 9 with respect to statutory damages and attorneys' fees.

Dated:  July 20, 2009

SIDLEY AUSTIN LLP
Rollin A. Ransom
Jennifer A. Ratner
Frank J. Broccolo
Johari N. Townes


By: /s/ Rollin A. Ransom
      Rollin A. Ransom
      Attorneys for Defendants
      Malvern Instruments Incorporated and
      David Dolak

17