O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WYATT TECHNOLOGY CORPORATION, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> MALVERN INSTRUMENTS INCORPORATION, a Massachusetts corporation; DAVID DOLAK, an individual, <br><br> Defendants. | Case No. CV 07-08298 DDP (MANx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT CLAIMS 1-3** <br><br> [Motion filed on July 31, 2009] |

The Court is presented with a Motion for Partial Summary Judgment on Plaintiff's Claims 1-3 filed by Defendants Malvern Instruments, Inc., and David Dolak ("Defendants"). Plaintiff Wyatt Technology Corporation ("Plaintiff") opposes the motion and requests a continuance pursuant to Federal Rule of Civil Procedure 56(f). Having heard oral argument and reviewed the papers submitted by the parties, the Court denies Plaintiff's request for a rule 56(f) continuance and grants Defendants' motion for partial summary judgment for the reasons set forth below.

**I.   BACKGROUND**

   **A.   Factual Background**

Plaintiff and Defendant Malvern are competitors in the particle analysis field. (Second Amended Complaint ("SAC") ¶ 64.) Both manufacture, market, and/or sell laser light scattering goods and services relating to measuring molecular weights and characterization of molecules and particles. (Id.) The technology is called dynamic light scattering ("DLS"). Plaintiff markets and sells a DLS instrument called "DynaPro." (Id. ¶ 28.) Plaintiff acquired the right to manufacture the DynaPro and the software that operates it ("Dynamics") in 2004, when it purchased assets from Protein Solutions, a defunct competitor. (Id.; Ex. 11.) Defendant Malvern sells a competing DLS instrument called the Zetasizer Nano. (SAC ¶ 47.)

In October 2007, Plaintiff registered copyrights in the source code for selected versions of the Dynamics software: (1) Copyright No. Txu 1-569-097, a software program entitled "DYNAMICS v.6.2.05"; (2) Copyright No. Txu 1-569-098, a software program entitled "DYNAMICS v.6.3.40"; and (3) Copyright No. Txu 1-569-099, a software program entitled "DYNAMICS v.5.26.56." (Id. ¶¶ 76, 84, 92; Exs. 1-3.) The source code that is the subject of those registrations ("Copyrighted Dynamics Source Code") is written in a computer programming language called Visual C++. (Defendants' Statement of Uncontroverted Facts ("DSUF") ¶ 1; Plaintiff's Statement of Genuine Issues ("PSGI") ¶ 1.)

Prior to Plaintiff registering these copyrights, Malvern hired three former Protein Solutions employees: Dr. Kevin Mattison,

2

Defendant Dolak, and Dr. Ulf Nobbman. Plaintiff alleges that Defendant Malvern had access to Plaintiff's Copyrighted Dynamics Source Code through Mattison, Dolak, and Nobbman.

According to Plaintiff, through the manufacture, marketing, and sale of the Zetasizer Nano, Malvern and Dolak have infringed Plaintiff's copyrights. (See SAC ¶ 49.) Additionally, Plaintiff claims that Malvern has used false advertising and misappropriation of Plaintiff's trade secrets to acquire a position in the market.

**B.  Procedural History**

  1.  Prior Motion for Partial Summary Judgment

Plaintiff filed this suit on December 21, 2007, and filed its SAC, the governing pleading, on April 14, 2008.[1] The SAC raises fourteen causes of action against Defendants stemming from the alleged copyright infringement. In an Order dated July 29, 2009, the Court granted in significant part defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Copyright Claims filed on June 29, 2009. Wyatt Tech. Corp. v. Malvern Insts., Inc., 2009 WL 2365647 (C.D. Cal. July 29, 2009). With respect to Claims 1-3, Defendants moved for partial summary judgment with respect to the screen displays generated by the Dynamics software, but not with respect to the Copyrighted Dynamics Source Code. Id. at *3 n.5.

  2.  Present Motion for Partial Summary Judgment

Defendants now move for partial summary judgment on Plaintiff's Copyright Claims 1 through 3 regarding the Copyrighted

---

[1] Plaintiff incorrectly filed its Second Amended Complaint on April 14, 2008. (See Dkt. No. 25._  That document was stricken as incorrectly filed, (see Dkt. No. 27), and re-filed on April 17, 2008. (Dkt. No. 28.)

3

Dynamics Source Code. Defendants argue that they did not have access to such source code and, in any event, there is no evidence of substantial similarity between the Copyrighted Dynamics Source Code and the source code underlying Malvern's Zetasizer Nano software. (Mot. 1:13-18.)

Plaintiff opposes Defendants' motion and requests a continuance pursuant to Federal Rule of Civil Procedure 56(f). Plaintiff argues there are three areas of outstanding fact discovery that may preclude summary judgment: (1)the deposition of Andy Prior, continued to August 21, 2009; (2)a Rule 30(b)(6) deposition of Malvern regarding LS Shareware; and (3)AOL's production of documents in response to a subpoena regarding LS Shareware.

### 3. Discovery Related to Zetasizer Nano Software

Plaintiff does not have the Zetasizer Nano source code. Defendants' counsel has advised Plaintiff's counsel that the Zetasizer Nano source code is not in Defendant Malvern's possession or control, but rather is in the custody and control of Malvern Instruments Ltd. ("MIL"), an affiliate of Malvern's in the United Kingdom. (Ransom Decl. ¶ 2.) In an e-mail dated September 18, 2008, Defendants' counsel notified Plaintiff's counsel that MIL would consider voluntarily providing MIL's proprietary source code to an agreed-upon neutral expert for an evaluation of whether it was substantially similar to the Copyrighted Dynamics Source Code. (Id. ¶ 3.) Plaintiff did not agree to this proposal. (Id. ¶ 4.) Throughout the discovery process, Defendant Malvern reiterated that the Zetasizer Nano source code is in MIL's exclusive possession and

that Plaintiff should utilize the Hague Convention to obtain it. (Id. ¶ 5.)

In March 2009, Plaintiff's counsel contacted Defendants' counsel indicating Plaintiff was interested in the "neutral expert" approach that had been proposed earlier. (Id. ¶ 7.) After negotiations, counsel for both parties agreed that ADR Services, Inc., would designate an arbitrator to propose three neutral experts, but this agreement did not preclude Plaintiff from seeking production of the source code directly from MIL pursuant to the Hague Convention. (Id. ¶ 8.) This approach, however, was unsuccessful: On July 15, 2009, the arbitrator indicated he had not been able to identify a suitable expert, and discovery closed on July 27, 2009. (Id. ¶¶ 10-11.)

### 4. Discovery Related to LS Shareware

On June 8, 2009, Plaintiff filed a Motion for Limited Additional Discovery, seeking to move the fact discovery cut-off date from May 29, 2009, to July 27, 2009. The primary basis for Plaintiff's motion was that it needed additional discovery relating to "LS Shareware." Plaintiff claimed that at a 30(b)(6) deposition on May 6, 2009, it first learned two types of critical information: (1) that Plaintiff's software code and other trade secrets may have been used by MIL to develop the Zetasizer Nano software and (2) that Malvern's employee, Kevin Mattison, sent software code- the LS Shareware- to MIL around late 2002 to be used in developing the Zetasizer Nano software. (Order Granting Motion to Change Discovery Cut-Off Date to July 27, 2009, at 4:22-5:2.)

While an employee at Malvern, Mattison apparently wrote "LS Shareware" programs in a computer language called Visual Basic.

1  (Id. at 5:3-5.)  During his deposition on February 19, 2009,
2  Mattison testified that he provided suggestions to MIL about
3  Zetasizer Nano software developments.  (Id. 5:10-12.)  Following
4  Mattison's deposition, Defendants produced two CDs labeled "LS
5  Shareware and related code" to Plaintiff on May 19, 2009.  The CDs
6  contained a page stating that inquiries regarding the shareware
7  should be directed to "LSShareware@cs.com."  (Id. at 6:3-7.)  On
8  May 27, 2009, Plaintiff issued two subpoenas to the Custodian of
9  Records of Compuserve/AOL, Inc., regarding the e-mail account.  On
10 June 2, 2009, AOL indicated it would not produce the information
11 requested in the subpoenas because the fact discovery cut-off date
12 had passed.  (Id. 5:8-12.)  The Court found that there was good
13 cause to modify the scheduling order for fact discovery until July
14 27, 2009, but noted that it would "not be inclined to grant
15 additional extensions."  (Id. 10:23-11:1.)

16 Following the Court's Order extending the fact discovery cut-
17 off date, Plaintiff filed a Motion to Compel AOL to comply with the
18 subpoena for records in the Eastern District of Virginia.
19 (Frisenda Decl. ¶ 16; Ex. 2.)  On August 7, 2009, the court issued
20 an order granting Plaintiff's motion and ordering AOL to produce
21 the requested documents no later than August 15, 2009.  (Frisenda
22 Decl. ¶ 17; Ex. 3.)

23 **II.  PLAINTIFF'S MOTION FOR CONTINUANCE**
24     **A.  Legal Standard: Fed. R. Civ. P. 56(f)**
25 Rule 56(f) provides that if a party opposing a motion for
26 summary judgment "shows by affidavit that, for specified reasons,
27 it cannot present facts essential to justify its opposition, the
28 court may: (1) deny the motion; (2) order a continuance to enable

6

affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f). "A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006). A Rule 56(f) continuance is appropriately granted "upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

However, the requesting party bears the burden of showing that "the evidence sought exists"; and denial of the motion is proper where "it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). In addition, a district court is within its discretion to deny a Rule 56(f) request "if the movant has failed diligently to pursue discovery in the past." Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) (quoting Nidds v. Schindler Elevator Corp., 113 F.3d 912, 920 (9th Cir. 1996)) (internal quotation marks omitted).

**B.   Analysis**

Plaintiff argues that further discovery- namely, the deposition of Andy Prior, a Rule 30(b)(6) deposition of Malvern regarding LS Shareware, and documents from AOL concerning LS Shareware- will "establish that Defendant Malvern has, and had, actual possession and control over the source code, or portions thereof, which is herein issue, and that such source code, or

7

portions thereof were copied" from the Copyrighted Dynamics Source Code. (Opp. 3:21-25.)

Plaintiff's counsel represented to the Court during the hearing on Defendants' motion that all of the discovery referenced in its Rule 56(f) request- the deposition of Mr. Prior, the Rule 30(b)(6) deposition of a Malvern employee, and the discovery from AOL- had been obtained.

On August 12, 2009, the Court continued the hearing on Defendants' motion from August 24, 2009, to September 9, 2009. On September 4, 2009, the Court continued the hearing date again to September 21, 2009. At no time after the discovery was obtained and prior to the hearing on this motion did Plaintiff seek leave to file supplemental briefing concerning any evidence uncovered during the deposition of Mr. Prior, the document produced by AOL, or the 30(b)(6) deposition.

The Court therefore denies Plaintiff's Motion for Continuance as moot because the discovery Plaintiff sought was obtained well in advance of the hearing on Defendants' motion. In any event, Plaintiff's bald assertion that further discovery would reveal Defendant Malvern was in possession of Zetasizer Nano source code is nothing more than "pure speculation" and is not sufficient to show that "the evidence sought exists." Terrell, 935 F.2d at 1018.

**III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S CLAIMS 1-3**

Defendants move for partial summary judgment with regard to Plaintiff's claims 1 through 3 for copyright infringement as to the Copyrighted Dynamics Source Code. Defendants argue that the undisputed facts show that (1) Defendants did not have access to

8

1  the Copyrighted Dynamics Source Code and (2) in any event, there is
2  no evidence that the alleged infringing Zetasizer Nano software is
3  substantially similar to the Copyrighted Dynamics Source Code.
4  (Mot. 3:20-24.)
5     **A.   Procedural Standard: Fed. R. Civ. P. 56(c)**
6        Summary judgment is appropriate where "the pleadings, the
7  discovery and disclosure materials on file, and any affidavits show
8  that there is no genuine issue as to any material fact and that the
9  movant is entitled to a judgment as a matter of law."
10 FED. R. CIV. P. 56(c).  All reasonable inferences from the evidence
11 must be drawn in favor of the nonmoving party.  Anderson v. Liberty
12 Lobby, Inc., 477 U.S. 242, 255 (1986).  A genuine issue exists if
13 "the evidence is such that a reasonable jury could return a verdict
14 for the nonmoving party"; and material facts are those "that might
15 affect the outcome of the suit under the governing law."  Anderson,
16 477 U.S. at 248.  A party opposing summary judgment must come
17 forward with specific facts, supported by admissible evidence,
18 showing a genuine issue for trial.  FED. R. CIV. P. 56(e); Brinson v.
19 Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).
20    **B.   Legal Framework**
21        1.   Copyright Infringement Analysis
22       In order to succeed on a claim for copyright infringement, a
23 plaintiff must show that it owns the copyright and that the
24 defendant copied protected elements of the work.  Jada Toys, Inc.
25 v. Mattel, Inc., 518 F.3d 628, 636 (9th Cir. 2008)(quoting Cavalier
26 v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002)).  A
27 plaintiff may prove copying through circumstantial evidence that
28 establishes (1) the defendant had access to the copyrighted work

9

and (2) the protected portions of the works are substantially similar. Id. at 636-37. The issue of substantial similarity can be amenable to summary judgment, in particular if "no reasonable juror could find substantial similarity of ideas and expression." Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006).

The Ninth Circuit uses a two-part test – an extrinsic test and an intrinsic test – to determine whether two works are substantially similar. Jada Toys, Inc., 518 F.3d at 637. While the extrinsic test considers whether there are substantial similarities in both ideas and expression, the intrinsic test measures expression subjectively, from the standpoint of the ordinary reasonable observer. Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994). On summary judgment, courts look only to the extrinsic test. When applying the extrinsic test, "a court must filter out and disregard the non-protectable elements in making its substantial similarity determination." Cavalier, 297 F.3d at 822. Put differently, in the extrinsic test, the court uses "analytic dissection to determine the scope of copyright protection before works are considered as a whole." Apple Computer, Inc., 35 F.3d at 1443.

In Apple Computer, the Ninth Circuit identified three steps as "helpful" to follow in performing the substantial similarity analysis. 35 F.3d at 1443. First, the plaintiff must identify the sources of the alleged similarity between its work and the defendant's work. Id.

Second, using "analytic dissection," the court must determine "whether any of the allegedly similar features are protected by

10

copyright." In so doing, the Court must separate ideas from potentially protectable expression. Id. "[T]o that expression, the court must then apply the relevant limiting doctrines in the context of particular medium involved." Id. Analytic dissection is appropriate because the party claiming infringement may place no reliance upon similarity in expression resulting from unprotectable elements. Id. at 1446. Instead, "the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole." Id. Limiting doctrines that bear on the amount of protection of the work include the merger doctrine, the constraints of the medium that limit the options for expression, and originality. Id. at 1444-45. Pursuant to the merger doctrine, when an idea and its expression are indistinguishable, the expression will only be protected against nearly identical copying. Id. at 1444. In the copyright context, "originality" is defined as material created by the author.

Third, the Court "must define the scope of the plaintiff's copyright-that is, decide whether the work is entitled to 'broad' or 'thin' protection." Id. at 1443. Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying. Id. at 1443. A work afforded broad protection is then compared as a whole with the allegedly infringing design to determine if the two are substantially similar. Computer Access Tech. Corp. v. Catalyst Enters., Inc., 2001 WL 34118030 *14 (N.D. Cal. June 13, 2001) (Jenkins, J.). On the other hand, a work afforded thin protection is compared as a whole with the allegedly

1 infringing design to determine if the two are "virtually
2 identical." Id. (citing Apple Computer, 35 F.3d at 1446-47).
3            2.    Software and Copyright
4      These rules apply equally to software, Apple Computer, 35 F.3d
5 at 1445 ("[G]raphical user interface audiovisual works are subject
6 to the same process of analytical dissection as are other works."),
7 though software tends to enjoy more limited copyright protection
8 because of its functional nature.  As Apple Computer suggests, "not
9 all copyrighted works are entitled to the same level of
10 protection": "[t]o the extent that a work is functional or factual
11 it may be copied, as may those expressive elements of the work that
12 must necessarily be used as incident to expression of the
13 underlying ideas, functional concepts, or facts."  Sega Enters.
14 Ltd. v. Accolade, Inc., 977 F.2d 1510, 1524 (9th Cir.
15 1992)(internal citation and quotation marks omitted).  As a general
16 rule, copyright protection does not apply to any "idea, procedure,
17 process, system, method of operations . . . regardless of the form
18 in which it is described, explained, illustrated, or embodied in
19 such work."  17 U.S.C. § 102(b).  Because computer programs can
20 have creative elements but are also fundamentally functional,
21 software tends to enjoy relatively weak protection and is subjected
22 to a high standard for similarity before there will be
23 infringement.  Id. at 1524-26; see Sony, 203 F.3d at 603; Apple
24 Computer, 35 F.3d at 1446 (computer programs entitled to "thin"
25 protection).
26      **C.   Access**
27      Defendants first argue that Plaintiff has presented no
28 evidence that Defendants had access to the Copyrighted Dynamics

12

Source Code. Defendants assert that (1) its three employees which were previously employed by Plaintiff did not and do not have access to the Copyrighted Dynamics Source Code, (DSUF ¶ 2); and (2) the software engineers responsible for developing the Zetasizer Nano software did not and do not have access to the Copyrighted Dynamics Source Code, (id. ¶ 3).

In response to Defendants' first argument, Plaintiff cites the Declaration of Robert Collins, which indicates that Mattison, Nobbman, and Dolak "all had access to the Dynamics source code archives which were stored on a password protected Protein Solutions 'ftp' site." (Collins Decl. ¶ 5.) However, Mr. Collins' declaration fails to indicate whether the Dynamics source code archives contained the Copyrighted Dynamics Source Code, as opposed to other versions of Dynamics source code not protected by copyright.[2]

Nor has Plaintiff adduced any evidence that the software engineers who developed the Zetasizer Nano software had access to the Copyrighted Dynamics Source Code. First, Plaintiff cites Exhibit 5 to the Declaration of Frank Frisenda– a forty-one page collection of numerous e-mails– without directing the Court to any particular page or line numbers. (PSGI ¶ 3.) The Court declines to wade through voluminous exhibits in search of a needle in a haystack. Second, Plaintiff cites to an excerpt from the 30(b)(6)

---

[2] Plaintiff also cites generally to (1) five exhibits attached to the Collins declaration, (2) a twenty-eight page exhibit attached to the Declaration of Frank Frisenda, (ex. 15), and (3) an excerpt from the deposition of Mattison, (Decl. Frisenda Ex. 10.) The Court finds nothing in these exhibits to suggest that Mattison, Dolak, or Nobbman had access to the specific, Copyrighted Dynamics Source Code at issue.

13

deposition of Robert W. Fezcko, which indicates that Mattison at some point gave a CD containing LS Shareware to an employee of Malvern's UK affiliate responsible for designing the Zetasizer Nano software. (PSGI ¶ 3; Frisenda Decl., Ex. 12 at pp. 57-62). However, there is nothing in the deposition transcript to suggest the LS Shareware had anything to do with Plaintiff's Copyrighted Dynamics Source Code. Finally, Plaintiff cites Exhibits 15 and 16 to the Frisenda Declaration in their entirety- fifty-one pages in total- which, as far as the Court can tell, are excerpts from the LS Shareware and related code. (PSGI ¶ 3.) Once again, however, these exhibits do nothing to show that the LS Shareware has anything to do with Plaintiff's Copyrighted Dynamics Source Code, or that Defendants otherwise had access to the Copyrighted Dynamics Source Code.

Absent direct evidence of copying, Plaintiff must establish that Defendants "had access <u>to the copyrighted work</u> and that the protected portions of the work are substantially similar." <u>Jada Toys, Inc., v. Mattel, Inc.</u>, 518 F.3d 628, 636-37 (9th Cir. 2008) (emphasis added). Plaintiff has failed to raise a genuine issue of disputed fact as to Defendants' access to Plaintiff's Copyrighted Dynamics Source Code.

**D.   Substantial Similarity**

1.   <u>Adverse Inference</u>

Defendants next argue that even if Plaintiff had raised a genuine issue as to access, it has presented no evidence of substantial similarity between the Zetasizer Nano source code and the Copyrighted Dynamics Source Code because it <u>does not have</u> the Zetasizer Nano source code. (Mot. 3:7-9)

14

Plaintiff does not contest these facts;[3] rather it asserts that it is entitled to an "adverse inference jury instruction" that the Copyrighted Dynamics Source Code was copied by Defendants and used to create the accused Zetasizer software code. (Opp. 16:1-6.) Plaintiff argues that an adverse inference is warranted as a sanction because Defendants failed to maintain relevant evidence on Defendant Dolak's laptop. (Opp. 19:20-24.) Plaintiff also mentions that "[a]t least one CD containing Plaintiff's customer database was admittedly destroyed by Defendant Dolak, and Kevin Mattison was revealed to have possession of a CD containing Plaintiff's trade secrets during the course of his deposition . . . ." (Opp. 8:19-22.)

Defendant counters that the retired laptops used by Dolak, Mattison, and Nobbman, and their contents have been preserved intact and reviewed for responsive documents. (Reply 13:15-14:4; Reply Ransom Decl. ¶ 5.) The CD containing the customer database was destroyed by Dolak shortly after he joined Malvern in 2003, years before the commencement of this litigation. (Frisenda Decl., Ex. 9 at 48:9-49:1.)

A court may impose sanctions as part of its power to manage an orderly and expeditious trial. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). However, imposing sanctions in response to spoilation of relevant evidence is discretionary. Glover v. BIC

---

[3] Plaintiff cites generally to Exhibits 13-16 to the Frisenda Declaration, portions of the Fezcko deposition relating to LS Shareware, and a portion of the Collins Declaration which recounts questions and answers from the deposition of another witness which he attended. (PSGI ¶ 4.) The Court need not rule on Defendants' evidentiary objections to these citations because, in any event, none of the cited evidence reflects that Plaintiff has the Zetasizer Nano source code.

15

Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). If a party destroys or fails to preserve evidence, the opposing party may move for a spoilation sanction. Id. A court may in response order the exclusion of certain evidence or permit a jury to draw an adverse inference from the destruction or spoilation of evidence. Id.

In determining whether an adverse inference sanction is appropriate, district courts within the Ninth Circuit have required the party seeking sanctions to show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." E.g., In re Napster, 462 F. Supp. 2d at 1078. Gross negligence is sufficient to satisfy the requirement of willfulness. Id.

With respect to the Dolak laptop, Plaintiff has not established that it was destroyed. With respect to the CD containing a Protein Solutions customer database, Plaintiff has not established that Dolak was under an obligation to preserve it at the time it was destroyed. The Court therefore denies Plaintiff's request for an adverse inference as a sanction for spoilation of evidence.

        2.    Local Rule 7-3

Finally, Plaintiff argues that Defendants' motion should be denied because it did not meet and confer regarding the motion in accordance with Local Rule 7-3. C.D. CAL. L.R. 7-3. Plaintiff argues that while counsel did meet and confer on June 9, 2009, it

1  was only with respect to Defendants' motion for partial summary
2  judgment regarding the screen displays and not the source code.
3      Rule 7-3 provides that "counsel contemplating the filing of
4  any motion shall first contact opposing counsel to discuss
5  thoroughly, <u>preferably in person</u>, the substance of the contemplated
6  motion and any potential resolution." <u>Id.</u> (emphasis in original).
7      Although the letter sent by Defendants' counsel with respect
8  to the meet and confer was focused on the screen displays, it was a
9  broadly-worded letter that stated "Wyatt's complaint fails as a
10 matter of law" in its entirety and requested that "Wyatt
11 voluntarily dismiss its entire complaint with prejudice." (Opp.,
12 Ex. A at p. 2.)  Plaintiff never responded to Defendants' letter,
13 nor otherwise sought to meet and confer with Defendants.  Plaintiff
14 has not suggested what, if anything, it would have done differently
15 had Defendants' letter more clearly articulated its intention to
16 file a motion for summary judgment with respect to the source code
17 underlying Claims 1 through 3.  The Court therefore finds that
18 Defendants complied with Rule 7-3 and, in any event, that any
19 failure to do so was immaterial and does not warrant denying
20 Defendants' motion.

**III. CONCLUSION**

22     Plaintiff has not "come forward with specific facts, supported
23 by admissible evidence, showing a genuine issue" with respect to
24 (1) Defendants' access to the Copyrighted Dynamics Source Code and
25 (2) substantial similarity between the alleged infringing Zetasizer
26 Nano source code and the Copyrighted Dynamics Source Code.  FED. R.
27 CIV. P. 56(e); <u>Brinson</u>, 53 F.3d at 1049.  Defendants have therefore
28 carried their burden of showing no genuine issue as to any material

17

1 fact exists with respect to Plaintiffs' copyright infringement
2 claims relating to the Copyrighted Dynamics Source Code and are
3 therefore entitled to judgment as a matter of law.  FED. R. CIV. P.
4 56(c).
5    For the foregoing reasons, the Court DENIES Plaintiff's
6 Request for Continuance Pursuant to Rule 56(f) and GRANTS
7 Defendants' Motion for Partial Summary Judgment Regarding
8 Plaintiff's Claims 1-3.
9 IT IS SO ORDERED.

Dated: September 23, 2009

DEAN D. PREGERSON
United States District Judge