Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Jennifer A. Ratner (SBN 205155)
jratner@sidley.com
Frank J. Broccolo (SBN 210711)
fbroccolo@sidley.com
Johari N. Townes (SBN 252369)
jtownes@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendants Malvern
Instruments Incorporated and David Dolak

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WYATT TECHNOLOGY CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MALVERN INSTRUMENTS INCORPORATED, a Massachusetts corporation; DAVID DOLAK, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. CV07-8298 DDP (MANx)<br><br>Assigned to: Hon. Dean D. Pregerson<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF WILLIAM BUCKLEY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(DEFENDANTS' MOTION *IN LIMINE* NO. 1)**<br><br>[Filed concurrently with the Declaration of Rollin A. Ransom in Support of Defendants' Motions *in Limine*]<br><br>Date: October 19, 2009<br>Time: 3:00 p.m.<br>Place: Courtroom 3 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on October 19, 2009, at 3:00 p.m. or as
3  soon thereafter as counsel may be heard, in Courtroom 3 in the United States
4  District Court, 312 North Spring Street, Los Angeles, California, defendants Malvern
5  Instruments, Inc. and David Dolak will and hereby do move to exclude Wyatt
6  Technology Corporation ("Wyatt") from presenting any testimony or opinions by its
7  designated damages "expert", William Buckley, or referring to, displaying or
8  attempting to convey to the jury in any manner, any testimony, exhibit, opinion,
9  argument or information relating to, or based upon, in full or in part, opinions or
10 opinion testimony of Mr. Buckley.

11 This motion is brought pursuant to Federal Rules of Evidence 702 and
12 403 on the ground that Mr. Buckley's opinion does not satisfy the "reliable principles
13 and methods" required for expert testimony, and that any limited (if any) probative
14 value of Mr. Buckley's testimony would be "substantially outweighed by the danger
15 of unfair prejudice, confusion of the issues, or misleading the jury."

16 This motion is made following the conference of counsel pursuant to
17 Local Rule 7-3, which took place on September 9, 2009.

18 This motion is based upon this Notice of Motion and Motion, the
19 attached Memorandum of Points and Authorities and Declaration of Rollin A.

1  Ransom, the record in this case, the arguments of counsel, and such other matters as
2  the Court properly may consider.
3
4  Dated:  September 28, 2009         SIDLEY AUSTIN LLP
                                      Rollin A. Ransom
5                                     Jennifer A. Ratner
                                      Frank J. Broccolo
6                                     Johari N. Townes
7
                                      By: /s/ Rollin A. Ransom
8                                         Rollin A. Ransom
                                          Attorneys for Defendants Malvern
9                                         Instruments Incorporated and David
10                                        Dolak

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. INTRODUCTION

Defendants Malvern Instruments Incorporated and David Dolak hereby move *in limine* for an order precluding Wyatt Technology Corporation ("Wyatt") from presenting any testimony or opinions by its designated damages expert, William Buckley. Defendants further move for an order instructing counsel for Wyatt and Wyatt's witnesses to not refer to, display or attempt to convey to the jury any testimony, exhibit, opinion, argument or information relating to, or based upon, in full or in part, opinions or opinion testimony of Mr. Buckley.

Most fundamentally, Mr. Buckley fails to comport with the most basic of principles respecting the calculation of a plaintiff's alleged damages: namely, plaintiff may seek only those damages that are attributable to the alleged wrongdoing. Mr. Buckley, however, fails to link Wyatt's purported damages to *any* of the specific wrongdoing alleged by Wyatt, or even to limit the damages to the segment of the market to which Wyatt concedes the alleged wrongful conduct was directed. Not only does this violate Rule 703, in that it fails to provide a reliable foundation for an expert's opinion, it poses a significant danger of confusing the jury with respect to the framework for available damages (if any). Indeed, Mr. Buckley did not even modify his analysis after the majority of Wyatt's claims were dismissed on summary judgment, including the majority of Wyatt's purported trade secrets.

In addition, Mr. Buckley's methodology is inherently unreliable because his starting point for Wyatt's purported damages – an "average invoice value" – includes invoices relating to a higher-end product sold by Wyatt that is not a ready substitute for either the DynaPro Titan (Wyatt's product) or the Zetasizer Nano (Malvern's product). This type of framework also has no basis in valid accounting principles or methods and further requires exclusion of Mr. Buckley's testimony in its entirety.

Accordingly, Mr. Buckley's opinion does not satisfy the "reliable

principles and methods" standard of Rule 702 and, in any event, any limited (if any) probative value of Mr. Buckley's testimony would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

II. <u>DISCUSSION</u>

    A.    Any Damages Attributable To The Alleged Wrongdoing Are Limited To The Protein Market.

In its complaint, Wyatt challenges only Malvern's sales of the Zetasizer Nano into the portion of the scientific market relating to the characterization of proteins (the "protein market"), contending that Malvern's alleged wrongful conduct permitted it to enter a new market in which it had previously had no presence:

> Defendant Malvern, as part of its common plan and scheme to injure and otherwise unfairly compete with Plaintiff, has infringed Plaintiff's copyrights set forth above and has used false advertising and misappropriation of Plaintiff's trade secrets *as a means to capture market share in the 'Protein Characterization Market' dominated by the DynaPro Molecular Sizing (Dynamic Light Scattering – or DLS) instruments.*

SAC ¶50 (emphasis added); *see also id.*, ¶ 51(c) (asserting that "because Malvern aspires to this same market, it is easier for them to copy Plaintiff's materials than create their own"); *id.*, ¶ 52 ("Customers who have not used previously the technique of 'dynamic light scattering' generally want 'proof of capability' of the technique and the specific instrument as applied to protein characterization . . . ."); *id.*¶ 54 ("In the case of the protein characterization market, the DynaPro dominated its market prior to Malvern's hiring of former Protein Solutions employees."); *id.* ("To capture share in the protein market, Malvern must demonstrate or communicate that their instrument can perform the same as or better than the DynaPro, as well as having the ability to provide expertise to support customers involved in protein characterization. It must

2

1  also find these customers."); *id.*, Exh. 15 (referencing purported false statements in
2  presentations titled "Protein Crystal Screening," "Zetasizer Nano Applications:
3  Measuring Absolute Protein Molecular Weight," "Protein & Biopolymer
4  Characterization," "Zetasizer Nano Applications:  Protein Characterization"); *id.* Exh.
5  16 (referencing purported false statements in presentations titled "Protein
6  Characterization – size and molecular weight in batch mode and by SEC," "Measuring
7  Absolute Molecular Weight" with specific reference that "Absolute molecular weight
8  is often of interest for determining the oligomeric state of a protein"; *id.* Exh. 17
9  (referencing purported false statements in presentations titled "Zetasizer Nano
10 Applications:  Protein Crystal Screening").

11         Wyatt's executives similarly affirmed at their depositions that Wyatt
12 challenges Malvern's sales into the protein market, contending that Malvern's alleged
13 wrongful conduct gave it an unfair advantage in entering a new market in which it had
14 (allegedly) had no presence.  Declaration of Rollin A. Ransom ("Ransom Decl."),
15 Exh. 25 (Collins Depo.) at 145:7-146:25, 194:2-9; Exh. 31 (Geof Wyatt Depo.) at
16 143:12-22, 182:18-183:9, 199:6-200:1; Exh. 30 (Cliff Wyatt Depo.) at 154:6-14,
17 172:9-18, 225:16-20; Exh. 32 (Phil Wyatt Depo.) at 386:21-387:11.  Indeed, Wyatt
18 acquired certain of the Protein Solutions assets because it had been a competitor that
19 specifically targeted the protein market whose equipment, customers and materials
20 would ostensibly complement Wyatt's.  SAC ¶¶ 26-27, 49; Ransom Decl. Exh. 30
21 (Cliff Wyatt Depo.) at 52:23-53:3, 54:13-18.

22         B.     Because Mr. Buckley's Opinions Fail To Meet The Reliability
23                Standard Of Rule 702, His Testimony Should Be Excluded.

24         "Expert evidence can be both powerful and quite misleading because of
25 the difficulty in evaluating it."  *Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579,
26 595 (1993) (internal citation/quotes omitted).  Moreover, an "added aura of reliability"
27 necessarily attaches to testimony offered by an expert witness.  *United States v.*
28 *Lumpkin*, 192 F.3d 280, 289 (2d. Cir. 1999).  This creates a "substantial danger" that

1  expert testimony will confuse and unduly prejudice the jury. *United States v. Fosher*,
2  590 F.2d 381, 383 (1st Cir. 1979).
3  Thus, under *Daubert*, courts must act as a "gatekeeper" to ensure, with
4  respect to each proposed expert witness and subject of expert opinion testimony, that
5  "the reasoning or methodology underlying the testimony is scientifically valid" and
6  "can properly be applied to the facts at issue." *DSU Med. Corp. v. JMS Co.*, 296 F.
7  Supp. 2d 1140, 1146 (N.D. Cal. 2003) (quoting *Daubert*, 509 U.S. at 592-93
8  (alteration in original)).  While the relevant factors for the Court to consider therefore
9  will depend on the specific nature of the testimony to be presented and the facts of the
10 particular case, the key is "to make certain that an expert, whether basing testimony
11 upon professional studies or personal experience, employs in the courtroom the same
12 level of intellectual rigor that characterizes the practice of an expert in the relevant
13 field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52 (1999).  Moreover,
14 expert testimony that is based on an approach contrary to law is "fatally flawed" and
15 thus unreliable and inadmissible. *See DSU Med. Corp. v. JMS Co*., 296 F. Supp. 2d
16 1140, 1148, 1156 (N.D. Cal. 2003) ("In *Daubert-Kumho* 'gatekeeper' terms, the
17 proffered expert testimony . . . relies on a legal  'principle' that is not acceptable to
18 this Court and the testimony is, to that extent, inadmissible."), *aff'd,* 471 F.3d 1293
19 (Fed. Cir. 2006).  The proponent of expert testimony must establish each of the
20 requirements for admissibility by a preponderance of the evidence. *Bourjaily v.*
21 *United States*, 483 U.S. 171, 175-76 (1987).
22 As set forth below, Mr. Buckley's report suffers from two fundamental
23 flaws with respect to his methodology that render his opinion inadmissible under
24 *Daubert* and further risk unfairly prejudicing defendants and confusing the jury.
25 **1. Mr. Buckley's Opinion is Unreliable and Prejudicial Because it**
26 **Fails to Link Wyatt's Damages To the Alleged Wrongdoing**
27 In his opinion regarding Wyatt's alleged damages, Mr. Buckley makes no
28 attempt to limit the purported damages to losses caused by the wrongdoing alleged in

4

1  the SAC.  Instead, Mr. Buckley calculates Wyatt's purported damages based upon
2  100% of Malvern's sales of the Zetasizer Nano.  Ransom Decl. Exh. 33 at 58:19-54:8.
3  Mr. Buckley makes this assumption despite Wyatt's admissions that (1) its claims
4  relate to Malvern's alleged wrongdoing in connection with the protein market (*see*
5  Section I, *supra*); and (2) "Malvern … had been in the market, the general dynamic
6  light scattering market for many, many years before Protein Solutions even existed"
7  (Ransom Decl. Exh. 25 (Collins Depo.) at 17:3-10).

8       This fundamental mistake renders Mr. Buckley's opinion inherently
9  unreliable and inadmissible.  *See*, *e.g.*, *McGlinchy v. Shell Chemical Co.*, 845 F.2d
10 802, 806-07 (9th Cir. 1988) (excluding testimony by damages expert who calculated
11 lost profits based on "gross sales", where the "causes of action specify that Shell Oil
12 defendants breached obligations and tortiously interfered with appellants' contracts
13 and business opportunities involving particular product lines and in particular overseas
14 countries and territories"); *Masterson Mktg. Inc. v. KSL Recreation Corp.*, 495 F.
15 Supp. 2d 1044, 1051 (S.D. Cal. 2007) (refusing to consider expert testimony where
16 the "purported expert[] does not offer any explanation for or means of determining
17 how those other [legitimate] factors impact revenue for the Resort vis-à-vis the use of
18 his images which calls into question plaintiff's conclusion that there is any nexus
19 between the use of his images and the KSL defendants' profits."); *Sebastian Int'l, Inc.*
20 *v. Russolillo*, No. CV 00-3476 SVW (JWJx), 2005 WL 1323127, *7 (C.D. Cal. Feb.
21 22, 2005) (excluding expert report on lost profits because it failed to demonstrate that
22 the purported lost sales "was attributable" to the alleged wrongdoing "and not other
23 causes unrelated to the alleged wrong"); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982
24 F.2d 1400, 1408 (9th Cir. 1993) (affirming district court's refusal to award damages
25 based on plaintiff's actual damages or defendants' unjust enrichment because plaintiff
26 failed to identify sales that were attributable to the infringing conduct and, instead,
27 presented evidence of its and defendant's total sales).
28      In *Lindy Pen*, for example, the plaintiff established its claim for

1 trademark infringement with respect to pens sold into a particular market – the
2 telephone order market. The district court then "gave Lindy the opportunity to prove
3 its damages under both methods [set forth in the Lanham Act]: actual damages in the
4 form of its lost profits, or if that proved too difficult, through proof of Bic's unjust
5 enrichment in the form of Bic's profits." *Lindy Pen*, 982 F.2d at 1407. However, as
6 to its alleged lost profits, Lindy submitted evidence of its "total pen sales," without
7 any breakdown by market. The district court concluded that such calculations were
8 "irreparably flawed" because Lindy had not limited the calculations to sales within the
9 accused market. *Id.* As to Bic's profits, Lindy likewise submitted evidence of Bic's
10 *total* pen sales, rather than those directed to the relevant market. The district court
11 rejected this showing, concluding that Lindy had failed to sustain its burden of
12 establishing sales attributable to the infringing conduct. *Id.* at 1408.
13       The Ninth Circuit affirmed the district court's rulings in all respects.
14 Whether attempting to establish actual damages in the form of the plaintiff's lost
15 profits (the approach undertaken by Mr. Buckley here) or monetary relief in the form
16 of the defendant's profits, the Ninth Circuit confirmed that it is the *plaintiff* that bears
17 the burden of establishing the sales *attributable to the wrongdoing* in the first instance
18 – and that simply submitting evidence of the plaintiff's or defendant's total sales of a
19 product, without reference or limitation to the market associated with the allegedly
20 wrongful conduct, fails to satisfy this burden. *Id.* (noting that "[i]t would have been
21 error for the district court to select an arbitrary percentage of total sales to represent
22 the more narrow submarket of telephone sales" and, as to defendant's profits, that the
23 plaintiff has the burden of "establishing the defendant's gross profits *from the*
24 *infringing activity* with reasonable certainty, before any burden shifts to the defendant)
25 (emphasis added); *see also Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("It
26 was not enough to show [defendant's] gross revenues from the sale of everything he
27 sold, which is all, really, that [plaintiff] did. If General Motors were to steal your
28 copyright and put it in a sales brochure, you could not just put a copy of General

6

1  Motors' corporate income tax return in the record and rest your case for an award of
2  infringer's profits.").
3     The same principles apply here.  Like the plaintiff in *Lindy Pen*, Mr.
4  Buckley has failed to make *any* attempt to limit his damages calculation to the market
5  at which the purportedly wrongful conduct was directed.[1]  Under *Lindy Pen*, however,
6  this is indisputably Wyatt's burden, as Wyatt is entitled to recover only those damages
7  that are attributable to the wrongdoing. *See, e.g.*, *Lindy Pen*, 982 F.2d at 1408-09; Cal.
8  Civ. Code § 3426.3(a) ("A complainant may recover damages for the actual loss
9  *caused by misappropriation*" or "for the unjust enrichment *caused by the*
10 *misappropriation* that is not taken into account in computing damages for actual
11 loss.") (emphasis added); *Coastal Abstract Service, Inc. v. First American Title Ins.*
12 *Co.*, 173 F.3d 725, 729 (9th Cir. 1999) (reversing for new trial on damages because "it
13 is not possible to isolate the damages properly attributable to the one statement
14 actionable under the Lanham Act" versus the two non-actionable statements).  Mr.
15 Buckley's failure to even attempt to provide a damages calculation that links the
16 purported damages to the alleged wrongdoing is directly contrary to established law,
17 and renders his opinion inherently unreliable pursuant to *Daubert*.
18    Moreover, any probative value of Mr. Buckley's testimony would be
19 "substantially outweighed by the danger of unfair prejudice, confusion of the issues,
20 or misleading the jury" pursuant to Rule 403.  Permitting Mr. Buckley to testify as a

---

[1] Mr. Buckley's opinion is rendered even more speculative because he assumes that Wyatt would have gained 100% of the dynamic light scattering sales achieved by Malvern.  Not only does this assumption defy credibility, it is contrary to the undisputed facts that (i) there are a number of competitors who offer competing DLS instruments, many of whom have done business with Wyatt's (and Malvern's) customers in the past; (ii) Wyatt concedes that certain of the sales achieved by Malvern were achieved because Malvern offers functionality that is *not* offered by Wyatt (but which *is* offered by other competitors); and (iii) certain customers who are price sensitive would not purchase from Wyatt because Wyatt's prices are typically the highest in the field.  Defendants' [Proposed] Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendants' Motion for Partial Summary Judgment on Plaintiff's Non-Copyright Claims (filed on June 29, 2009), Fact Nos. 28 and 39.

damages calculation based upon 100% of Malvern's sales, rather than those to customers within the protein market, creates a significant danger of misleading the jury into believing that they may award damages significantly higher than those authorized by the law. At most, Wyatt is only entitled to recover based on sales made into the protein market, a calculation that Mr. Buckley has not undertaken. Accordingly, both under *Daubert* and Rule 403, the Court should preclude Mr. Buckley from testifying at trial.

### 2. Mr. Buckley's Calculation of an "Average Invoice Value" That Includes A Non-Substitute Product Renders his Opinion Speculative, Unreliable and Inadmissible

A separate and independent reason for excluding Mr. Buckley's testimony is that the starting point of Mr. Buckley's purported methodology – an "average invoice value" – also renders his methodology inherently unreliable and inadmissible under *Daubert*. Mr. Buckley's purported "methodology" was to apply an "average invoice value" associated with certain Wyatt sales to each sale of the Zetasizer Nano. Ransom Decl. Exh. 11 at ¶ 12. However, Mr. Buckley's "average invoice value" is inherently unreliable and speculative because it is based on sales of both the DynaPro instrument (the DynaPro Titan) that competes with Malvern's Zetasizer Nano *and* a far more expensive Wyatt instrument (the DynaPro Plate Reader) (Ransom Decl. Exh. 33 at 96:6-22) that is not a ready substitute for either the DynaPro or the Zetasizer Nano. For Mr. Buckley's methodology to be reliable, it must use an apples to apples comparison, *i.e.*, substitute products in the market. To that end, the Zetasizer Nano and the DynaPro Titan are competitive instruments that operate at a similar throughput. The Plate Reader, however, operates at a much higher throughput than either the Zetasizer Nano or the DynaPro Titan (and therefore is sold at a substantially higher price). SAC ¶ 28; Ransom Decl. Exh. 23 at 282-4 (reflecting average selling price for DynaPro Titan as $34,381) and at 282-7 (reflecting average selling price for Plate Reader as $71,013); *id.*, Exhs. 20 and 21. By including a non-

1  substitute, higher priced instrument as part of his "average invoice value," Mr.
2  Buckley has failed to set forth a valid methodology for the calculation of damages.
3  　　　　An expert's testimony must "rest[] on reliable foundation" (*Daubert*, 509
4  U.S. at 597) and "the party proffering the evidence must explain the expert's
5  methodology and demonstrate in some objectively verifiable way that the expert has
6  both chosen a reliable scientific method and followed it faithfully" (*Daubert*, 43 F.3d
7  at 1319 n.11).  In this case, Mr. Buckley's failure to use the purchase price of the
8  DynaPro Titan – the purported substitute product for the Zetasizer Nano – renders his
9  opinion inadmissible.  *See*, *e.g.*, *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 476 F.
10 Supp. 2d 1143, 1155-56 (N.D. Cal. 2007) (excluding expert's testimony on damages
11 in part based on expert's reliance on sales to irrelevant markets, sales of non-
12 infringing products and use of a starting value that was not attributable to the value of
13 the infringing product).
14 　　　　This fundamental error also warrants exclusion of Mr. Buckley's
15 testimony in its entirety under Rule 703 and 403.

16 III.    CONCLUSION
17 　　　　For the foregoing reasons, defendants respectfully request that this Court
18 grant its motion *in limine* and exclude Mr. Buckley's testimony in its entirety.

Dated:  September 28, 2009

SIDLEY AUSTIN LLP
Rollin A. Ransom
Jennifer A. Ratner
Frank J. Broccolo
Johari N. Townes

By: /s/ Rollin A. Ransom
　　　Rollin A. Ransom
　　　Attorneys for Defendants Malvern
　　　Instruments Inc. and David Dolak

9