Rollin A. Ransom (SBN 196126)
rransom@sidley.com
Jennifer A. Ratner (SBN 205155)
jratner@sidley.com
Frank J. Broccolo (SBN 210711)
fbroccolo@sidley.com
Johari N. Townes (SBN 252369)
jtownes@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendants Malvern
Instruments Incorporated and David Dolak

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WYATT TECHNOLOGY CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MALVERN INSTRUMENTS INCORPORATED, a Massachusetts corporation; DAVID DOLAK, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  CV07-8298 DDP (MANx)<br><br>Assigned to: Hon. Dean D. Pregerson<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DAVID CANNELL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(DEFENDANTS' MOTION *IN LIMINE* NO. 2)**<br><br>[Filed concurrently with Declaration of Rollin A. Ransom in Support of Defendants' Motions *in Limine*]<br><br>Date:     October 19, 2009<br>Time:    3:00 p.m.<br>Place:   Courtroom 3 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on October 19, 2009, at 3:00 p.m. or as
3  soon thereafter as counsel may be heard, in Courtroom 3 in the United States
4  District Court, 312 North Spring Street, Los Angeles, California, defendants Malvern
5  Instruments, Inc. and David Dolak will and hereby do move to exclude certain
6  testimony of David Cannell, Ph.D, on the grounds that:

7      (1)   certain of the experiments he conducted cannot be repeated, tested,
8  or verified, and thus do not satisfy the "reliable principles and methods" requirement
9  of Federal Rule of Evidence 702;

10      (2)   he does not have sufficient expertise in the hardware or software
11  capabilities of the Zetasizer Nano or DynaPro to explain or interpret certain of the
12  experiments he conducted on those instruments;

13      (3)   he is not qualified to provide expert testimony concerning
14  consumer perceptions, including what reaction "prospective purchaser[s]" of a light
15  scattering instrument would have to web presentations published by Malvern;

16      (4)   he has never shopped for a light scattering instrument and therefore
17  lacks personal knowledge to testify as to whether, as a prospective customer, he would
18  have found Malvern's web presentations misleading.

19      This motion is made following the conference of counsel pursuant to
20  Local Rule 7-3, which took place on September 9, 2009.

21      This motion is based upon this Notice of Motion and Motion, the
22  attached Memorandum of Points and Authorities and Declaration of Rollin A.

23

24

25

26

27

28

1 Ransom, the record in this case, the arguments of counsel, and such other matters as
2 the Court properly may consider.

3

4 Dated: September 28, 2009           SIDLEY AUSTIN LLP
                                      Rollin A. Ransom
5                                     Jennifer A. Ratner
                                      Frank J. Broccolo
6                                     Johari N. Townes

7

8                                     By: /s/ Rollin A. Ransom
                                          Rollin A. Ransom
9                                         Attorneys for Defendants Malvern
10                                        Instruments Incorporated and David
                                          Dolak
11

12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Wyatt Technology Corp. has retained David Cannell, Ph.D., to testify concerning various topics including: (1) experimental comparisons of the parties' respective light scattering instruments (*i.e.*, Malvern's Zetasizer Nano and Wyatt's DynaPro); and (2) whether statements in Zetasizer Nano web presentations were misleading. As discussed below, much of Dr. Cannell's proposed testimony fails to meet the requirements of Fed. R. Evid. 702, and should therefore be excluded.

<u>First</u>, Dr. Cannell should be precluded from testifying about the experiments he conducted on an unspecified antibody using a Zetasizer Nano and DynaPro. Working with a Wyatt scientist, Dr. Cannell ran a series of tests on this unspecified antibody using each instrument, and proposes to opine about the nature and meaning of the results. He cannot, however, identify the substance he used, much less provide any information regarding its origin or its properties. Because his experiments on the "antibody" therefore cannot be repeated or otherwise tested or verified, they fail to meet the reliability standard of Federal Rule of Evidence 702.

<u>Second</u>, Dr. Cannell's proposed expert testimony concerning these antibody experiments should also be excluded because he does not have sufficient expertise in the hardware or software capabilities of either the Zetasizer Nano or the DynaPro to interpret or explain the results. Indeed, Dr. Cannell has acknowledged that interpretation of the data related to the antibody experiments requires extensive knowledge of the instruments and their respective software programs, and has further admitted that he does not have *any* such knowledge. Dr. Cannell's experience does not meet the standard of Federal Rule of Evidence 702, which permits expert testimony only from a witness who is "qualified … by knowledge, skill, experience, training, or education." Where, as here, scientific conclusions rest on the *ipse dixit* of the expert witness, they do not satisfy the "reliable principles and methods" requirement of Federal Rule of Evidence 702.

1          <u>Third</u>, Dr. Cannell is not competent to testify concerning whether
2 Malvern's Zetasizer Nano web presentations were misleading.  Dr. Cannell has no
3 expertise that qualifies him to opine as to consumer perceptions, including whether
4 customers who were actually interested in purchasing light scattering instruments
5 were likely to be misled by statements in Zetasizer Nano web presentations.  Further,
6 while the perceptions of a significant sample of consumers may be relevant to Wyatt's
7 false advertising claim, Dr. Cannell is not now – and has never been – a consumer of
8 commercially-manufactured light scattering instruments.  Indeed, he has *never*
9 purchased such an instrument, and has conceded that he was not considering such a
10 purchase when he viewed the presentations.  A witness (expert or otherwise) cannot
11 offer opinions that are not based on personal knowledge, and therefore cannot testify
12 as a consumer when he is not, in fact, a consumer.  Dr. Cannell's testimony in this
13 regard should therefore be excluded as well.

## II. DISCUSSION

15          "Expert evidence can be both powerful and quite misleading because of
16 the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579,
17 595 (1993) (internal citation/quotes omitted).  Moreover, an "added aura of reliability"
18 necessarily attaches to testimony offered by an expert witness. *United States v.*
19 *Lumpkin*, 192 F.3d 280, 289 (2d. Cir. 1999).  This creates a "substantial danger" that
20 expert testimony will confuse and unduly prejudice the jury. *United States v. Fosher*,
21 590 F.2d 381, 383 (1st Cir. 1979).

22          Thus, under *Daubert*, courts must act as a "gatekeeper" to ensure, with
23 respect to each proposed expert witness and subject of expert opinion testimony, that
24 "the reasoning or methodology underlying the testimony is scientifically valid" and
25 "can properly be applied to the facts at issue." *DSU Med. Corp. v. JMS Co.*, 296 F.
26 Supp. 2d 1140, 1146 (N.D. Cal. 2003) (quoting *Daubert*, 509 U.S. at 592-93
27 (alteration in original)).  While the relevant factors for the Court to consider therefore
28 will depend on the specific nature of the testimony to be presented and the facts of the

particular case, the key is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52 (1999). The proponent of expert testimony must establish each of the requirements for admissibility by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

> **A.   Because The Results Of Dr. Cannell's Antibody Experiments Cannot Be Tested Or Verified, His Related Testimony Should Be Excluded.**

Federal Rule of Evidence ("FRE") 702 permits expert testimony only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Testimony of an expert witness must be "based on objective, *verifiable* evidence." *Domingo v. T.K., M.D.*, 289 F.3d 600, 607 (9th Cir. 2002) (emphasis added).

A "key question" in determining whether scientific knowledge is reliable is "whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. An expert's methodology must "provide for … peer review or scrutiny which would increase the 'likelihood that substantive flaws in methodology will be detected'… [and] allow [the] Court to consider the 'known rate of error or potential for error' associated with the methods he employed for reaching them." *Hutchinson v. Hamlet*, No. C 02-974 JSW (PR), 2006 WL 1439784, *4 (N.D. Cal. May 23, 2006) (quoting *Daubert*, 509 U.S. at 593-94). When an expert's testimony is based on scientific experiments that cannot be repeated, tested, and verified, it amounts to "*ipse dixit*" opining, and is properly excluded. *See Domingo*, 289 F.3d at 607; *accord Colony Holdings, Inc. v. Texaco Refining & Mktg, Inc.*, No. SACV0021DOC(MLGX), 2001 WL 1398403, *4 (C.D. Cal. Oct. 29, 2001). Particularly where, as here, an expert develops his opinion in the context of litigation, he "must explain *precisely* how [he] went about reaching

1  [his] conclusions … in sufficient detail that the district court [can] determine if the
2  research was scientifically valid."[1]  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d
3  1311, 1319, (9th Cir. 1995) (emphasis added) (citations omitted); *accord Avila v.*
4  *Willits Envtl. Remediation Trust*, Nos. C 99-3941 SI, C 01-266 SI, C 06-2555 SI, 2009
5  WL 1813125, *4 (N.D. Cal. Jun. 18, 2009).

6        Dr. Cannell ran experiments on a Zetasizer Nano and a DynaPro using
7  two substances.  *See* Declaration of Rollin A. Ransom ("Ransom Decl."), Exh. 24 at
8  19:5-17.  The first was a protein called bovine serum album, or "BSA."  *Id.* at 19:5-
9  12.  Then, wishing to measure a substance "that had a significant amount of
10 aggregation," he also ran experiments using some unidentified "sample that Wyatt had
11 which they knew had already undergone significant aggregation based on their own
12 measurements."  *Id.* at 19:15-24, 20:14-23.  Dr. Cannell believes the substance was
13 some type of antibody, but cannot identify the particular antibody or how the sample
14 was prepared or previously measured or used by Wyatt.  *Id.* at 19:15-20:16.

15       Dr. Cannell then performed experiments on this unknown antibody using
16 both a Zetasizer Nano and a DynaPro.  *See* Ransom Decl. Exh. 12 at 3.  Based on
17 these experiments, he seeks to opine about whether the two instruments can perform
18 the same functions and reach the same results using the same samples.  *See id.*  In
19 particular, Dr. Cannell intends to opine about the relative performance of the two
20 instruments with respect to substances that purportedly have "a significant amount of
21 aggregation."  However, because Dr. Cannell does not even know what substance he
22 used in his experiments – and likewise does not know the origin, prior use, conditions
23 of maintenance, actual degree of aggregation (if any), or *any other* material fact
24 regarding that substance – Dr. Cannell has made it impossible for defendants (or

---

[1] The Ninth Circuit has cautioned that "[o]ne very significant fact to be considered is whether the expert[ is] proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert*, 43 F.3d at 1317.

4

1 anyone) to repeat or critique his antibody experiments.

2 Where the details of an experiment are not known, "there is no proof that
3 [the expert's] methods of evaluation have been or even can be tested." *Colony*
4 *Holdings*, 2001 WL 1398403 at *3; *accord O'Hanlon v. Matrixx Initiatives*, No. CV
5 04-10391 AHM (JTLx), 2007 WL 2446496, *3-4 (C.D. Cal. Jan. 3, 2007) (granting
6 motion *in limine* to exclude testimony by expert who could not identify the amount of
7 chemicals used in his experiments). Here, key details of Dr. Cannell's experiment are
8 unknown, and defendants are powerless to evaluate or test his methods. Accordingly,
9 he should be precluded from testifying as to experiments or results concerning the
10 unspecified antibody.

11 **B. Dr. Cannell's Lack Of Experience With The Zetasizer Nano And**
12 **DynaPro Is An Additional Basis For Excluding His Testimony**
13 **Concerning The Antibody Experiment Results.**

14 FRE 702 "places limits on the areas of expertise and the methodologies
15 of analysis which may be covered and used by an expert witness." *DSU Med. Corp.*,
16 296 F. Supp. 2d at 1146. Specifically, it permits expert testimony only from a witness
17 who is "qualified as an expert by knowledge, skill, experience, training, or education."
18 Fed. R. Evid. 702. General qualifications as an expert are not sufficient, however.
19 Rather, "the opinion must be an *expert* opinion (that is, an opinion informed by the
20 witness' expertise) rather than simply an opinion broached by a purported expert."
21 *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) (emphasis added)
22 (citations omitted). "Whether a witness is qualified as an expert can only be
23 determined by comparing the area in which the witness has superior knowledge, skill,
24 experience, or education with the subject matter of the witness's testimony." *Id.*
25 (citations omitted); *accord Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D.
26 Mass. 1995) (an expert witness "must be qualified in the specific subject for which his
27 testimony is offered").

28 Dr. Cannell intends to testify about differences he observed in

5

experiments run on the unspecified antibody using a Zetasizer Nano and a DynaPro. *See* Ransom Decl. Exh. 12 at 3.  In particular, he plans to opine as to differences in the results produced by the two instruments.  *See id.*  However, as Dr. Cannell also acknowledged, "if you want to really understand [the results of the antibody experiments], you have to understand everything about your instrument, [and] everything about the software…."  Ransom Decl. Exh. 24 at 79:20-25.

Notwithstanding this acknowledgement, Dr. Cannell conceded in his deposition that he does <u>not</u> have expertise concerning the operation of the hardware or the software for either of these instruments, and that he therefore could not "really understand" the results of these experiments.  *Id.* at 79:22, 80:2-81:5,144:15-145:12.  Indeed, Dr. Cannell was candid in explaining the reasons that he did not "really understand" these results:  he has <u>no</u> experience conducting experiments with a Zetasizer Nano or a DynaPro, and has never used either instrument in his regular work.  *Id.* at 10:13-16, 11:9-19, 12:17-22, 89:1-3.  Dr. Cannell could not even recall <u>seeing</u> a Zetasizer Nano prior to his work in connection with this case.  *Id.* at 11:2-8.  In addition to his lack of hands-on experience, he has received <u>no</u> training on the use of the Zetasizer Nano, had never been trained on a DynaPro prior to his work on this case, and does not have any specialized theoretical knowledge of either instrument.[2]  *Id.* at 10:17-11:1, 11:17-19, 12:23-25, 16:23-17:10, 18:18-21.

While Dr. Cannell may have expertise in some area of physics, it is not in the performance of the instruments and software at issue here, at least as they relate to the tests on the unspecified antibody supplied by Wyatt.  His testimony comparing and interpreting results of the "antibody" experiments on the Zetasizer Nano and DynaPro should therefore be excluded.

---

[2] Dr. Cannell does not even know what Zetasizer Nano and DynaPro models were used in the experiments he conducted in connection with this lawsuit—despite acknowledging that different instrument models have different capabilities and specifications.  *See* Ransom Decl. Exh. 24 at 7:17-8:14, 9:21-24, 13:1-14:9, 14:17-18:21.

**C.     Dr. Cannell's Testimony Regarding Malvern's Web Presentations, And Whether They Are Misleading, Should Be Excluded**

To prevail on its claim for false advertising under section 43(a) of the Lanham Act, Wyatt must show (among other things) that the statements at issue actually deceived, or have the tendency to deceive, a substantial segment of the targeted audience. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Typically plaintiffs utilize consumer surveys to evidence whether a statement is misleading. *See, e.g.*, *id.*; *Walker & Zanger, Inc. v. Paragon, Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (noting that "plaintiff must produce evidence, usually in the form of market research or consumer surveys, showing exactly what message ordinary consumers perceived").

Here, however, Wyatt seeks to establish that Malvern's web presentations were misleading through the testimony of Dr. Cannell. In his report, Dr. Cannell explained that he "spent some time examining" two web seminars on Malvern's website. Ransom Decl. Exh. 12 at 3. He claims to have "attempt[ed] to examine the information presented in the manner that [he] would likely do before purchasing an instrument." *Id.* After concluding that data presented in the web presentations were taken with a DynaPro (not a Zetasizer Nano), Dr. Cannell opines that "[a]s a prospective purchaser, … the data … would have had a strong positive influence on [his] decision to purchase a Zetasizer." *Id.*

**1. Dr. Cannell Cannot Testify as to Consumer Perceptions**

Under FRE 702, expert testimony is allowed only by someone who is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To provide expert testimony concerning consumer perceptions, then, an expert must have some knowledge, skill, experience, training, or education *related* to consumer perceptions. *Id.*; *Hackett v. Procter & Gamble Co.*, No. 06cv2272 WQH (WMc), 2008 WL 4646049, *2 (S.D. Cal. Oct. 17, 2008) (barring expert testimony by a chemist regarding consumer perceptions); *Brighton Collectibles, Inc. v. Renaissance*

*Group Int'l*, No. 06-CV-1115 H(POR), 2008 WL 5500659, *3 (S.D. Cal. May 13, 2008) (barring expert testimony concerning likelihood of confusion where proffered expert had a background in marketing but no particular qualifications related to consumer perception); *Starbucks Corp. v. Lundberg*, CV No. 02-948-HA, 2005 WL 6036699, *5-6 (D. Or. May 25, 2005) (barring expert testimony by someone who was "not an expert in consumer perception").

*Starbucks* is illustrative. There, the proffered expert was a founder of a coffee shop with specialized knowledge about the regional coffee market. *Starbucks*, 2005 WL 6036699, at *5. She planned to opine regarding the likelihood of confusion between the parties' trade dresses. *Id.* The court barred her from providing expert testimony, because although she had "specialized knowledge about the coffee business in general," she was not "an expert in consumer perceptions." *Id.*

Dr. Cannell is likewise not an expert in consumer perceptions. His "knowledge, skill, experience, training, [and] education" relate solely to particular topics in physics. *See* Ransom Decl. Exh. 12 at 6-16 (CV of David S. Cannell) . As in *Starbucks*, any specialized knowledge he has about physics does not make him an expert in consumer perceptions. Accordingly, his testimony concerning whether Malvern's web presentations were likely to mislead consumers should be excluded.

## 2. Dr. Cannell Cannot Testify as to His Own Opinions of the Malvern Presentations

In addition to his proposed expert testimony concerning consumer perceptions generally, Plaintiff seeks to admit testimony by Dr. Cannell concerning his own perceptions of Malvern's web presentations. Dr. Cannell claims that he "attempt[ed] to examine the information presented in the manner that [he] would likely do before purchasing an instrument" and can therefore opine as to how he "would" have perceived the presentations "[a]s a prospective purchaser"—including that the statements at issue "would have had a strong positive influence on [his] decision to purchase a Zetasizer." Ransom Decl. Exh. 12 at 3.

Dr. Cannell acknowledged that, at the time he reviewed the web presentations at issue, he was not "in the market for a light scattering instrument." Ransom Decl. Exh. 24 at 105:13-106:2.  In fact, Dr. Cannell has never *purchased* a light scattering instrument (*id.* at 86:6-8, 91:12-16) and does not *own* a commercially-produced light scattering instrument (*id.* at 89:1-3).  Because he was not a prospective consumer of the Zetasizer Nano when viewing Malvern's presentations (or at any other time), there is no foundation for his testimony about how he "would" perceive the presentations as a "prospective purchaser".

Dr. Cannell also has no basis to testify as to whether Malvern's educational and marketing materials conform with industry standards.  Although he has never shopped for a light scattering instrument – and offers no basis for concluding that he has *any* experience evaluating or comparing promotional materials respecting such instruments – he posits that Malvern's presentations constituted "deception," that "[s]uch deception is exceedingly rare in any of the hard sciences," and that he "ha[s] never encountered anything like this." Ransom Decl. Exh. 12 at 4. Dr. Cannell's scientific career does not provide a basis for permitting him to testify regarding promotional practices in the light scattering industry, or whether Malvern's educational and marketing materials do or do not meet that standard.

Opinion testimony must have a basis in the witness' experience.  *See Contessa Food Prods, Inc. v. Lockpur Fish Processing Co.*, Nos. CV 98-8218 NM (SHx), 99-4783 NM (SHx), 2003 WL 25778704, *5-7 (C.D. Cal. Jan. 29, 2003); *see also Daubert*, 509 U.S. at 594-595 (requiring expert testimony to rest on a reliable foundation, rather than being based upon subjective beliefs or speculation); Fed. R. Evid. 602 ("[a] witness may not testify to a matter unless … the witness has personal knowledge of the matter").  In the false advertising context, testimony about whether consumers were deceived by a statement typically comes directly from the consumers themselves, or from survey data reflecting those consumers' opinions.  *See Southland Sod*, 108 F.3d at 1140; *Univision Music LLC v. Banyan Entm't*, No. CV 04-9242 DSF

(CTx), 2004 WL 5574359, *3 (C.D. Cal. Nov. 15, 2004).  In *Contessa*, for example, the plaintiff sought to use the testimony of one of its executives to demonstrate the misleading effects of the defendant's statements.  2003 WL 25778704, at *6.  The court held that such testimony was inadmissible because the executive had no basis to testify as to how consumers reacted to the allegedly false statements.  *Id.* at *6-7.

Dr. Cannell has *never* been a prospective customer of the Zetasizer Nano, and certainly was not one at the time he viewed Malvern's web presentations.  His testimony concerning how he "would" have perceived the presentations "[a]s a prospective purchaser" and how Malvern's presentations compare to industry standards is pure speculation.  Accordingly, it should be excluded.

## III. CONCLUSION

In sum, Dr. Cannell's proposed expert testimony concerning antibody experiments by Dr. Cannell is inadmissible, both because he failed to conduct experiments in a reliable and verifiable way, and because he lacks expertise in the instruments about which he intends to opine.  In addition, he is not qualified to provide expert testimony concerning whether Malvern's web presentations were misleading, since is not an expert in consumer perceptions and (never having shopped for a commercial DLS instrument) lacks personal knowledge of how he would perceive the presentations if he were a consumer.  Accordingly, he should be precluded from testifying as to each of these subjects.

Dated:  September 28, 2009

SIDLEY AUSTIN LLP
Rollin A. Ransom
Jennifer A. Ratner
Frank J. Broccolo
Johari N. Townes

By: /s/ Rollin A. Ransom
Rollin A. Ransom
Attorneys for Defendants Malvern Instruments Incorporated and David Dolak