UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WYATT TECHNOLOGY CORPORATION, a California corporation, | ) ) | CASE NO.: CV 07-8298 ABC (RZx) |
| | ) | ORDER RE: ATTORNEY FEES AND COSTS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MALVERN INSTRUMENTS, INCORPORATED, a Massachusetts Corporation; DAVID DOLAK, an individual, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Defendants Malvern Instruments, Inc. and David Dolak (together "Malvern") filed a motion on February 18, 2010, for attorney's fees and costs following the stipulated final judgment in this matter. Plaintiff Wyatt Technology Corp. ("Wyatt") initially failed to timely oppose the motion, but the Court granted its ex parte application for an extension of time to do so, and it filed its opposition on March 10, 2010.  Malvern replied on March 15, 2010.  The Court previously took the matter under submission without a hearing.  Fed. R. Civ. P. 78; Local Rule 7-15.  Upon consideration of the parties' papers and the case file, the Court GRANTS IN PART and DENIES IN PART the motion.

## I.   BACKGROUND[1]

Wyatt filed its initial complaint on December 21, 2007, and quickly amended it on January 11, 2008.  The First Amended Complaint ("FAC") asserted claims for copyright infringement, trade secret misappropriation, false advertising, interference with prospective economic advantage, unfair competition and an accounting.  The Court granted in part a motion to dismiss the FAC because Wyatt failed to identify how Malvern's products infringed Wyatt's copyrights.  Wyatt filed the Second Amended Complaint ("SAC") on April 17, 2008, which included the same claims, but ballooned to fifty-two pages, 187 paragraphs of allegations, and 150 pages of exhibits.

The parties then engaged in a year-long contentious discovery battle, much of which was prolonged by Wyatt.  For instance, the parties engaged in extensive meet-and-confer efforts over Wyatt's delayed disclosure of its alleged trade secrets and Malvern eventually had to file two motions to compel Wyatt to comply with its discovery obligations.  And even that compliance was insufficient, precipitating the Court to impose discovery sanctions to limit the introduction of certain evidence at trial because it had been inadequately provided during discovery.  (See Docket No. 324 at 21—23, 25, 40—47.)

Malvern eventually filed three separate motions for summary judgment.  On July 29 and September 23, 2009, the Court granted summary judgment on all but one of Wyatt's claims of copyright infringement and interference with prospective economic advantage, and on many of Wyatt's identified trade secrets.  Just before trial was to

---

[1]Malvern has filed objections to the declaration of Wyatt's counsel.  The Court has considered those objections and has not relied on any inadmissible evidence in ruling on the instant motion.

commence, Malvern filed fourteen motions _in limine_ to challenge items and categories of evidence it anticipated Wyatt would introduce at trial.  In a lengthy opinion, the Court granted nearly all of those motions.  Based on that ruling, Wyatt conceded that its claims could no longer survive at trial and the parties stipulated to final judgment in Malvern's favor on all of Wyatt's claims.

Malvern filed the instant motion, and, as mentioned above, Wyatt initially failed to oppose it.[2]  It then sought an extension of time, offering a paper-thin excuse that this motion was somehow bound up with a separate pending request for discovery sanctions; the Court found Wyatt's position "simply not credible."  (Docket No. 352 at 1.) Nevertheless, the Court granted Wyatt's belated request for a brief extension to file its opposition.  What was filed, however, can hardly be called an opposition.  Continuing its pattern of filing briefs that make little sense and do not respond in any meaningful way to the pertinent issues, Wyatt's opposition consisted mainly of twenty-one consecutive pages of verbatim quotes from prior briefs, pleadings, and court orders, and contained only the most vague and conclusory analysis of any of the factual or legal issues raised by Malvern. This is particularly troubling, given that Wyatt justified its request for leave to file its late opposition with the claim that it would "present[] meritorious factors for the Court's just consideration of Defendants' attorney['] s fees request."  (Docket No. 349, Frisenda Decl. ¶ 10.)  Rather than presenting "meritorious factors" to defeat an award of attorney's fees, Wyatt failed to even mention — let alone

---

[2]This was not Wyatt's first failure to meet filing deadlines. Wyatt filed its oppositions to Malvern's first two motions for summary judgment late.  (Docket No. 164 at 2 n.1.)

1  oppose — the reasonableness of Malvern's fee request or Malvern's

2  entitlement to costs.

3      Malvern claims reasonable fees in the amount of $1,709,871

4  pursuant to several statutory provisions as the prevailing party in

5  this litigation and seeks costs of $188,049.38.  Malvern also seeks

6  fees of $68,602.50 and costs of $7,281.06 for work spent on the fees

7  motion.  Despite Wyatt's inadequate opposition, the Court has

8  considered the merits of Malvern's motion as discussed below.

9  **II.  LEGAL STANDARD**

10      "[T]he fee applicant bears the burden of establishing entitlement

11  to an award and documenting the appropriate hours expended and hourly

12  rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  Once the

13  moving party demonstrates entitlement to fees, the Court must

14  determine the reasonable amount of fees by calculating the "lodestar,"

15  which is the number of hours reasonably spent multiplied by a

16  reasonable hourly rate.  Id. at 433; Moreno v. City of Sacramento, 534

17  F.3d 1106, 1111 (9th Cir. 2008); Camacho v. Bridgeport Fin., Inc., 523

18  F.3d 973, 978 (9th Cir. 2008).  The lodestar amount is also the

19  touchstone for reasonable fees under California law.  See Graham v.

20  DaimlerChrysler Corp., 34 Cal. 4th 553, 579 (2004).  The lodestar is

21  presumed to provide reasonable fees and no enhancements are permitted

22  based on factors subsumed within the lodestar calculation.  Perdue v.

23  Kenny A. ex rel. Winn, No. 08-970, slip op. at 7—8, 2010 WL 1558980,

24  at *6—7 (2010).[3]

25

26      [3]If any adjustments are to be made to the lodestar, the Court
   might consider the following factors:

27

28          (1) the time and labor required, (2) the novelty
                                        (continued...)

4

**III. DISCUSSION**

    **A.   Entitlement to Fees**

    Malvern seeks fees under the Copyright Act, 17 U.S.C. § 505, the Lanham Act, 15 U.S.C. § 1117, and the California Trade Secrets Act, 3426.4.  The Court concludes that Malvern has satisfied the requirements of each statute to demonstrate entitlement to fees in this case.[4]

_____

    [3](...continued)
and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales v. City of San Rafael, 96 F.3d 359, 363–64 & n.8 (9th Cir. 1996) (quoting Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)), amended by 108 F.3d 981, 981 (9th Cir. 1997).  Malvern does not argue that any of these factors warrants an adjustment of the lodestar amount.

    [4]Although the statutes apply to separate claims, Malvern argues that all the claims are "inextricably intertwined."  See Love v. Mail on Sunday, No. CV 05-7798 ABC (PJWx), 2007 WL 2709975, at *3 (C.D. Cal. Sept. 7, 2007).  But that standard is high; the claims must be "so inextricably intertwined that even an estimated adjustment would be meaningless."  Gracie v. Gracie, 217 F.3d 1060, 1070 (9th Cir. 2000).  Malvern has itself apportioned fees to different claims, indicating that the claims are not so intertwined that apportionment would be impossible.  Nevertheless, because the Court finds that Malvern is entitled to fees under each of the pertinent statutes, the Court need not attempt to separate the fees for each claim.  Moreover, Malvern's counsel has attempted to eliminate work attributable to non-fee-generating claims of intentional interference with prospective economic advantage, unfair competition, and an accounting.  (Ransom Decl. ¶ 31.)  To the extent any residual work on the non-fee-

                                                              (continued...)

1     1. <u>Copyright Act</u>

2   The Court granted summary judgment to Malvern on all but one of

3 Wyatt's copyright claims, and granted summary judgment as to damages

4 on the remaining claim.  Wyatt ultimately abandoned the claim entirely

5 by omitting it from the Final Pretrial Conference Order.  Malvern has

6 apportioned $490,466.41 in fees related to the defense of these

7 claims.

8   Under § 505 of the Copyright Act, the Court may award "a

9 reasonable attorney's fee to the prevailing party as part of the

10 costs."  17 U.S.C. § 505.  Some of the factors that the Court

11 considers are: "'frivolousness, motivation, objective unreasonableness

12 (both in the factual and in the legal components of the case) and the

13 need in particular circumstances to advance considerations of

14 compensation and deterrence.'"  <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S.

15 517, 534 n.19 (1994).  Ultimately, the question is whether a

16 successful defense of the action furthered the purposes of the

17 Copyright Act.  <u>Id.</u> at 527.

18   These factors weigh in favor of awarding fees here.  Malvern

19 prevailed on these claims at the summary judgment stage because

20 Wyatt's responses to Malvern's two summary judgment motions included

21 little reasonable factual or legal basis and, in fact, bordered on the

22 frivolous.  For instance, the Court was compelled to note at the

23 outset of its opinion in conjunction with Malvern's first motion for

24

25     [4](...continued)

26 generating claims remains subsumed in the lodestar amount, the Court
finds that work to be "inextricably intertwined" with the fee-

27 generating claims.  <u>See</u> <u>Love</u>, 2007 WL 2709975, at *7 (finding
interference and unfair competition claims inextricably intertwined

28 with copyright and trademark claims).

summary judgment on the copyright claims that "Plaintiff's Opposition includes nearly no explanation; while some of Plaintiff's evidence supports access (which Defendants do not contest in this motion), almost none of it addresses substantial similarity, and Plaintiff provides no analysis connecting the evidence." (Docket No. 164 at 11—12.)  This was part of a pattern that would emerge of Wyatt's failure to provide substantive support for its claims and arguments.

What substance the Court could glean from Wyatt's opposition did little to rebut Malvern's showing that the copyright claims lacked merit.  For example, the Court rejected Wyatt's first and second claims for copyright infringement over software screen displays because most of the features of Wyatt's software claimed to be infringed were not copyright-protected under well-established law and the features that were protected were not substantially similar to Malvern's software.  (Id. at 12—17.)  The Court noted twice that Wyatt either failed to present admissible evidence to dispute Malvern's motion or failed to present any evidence at all.  (Id. at 15; id. at 16 n.10.)  And on Wyatt's fourth claim for copyright infringement of its Dynamics Installation CD v. 6.3.40, summary judgment was warranted because "Plaintiff has provided no analysis whatsoever that would guide the Court in the inferences it would ask the Court to draw from [the cited evidence] or how they bear on Plaintiff's argument." (Id. at 22.)

Moreover, the Court granted summary judgment that Wyatt had abandoned copyright protection for its PSI Books because the books themselves contained a unambiguous disclaimer that there were no restrictions on copying the material and Wyatt's 30(b)(6) witness admitted at his deposition that Wyatt made the materials freely

1    available to the public. (Id. at 27—28.) The only evidence Wyatt

2    offered was a self-serving declaration expressing a Wyatt employee's

3    subjective intent not to abandon copyright protection, which

4    contradicted the record and his own deposition testimony. (Id. at

5    28—29.)

6        Wyatt also entirely failed to support its claim for statutory

7    damages and attorney's fees under 17 U.S.C. § 412 for its copyright

8    claims. Indeed, it was undisputed that the copyrights' effective

9    dates were more than three months after first publication of the

10   copyrighted material, making pellucid that Wyatt's statutory damages

11   claim was barred. (Id. at 31—32.)

12       In granting Malvern's later motion for summary judgment on

13   Wyatt's first, second, and third copyright claims directed at source

14   code, the Court also found that Wyatt had pursued those claims with

15   little evidentiary basis. Throughout discovery, Malvern repeatedly

16   informed Wyatt that it did not have custody or control of the source

17   code at issue, but rather it was in the custody and control of Malvern

18   Instruments, Ltd., a United Kingdom affiliate of Malvern's; Malvern

19   repeatedly urged Wyatt to use the Hague Convention to obtain the

20   source code. (Docket No. 216 at 4—5.) Wyatt never did. (Id.)

21   Moreover, summary judgment was warranted because Wyatt offered no

22   specific evidence of Malvern's access to the copyrighted source code,

23   but instead cited "a forty-one page collection of numerous emails —

24   without directing the Court to any particular page or line numbers"

25   and pointed to exhibits that "do nothing to show that the LS Shareware

26   has anything to do with Plaintiff's Copyrighted Dynamics Source Code,

27   or that Defendants otherwise had access to the Copyrighted Dynamics

28   Source Code." (Id. at 13—14.)

1    Wyatt makes the conclusory claim that it had a reasonable basis
2    at the outset of this litigation that Malvern was infringing Wyatt's
3    copyrights.  But, as with many arguments asserted throughout this
4    litigation, Wyatt supports its statement with only cites to irrelevant
5    paragraphs of its attorney's declaration and random pleadings attached
6    as exhibits.  Wyatt's repeated failures to proffer rational arguments
7    and evidentiary support for its claims indicates that little
8    legitimate basis existed to pursue its copyright claims.  See Maljack
9    Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 890 (9th Cir.
10   1996) (finding fees appropriate for claims that are, "if not
11   frivolous, at least factually unreasonable.").  Awarding fees to
12   Malvern will also deter these sorts of baseless copyright claims.  Id.
13   Thus, the Court finds that Malvern is entitled to reasonable fees
14   incurred in defending Wyatt's copyright claims.[5]

15               2.   California Uniform Trade Secrets Act

16       At the time of summary judgment, Wyatt was pursuing eleven
17   categories of trade secrets.  (Docket No. 164 at 35—36.)  The Court
18   granted summary judgment to Malvern on all but four categories and
19   part of a fifth category, and, following the Court's ruling on
20   Malvern's motions in limine, Wyatt consented to judgment on the
21   remaining claims.  Malvern has apportioned $623,906.02 in fees related
22   to the defense of these claims.

23       California Civil Code section 3426.4 provides:

24

25       [5]The Court need not decide whether fees Malvern expended in
26   defending Wyatt's copyright claims are also warranted as discovery
     sanctions under Federal Rule of Civil Procedure 37(c)(2).  See
27   Marchand v. Mercy Med. Ctr., 22 F.3d 933, 937 (9th Cir. 1994) (stating
     that Rule 37(c) "mandates an award of expenses" when matters are
28   unreasonably denied during discovery but later proved to be true).

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party. Recoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party.

Cal. Civ. Code § 3426.4. Fees under section 3426.4 are considered a sanction and may be awarded based on the "objective speciousness of the plaintiff's claim . . . and its subjective bad faith in bringing or maintaining the claim." Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1262 (Ct. App. 2002); see also CRST Van Expedited, Inc. v. Werner Enters., 479 F.3d 1099, 1111 (9th Cir. 2007) (quoting same). "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." FLIR Sys., Inc. v. Parrish, 174 Cal. App. 4th 1270, 1276 (Ct. App. 2009). The subjective component of bad faith may be "'inferred from the complete failure of proof that the plaintiffs must have knowingly and intentionally prosecuted a specious claim'" Gemini Aluminum, 95 Cal. App. 4th at 1262, or "'inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised,'" id. at 1264. Subjective bad faith may also be demonstrated by failure to identify what trade secrets are at issue. FLIR Sys., 174 Cal. App. 4th at 1281.

Importantly, "[u]nder the California Uniform Trade Secret Act, sanctions may be awarded for the bad faith filing or maintenance of a

groundless action." Id. at 1283.  Thus, "[a] trade secrets claim could be brought in good faith but warrant attorney fees [where] the claim is pursued beyond a point where the plaintiff no longer believes the case has merit." Id.

The Court finds that Wyatt's trade secret claims were objectively specious because they lacked evidentiary support.  The Court granted summary judgment on many of Wyatt's claimed trade secrets in large part because Wyatt simply failed to substantiate them in response to Malvern's motion for summary judgment.  The Court noted at the outset of that portion of its opinion that "Plaintiff does not submit any legal analysis or argument on this subject, but appears to address the trade secrets through factual discussion." (Docket No. 164 at 36.) That discussion, however, was lacking, which forced the Court to "follow[] the citations and factual argument as best it can." (Id. at 36 n.23.)  The Court examined what it could and still found many of Wyatt's claims were factually unsupported.  (See, e.g., id. at 41 ("In particular, much of Plaintiff's evidence of Defendants' access is submitted without a factual foundation.  The remaining evidence — that the employees had access to this information while at [Protein Solutions] and that Malvern later entered the market — is not sufficient to support use of the information except in a completely speculative manner."); id. at 43 ("As far as the Court can tell, Plaintiff has not provided evidence supporting examples of how it proposes Defendants used this information."); id. at 45 ("The undisputed facts show that actual prices were not secret, Wyatt did not use Protein Solutions' pricing strategy, and the former employees did not disclose any information they may have known to Malvern.  Additionally, Plaintiff's only evidence purportedly refuting these

facts is too conclusory to raise a genuine issue in the face of Defendants' detailed evidence."); id. at 46 ("Participation in an industry conference is an inherently public approach, even if Malvern only attended after it hired Dolak.  Additionally, relevant search terms of the light scattering industry and other keywords are publicly disclosed and publicly accessible.").  Wyatt's complete lack of factual basis for these claims demonstrates that they were objectively specious as of Malvern's summary judgment motion.

Wyatt's trade secret claims that survived summary judgment also lacked evidentiary foundation, as Wyatt admitted when it consented to a final judgment in Malvern's favor.  Although the Court denied summary judgment on some of these claims, that does not necessarily mean they were factually sustainable.  See FLIR Sys., 174 Cal. App. 4th at 1282—83.  Indeed, the Court noted that the claims that survived summary judgment were only weakly supported (Docket No. 164 at 48 ("Although the Court agrees with Defendants that the evidence of actual use is perhaps weak, the Court finds that it is sufficient to create a genuine issue of material fact")), and the Court's "[e]rring on the side of caution" in denying summary judgment on those claims does not automatically mean that they were meritorious.  FLIR Sys., 174 Cal. App. 4th at 1283 (rejecting argument that denial of summary judgment precludes sanctions under section 3426.4 when, "[e]rring on the side of caution, the trial court denied the summary judgment motion to see what would develop.").

Wyatt ultimately agreed to judgment on these remaining claims following the Court's rulings on Malvern's motions in limine.  The Court excluded from trial any evidence that Malvern misappropriated the remaining trade secrets prior to Wyatt's entering an "Asset

Purchase Agreement" because the agreement did not include any pre-existing causes of action.  (Docket No. 324 at 36—37.)  As a result, Wyatt was precluded from presenting evidence of misappropriation of a customer list and a "solvent builder" in Malvern's software, actions Malvern undertook prior to Wyatt's signing of the Asset Purchase Agreement.  (Id.)  That appeared to be Wyatt's only evidence of misappropriation of those two alleged trade secrets, which likely prompted its acquiescence to final judgment on these claims.  Thus, even if these claims had some facial merit as of the time of summary judgment, the Court's ruling on Malvern's motion in limine ultimately revealed the lack of a factual basis.  See FLIR Sys., 174 Cal. App. 4th at 1283 ("A trade secrets claim could be brought in good faith but warrant attorneys fees [where] the claim is pursued beyond a point where the plaintiff no longer believes the case has merit.") Therefore, the Court finds that all of Wyatt's trade secret claims were "objectively specious."

Malvern has also presented evidence to support an inference that the trade secret claims were brought and pursued in subjective bad faith.  Wyatt filed a previous lawsuit against another competitor, alleging misappropriation of the exact same categories of trade secrets.  (Docket No. 324 at 55.)  Summary judgment was granted in that case on all of those claims, and that ruling was affirmed on appeal.  (Id.)  Even after losing against one competitor, Wyatt pursued nearly the same trade secrets claims against Malvern.  At the very least, this suggests a motive, not to vindicate its intellectual property rights, but to use litigation as a tool to unfairly compete. See FLIR Sys., 174 Cal. App. 4th at 1276 ("The evidence here supports the finding that appellants filed a specious action as a preemptive

strike and for an anticompetitive purpose."). Further, while Wyatt contends that Malvern used Wyatt's trade secrets to steal customers, even the most cursory pre-lawsuit investigation of Wyatt's own internal documents would have revealed that many of the customers Wyatt believed were stolen left Wyatt for other reasons. (Ransom Decl. ¶ 9, Exs. D—K.)

Finally, Wyatt's discovery tactics demonstrate an unwillingness to provide even the most basic information required to substantiate its trade secret claims. At the outset of this litigation, Wyatt provided a vague and inadequate disclosure of its trade secrets, although detailed identification was required under California Code of Civil Procedure section 2019.210. (Ransom Decl. ¶ 9.) Only after four months of meet-and-confer efforts did Wyatt produce a usable designation. (Id.) Even then two Court orders were necessary to compel Wyatt to produce relevant documents and respond to interrogatories. (Ransom Decl. ¶¶ 14—17.) Wyatt still did not fully comply with those obligations, precipitating the Court to impose issue sanctions to preclude Wyatt from introducing certain evidence at trial. (Docket No. 324 at 43—46.) In fact, the Court concluded that, "because Wyatt both inexplicably failed to comply with the clear September 10 Order and failed to file a substantive opposition to this motion to explain its actions, the Court finds that its actions were deliberate." (Id. at 43.)[6]

All of this evidence, taken in its entirety, demonstrates that

_____

[6]Wyatt complains that Malvern's discovery objections should have been addressed to the Magistrate Judge and not advanced here. But Malvern did raise the objections to the Magistrate Judge and obtained two Orders compelling production of discovery, which Wyatt still defied.

1   Wyatt's claims were objectively specious and were pursued in bad

2   faith.  Wyatt has done nothing to explain its conduct, and the Court

3   finds fees are warranted pursuant to section 3426.4.  See Computer

4   Economics, Inc. v. Gartner Group, Inc., No. 98-CV-0312 TW (CGA), 1999

5   WL 33178020, at *6—7 (S.D. Cal. Dec. 14, 1999) (finding claims

6   objectively specious because they lacked evidentiary basis and

7   inferring bad faith from continuing litigation when on notice that

8   claims lacked merit).[7]

9        3.   Lanham Act

10       Malvern also seeks $595,499.46 in attorney's fees for defending

11  Wyatt's false advertising claim under the Lanham Act directed at

12  Malvern's web-based presentations.  The Lanham Act permits recovery of

13  fees for a prevailing defendant in "exceptional cases"; that is, "when

14  a plaintiff's case is groundless, unreasonable, vexatious, or pursued

15  in bad faith."  Mattel, Inc. v. Walking Mtn. Prods., 353 F.3d 792, 816

16  (9th Cir. 2003).  A false advertising claim is exceptional if it lacks

17  a reasonable factual basis; a prevailing defendant need not prove bad

18  faith.  See Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir.

19  2002) (stating that the "exceptional case" requirement is met when the

20  case is "either 'groundless, unreasonable, vexatious, or pursued in

21  bad faith'" and finding fees appropriate for false advertising claim

22  "because the statements in the advertisements at issue were true and

23  the Fund had no reasonable basis to believe they were false."

24  (emphasis in original).

25       The Court finds that Wyatt's false advertising claim was

26

27       [7]Again, because fees are warranted under section 3426.4, the
    Court need not decide whether fees are appropriate as a sanction under
28  Rule 37(c)(2) for Wyatt's failure to admit facts later found to be
    true.  See Marchand, 22 F.3d at 937.

groundless and unreasonable, rendering this case exceptional and
supporting an award of fees under the Lanham Act.  To prove false
advertising, Wyatt must have evidence that, inter alia, the alleged
false statement actually deceived or had the tendency to deceive a
substantial segment of its audience.  Southland Sod Farms v. Stover
Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  Proof of consumer
deception includes statements by consumers themselves, either through
testimony or surveys.  Id. at 1140.  Even on the eve of trial, Wyatt
had still identified no admissible evidence to substantiate its claim
that Malvern engaged in false advertising regarding its products that
deceived any consumers.  It offered no consumer surveys or consumer
testimony that anyone was misled by any advertising; in fact, Wyatt's
executives admitted in their depositions that they never even asked
any consumers whether they had viewed the allegedly deceiving
advertisements before making a purchase decision.  (Ransom Decl., Exs.
V, W, X.)  Wyatt did offer the testimony of one expert on the issue of
consumer perceptions of Malvern's advertising, but the Court excluded
that expert's opinions from trial because he was not qualified as an
expert in that area and he had no personal knowledge to testify as a
lay witness.  (Docket No. 324 at 17—20.)[8]

    In one of the only points of substance in Wyatt's opposition,
Wyatt claims is "act[ed] upon the advice of counsel in bringing an
action for trademark infringement," so the claim could not have been
groundless.  (Opp. at 2.)  An advice of counsel defense must be
supported "by a specific showing of reasonable reliance, including by

_____

    [8]Wyatt did survive Malvern's motion for summary judgment on this
claim, but that motion addressed only damages and the Court noted that
Wyatt may not have sufficient evidence to prove its claim.  (Docket
No. 164 at 34–35 & n.22.)

1  a showing of the advice counsel gave." <u>Love</u>, 2007 WL 2709975, at *7

2  (citing <u>Takecare Corp. v. Takecare of Okla., Inc.</u>, 889 F.2d 995,

3  957—58 (10th Cir. 1989)).[9]

4      Wyatt cites the first ten paragraphs of its counsel's declaration

5  to demonstrate the advice upon which it relied, but none of that

6  testimony shows what advice was sought or provided, or how Wyatt made

7  its decision to move forward with the false advertising claims.  At

8  most, counsel's testimony indicates he, along with co-counsel,

9  reviewed unidentified "background information supporting Wyatt's

10 claims" (Frisenda Decl. ¶ 6), "reviewed extensive information from

11 publicly available sources describing Defendants' accused products and

12 advertising relating to the characteristics and performance of such

13 products" (<u>id.</u> ¶ 7), obtained an unidentified "in-depth analysis" from

14 an individual familiar with Proterion (<u>id.</u>), and provided the accused

15 products to unidentified "experts" and to "knowledgeable Wyatt

16 employees" (<u>id.</u> ¶ 8).  Wyatt's counsel does not explain the substance

17 of any of these points or attach documents to demonstrate the advice

18 sought or provided.  Nor do Wyatt employees themselves offer any

19 testimony that they received and relied on any of this information in

20 deciding whether to pursue the false advertising claims.  Wyatt's

21 counsel's declaration is nothing more than a "blanket statement of

22 reliance on counsel" insufficient to support an advice of counsel

23 defense.  <u>See</u> <u>Love</u>, 2007 WL 2709975, at *7.

24     The Court finds Wyatt's false advertising claim was exceptional

25

26     [9]There is some question whether advice of counsel could apply
   here since bad faith is not required to make a case "exceptional"
27 under the Lanham Act.  <u>See</u> <u>Cairns</u>, 292 F.3d at 1156.  The Court need
   not answer that question because Wyatt has failed to substantiate the
28 defense even if it were available.

under the Lanham Act and fees are warranted.

**B.   Reasonableness of Requested Fees**

As discussed supra, Malvern seeks a total of $1,709,871.89 in fees for Wyatt's various claims: $490,466.41 for the copyright claims; $623,906.02 for the trade secret claims; and $595,499.46 for the Lanham Act claim.  Apart from reciting the undisputed legal standard, Wyatt has provided no opposition whatsoever to challenge the reasonableness of either the rates charged by Malvern's attorneys or the hours expended on these claims.  "'The party opposing the fee application has the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in the submitted affidavits.'"  Camacho, 523 F.3d at 980 (citation omitted; ellipsis in original).  Wyatt has offered nothing to rebut Malvern's showing.  The Court only briefly discusses the reasonableness of these fees below, since Wyatt's failure to challenge the reasonableness of fees — especially when given an extension of time to do so — signals acquiescence to Malvern's request.  See Newdow v. Congress, 435 F. Supp. 2d 1066, 1070 n.5 (E.D. Cal. 2006), aff'd on other ground sub nom., Newdow v. Lefevre, 598 F.3d 638 (9th Cir. 2010).

**1.   Reasonable Hourly Rates**

Reasonable hourly rates are based upon the "prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895 (1984).  The relevant community is the "forum in which the district court sits."  Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  And the prevailing rate is the "'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience,

and reputation.'"  Id. at 502 (citation omitted).

Malvern seeks fees based upon the following rates for its attorneys from the law firm of Sidley Austin LLP ("Sidley"):

- $607.50/hour for partner Rollin Ransom, who had almost seventeen years of complex commercial litigation experience, including with intellectual property matters; his rate reflected a 10% discount from his customary rate in 2008 and a 16% discount from his customary rate in 2009;

- $517.50/hour for partner Jennifer Ratner, who had over ten years of complex commercial litigation experience, including with intellectual property matters; her rate reflected a 10% discount from her customary rate in 2008 and a 17% discount from her customary rate in 2009;

- $495/hour for senior associate Frank Broccolo, who had nine years of complex commercial litigation experience, including with intellectual property matters; his rate reflected a 10% reduction from his customary fee;

- $283.50/hour in 2008 and $328.50/hour in 2009 for associate Johari Townes, who had three years of complex commercial litigation experience; her rates reflected a 10% reduction from her customary fee; and

- $283.50/hour in 2008 and 2009 and $328.50/hour in 2010 for associate Eva Wheeler, who had two years of complex commercial litigation experience; her rates reflected a 10% reduction from her customary fee.

These rates all fall within prevailing rates of attorneys in this District with similar experience at similarly sized law firms.  (See Ransom Decl., Ex. R (Nationwide Sampling of Law Firm Billing Rates, National Law Journal).)[10]  These rates also reflect an across-the-board discount of 10% from the fees normally charged by Sidley attorneys, and Sidley froze the rates for their partners working on

---

[10]Similar firms include Buchalter Nemer, which charges $260—$600 for partners and $225—$450 for associates; Knobbe, Martens, Olson & Bear, which charges $375—$660 for partners and $245—$430 for associates; Manatt, Phelps & Phillips, which charges $495—$850 for partners and $290—$505 for associates; Rutan & Tucker, which charges $315—$635 for partners and $220—$370 for associates; and Sheppard, Mullin, Richter & Hampton, which charges $475—$795 for partners and $375—$455 for associates.  (Ransom Decl., Ex. R.)

this matter, even though the standard rates for other clients increased.  Thus, the Court concludes that Malvern's attorney's rates are reasonable.

### 2.   Reasonable Hours Expended

Malvern's counsel seeks fees for a total of 3,495 hours, divided as follows: 985.3 hours expended by partner Rollin Ransom; 1114.3 hours expended by partner Jennifer Ratner; 287.8 hours expended by senior associate Frank Broccolo; 728.5 hours expended by associate Johari Townes; and 379.1 hours expended by associate Eva Wheeler. (Ransom Decl. ¶ 34.)  Malvern's lead counsel, Rollin Ransom, explains that he took care to ensure that more junior associates focused on conducting discovery and legal research, drafting preliminary versions of documents, and supervising paralegal and other staff, while partners and senior associates supervised and reviewed the work of more junior associates, developed case strategy, engaged in higher-level drafting and legal analysis, prepared for and conducted depositions, and prepared for trial.  (Id. ¶ 28.)  He also reviewed the time entries and deleted entire time entries devoted exclusively to claims for which fees were not available (such as intentional interference with prospective economic advantage) and deleted portions of other entries when it was clear that part of those entries were for time devoted to non-fee-generating claims.  (Id. ¶ 31.)  Likewise, he deleted entries he believed did not contribute significantly to Malvern's successful defense.  (Id.)  He then made a good faith effort to divide the remaining fees among the three different fee-generating claims.  (Id. ¶ 32.)  The Court finds that the hours are reasonable in this case.

3.   <u>Reasonableness of Total Fees Sought</u>

The total lodestar amount of fees sought is $1,709,871.89, which
the Court views as somewhat high, but reasonable in this
circumstance.[11]  The Court has reviewed the documentation submitted by
Malvern's counsel and finds nothing immediately objectionable, and, of
course, Wyatt has pointed the Court to nothing to which it objects.
Wyatt sought $25 million in damages plus injunctive relief, and
Malvern seeks fees of less than 7% of that total demand, which appears
reasonable under the circumstances.  <u>Compare</u> <u>Cairns</u>, 292 F.3d at
1158—59 (affirming $2.3 million in fees on a successfully defended
claim for over $32 million in damages and noting that a one-to-
fourteen ratio of fees to claimed damages (or 7%) did not justify a
reduction of fees).  Moreover, the extensive discovery and motion
practice justified the number of hours expended by Malvern's counsel
to reach a judgment entirely in its favor.  (Ransom Decl. ¶¶ 8—17,
20—26.)  Given the lack of opposition by Wyatt and the Court's own
review of the documentation submitted by Malvern's counsel, the Court
finds the fee request reasonable.

**C.   Fees Expended on Fees Motion**

Malvern also seeks fees for the time expended in litigating the
fees motion.  A prevailing party is entitled to recovery for fees
incurred in seeking fees.  <u>See Camacho</u>, 523 F.3d at 981.  Malvern
seeks $68,602.50 in fees for time expended on the initial fees motion
and reply, and for time spent responding to Wyatt's ex parte request

---

[11]That number includes fees for hours expended by paralegals and
other staff.  (Ransom Decl. ¶ 38.)  Again, Wyatt did not oppose these
fees.  The Court finds no reason to believe these fees are not
reasonable.  <u>See Trustees of Const. Indus. & Laborers Health & Welfare
Trust v. Redlands Ins. Co.</u>, 460 F.3d 1253, 1256—57 (9th Cir. 2006).

for an extension to file an opposition.  This amount is based on the rates discussed above, except for Johari Townes, who charged $369 per hour since 2010, and for Frank Broccolo, who charged $517.50 per hour since 2010.  The Court has reviewed the request and finds it reasonable.

**D.   Costs**

On February 18, 2010, Malvern filed its amended Bill of Costs with the Court Clerk pursuant to Local Rule 54-4, which was granted on March 11, 2010, in the amount of $33,179.26.  (Docket No. 359.)  In this motion, Malvern seeks to recover additional expenses of $188,049.38, including: expert witness fees of $83,111.61; computerized research costs of $43,355.44; photocopying and document processing costs of $24,523.79; messenger and delivery costs of $2,462.23; travel costs of $18,783.68; deposition costs of $13,382.43; telephone costs of $455.20; and a mediator fee of $1975.00.  For the fees motion itself, Malvern seeks recovery of costs of $7,281.06, which includes: computerized research costs of $2,055.18; photocopying and document processing costs of $450.45; messenger and delivery costs of $616.66; travel costs of $4,155.72; and telephone expenses of $3.05.

Although Wyatt has not opposed these requests, the Court finds that Malvern has provided an inadequate legal basis at this time to recover these additional expenses.  In some circumstances, reasonable out-of-pocket expenses normally charged to a client may be recoverable even if not covered by 28 U.S.C. § 1920, which provided the basis for costs awarded by the Court clerk.  See, e.g., Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 885 (9th Cir. 2005) ("Thus, we hold that district courts may award otherwise non-taxable

costs, including those that lie outside the scope of § 1920, under § 505."). However, Malvern has provided no authority other than citation to the statutes themselves to demonstrate entitlement to the categories of expenses identified in the request. Thus, the Court denies the request for these costs without prejudice to Malvern's filing a regularly noticed motion that adequately supports entitlement to the identified expenses. Despite its current failure to oppose this request, Wyatt may oppose any such motion filed by Malvern pursuant to the Local Rules governing noticed motions.

**IV. CONCLUSION**

The Court GRANTS Malvern's motion for attorney's fees and finds that Malvern is entitled to attorney's fees in the amount of $1,709,871.89 for litigating this matter and fees in the amount of $68,602.50 for litigating the fees motion. The Court DENIES Malvern's requests for litigation expenses WITHOUT PREJUDICE to filing a regularly noticed motion with adequate legal support.

Malvern is ordered to lodge with the Court **within 10 days of the filing of this Order** a proposed order that reflects the Court's ruling.

**IT IS SO ORDERED.**

DATED: April 28, 2010     _____

                              AUDREY B. COLLINS

                    UNITED STATES DISTRICT CHIEF JUDGE